## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

**GREG HALE, ALICIA GILMORE,**
**MICHAEL WHITKANACK, AND JESSICA WHITE,**
on behalf of themselves and all others similarly situated          **PLAINTIFFS**

**VS.**                          **CASE NO.: 3:22-CV-117-BSM**

**ARCARE, INC.**                                              **DEFENDANT**

### BRIEF IN SUPPORT OF
### <u>MOTION TO SUBSTITUTE THE UNITED STATES</u>
### <u>OR, IN THE ALTERNATIVE, MOTION TO DISMISS</u>

Scott A. Irby (99192)
Gary D. Marts, Jr. (2004116)
Andrea L. Kleinhenz (2021216)
WRIGHT, LINDSEY & JENNINGS
LLP
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201-3699
(501) 371-0808
FAX: (501) 376-9442
sirby@wlj.com;
gmarts@wlj.com;
akleinhenz@wlj.com

Matthew Freedus (D.C. Bar # 475887)*
Feldesman Tucker Leifer Fidell LLP
1129 20th Street, NW, Suite 400
Washington, DC 20036
(202) 466-8960;
FAX: (202) 293-8103
mfreedus@feldesemantucker.com

*Admitted pro hac vice

*Attorneys for Defendant ARcare, Inc.*

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................ 1

LEGAL FRAMEWORK ........................................................................................... 2

FACTUAL AND PROCEDURAL BACKGROUND........................................... 5

ARGUMENT ............................................................................................................... 9

    A.    ARcare is a deemed PHS employee for all relevant periods ........................ 10

    B.  Maintenance of patient information and protection of patient privacy is a "related function" inextricably woven into patient care ........................................ 10

    C.    Plaintiffs' action—alleging a failure to secure and protect confidential patient information—arises out of ARcare's performance of medical or related functions within the meaning of 42 U.S.C. § 233(a) ............................................... 14

CONCLUSION........................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agyin v. Razmzan,*
  986 F.3d 168 (2d Cir. 2021) ............................................................................. 3, 5

*Brignac v. United States,*
  239 F.Supp.3d 1367 (N.D. Ga. 2017) .................................................................. 16

*C. K. v. United States,*
  No. 19-cv-02492, 2020 WL 6684921 (S.D. Cal. Nov. 12, 2020) .................... 2, 5, 16

*De La Cruz v. Graber,*
  No. 16-cv-1294, 2017 WL 4277129 (C.D. Cal. June 15, 2017) ............................ 16

*Doe v. Neighborhood Healthcare,*
  No. 21-cv-01587, 2022 WL 17663520 (S.D. Cal. Sept. 8, 2022) ....................... 2, 18

*Engles v. ARcare,*
  22-cv-00139-BSM (E.D. Ark.).......................................................................... 6, 7, 8

*Engles v. ARcare,*
  No. CV-22-43 (Cir. Ct. Woodruff Cnty, Ark.) (filed May 10, 2022)......................... 7

*Estate of Booker v. Greater Philadelphia Health Action, Inc.,*
  10 F. Supp. 3d 656 (E.D. Pa. 2014) ...................................................................... 5

*Estate of Campbell v. South Jersey Medical Ctr.,*
  732 Fed. Appx. 113 (3d. Cir. May 1, 2018) ............................................................ 4

*Ford v. Sandhills Medical Foundation, Inc.,*
  No. 4:21-cv-02307, 2022 WL 1810614 (D.S.C. June 2, 2022), *appeal filed*, No. 22-2268 (4th Cir., Dec. 9, 2022) ........................................... 2, 17, 18, 19

*Friedenberg v. Lane County.,*
  68 F.4th 1113 (9th Cir. 2023)............................................................................... 3

*Gilmore v. ARcare,*
  No. 22-cv-00123 (E.D. Ark.) ............................................................................. 7, 8

*Hale v. ARcare,*
  No. 22-cv-117-BSM (E.D. Ark.)........................................................................ 7, 8

*Hui v. Castaneda*,
  559 U.S. 799 (2010) ............................................................... 2, 4, 10, 20

*Hunter v. Bryant*,
  502 U. S. 224 (1991) .................................................................... 4, 9

*Johnson v. ARcare*,
  No. 22-cv-00117 (E.D. Ark.) (filed June 17, 2023)................................. 7

*Kezer v. Penobscot Cmty. Health Ctr.*,
  No. 15-cv-225, 2019 BL 141566 (D. Me. Mar. 21, 2019) ................................. 15, 16

*Krandle v. Refuah Health Ctr., Inc.*,
  No. 22-cv-4977, 2023 WL 2662811 (S.D.N.Y. Mar. 28, 2023) .............................. 19

*Marshall v. Lamoille Health Partners*,
  Inc., No. 22-cv-166, 2023 WL 2931823, at *4 (D. Vt. Apr. 13, 2023) ................... 19

*Mele v. Hill Health Center*,
  No. 3:06-cv-00455, 2008 WL 160226 (D. Conn. Jan. 8, 2008)............................ 16

*Mitchell v. Forsyth*,
  472 U. S. 511 (1985) ....................................................................... 9

*Mixon v. CareSouth Carolina, Inc.*,
  No. 22-cv-269, 2022 WL 1810615 (D.S.C. June 2, 2022)....................... 2, 17, 18, 19

*Pomeroy v. United States*,
  No. 17-10211-DJC, 2018 WL 1093501 (D.C. Mass. Feb. 27, 2018) ...................... 17

*Saucier v. Katz*,
  533 U.S. 194 (2001) ...................................................................... 4, 9

*Teresa T. v. Regaglia*,
  154 F. Supp. 2d 290 (D. Conn. 2001) ...................................................... 16

*White v. ARcare*,
  No. 22-cv-00454-KGB (E.D. Ark.) ......................................................... 7, 8

*Whitkanack v. ARcare*,
  22-cv-00140-BSM (E.D. Ark.).............................................................. 7

*Whitkanack v. ARcare*,
  No. CV-22-46 (Cir. Ct. Woodruff Cnty, Ark.) ............................................ 7, 8

*Z.B. v. Ammonoosuc Cmnty Health Services*,
  2004 WL 1571988 (D. Me. June 13, 2004)................................................. 17

iii

**Statutes**

28 U.S.C. § 1346(b) .................................................................................. 9

28 U.S.C. § 1442 .................................................................................... 7

28 U.S.C. § 1442(a)(1) .............................................................................. 5

42 U.S.C. § 233 ............................................................................... 4, 17, 20

42 U.S.C. § 233(a) ............................................................................ *passim*

42 U.S.C. 233(b) .................................................................................... 9

42 U.S.C. §§ 233(a) ............................................................................... 14

42 U.S.C. § 233(g) ............................................................................... 2, 3

42 U.S.C. § 233(g)(1)(F) ......................................................................... 10

42 U.S.C. § 233(g)(4) ............................................................................. 3

42 U.S.C. § 233(g) .............................................................................. 1, 10

42 U.S.C. § 233(h) .............................................................................. 1, 10

42 U.S.C. § 233(h)(1) ........................................................................... 1, 13

42 U.S.C. § 233(*l*)(2) ............................................................................ 4, 7

42 U.S.C. § 254b ............................................................................... 3, 5, 6

42 U.S.C. § 254b(k)(3)(C) ...................................................................... 6, 13

**Other Authorities**

42 C.F.R. § 6.6(d) .................................................................................. 9

42 C.F.R. § 51c.110 ............................................................................. 6, 13

42 C.F.R. § 51c.303 ............................................................................. 6, 13

Access to Medical Records by Data Collection Companies, https://code-
    medical-ethics.ama-assn.org/ethics-opinions/access-medical-records-
    data-collection-companies ................................................................... 12

American Medical Association Code of Ethics, Privacy in Health Care,
    https://code-medical-ethics.ama-assn.org/ethics-opinions/privacy-
    health-care .............................................................................................. 11, 12

Federal Tort Claims Act
    https://bphc.hrsa.gov/sites/default/files/bphc/compliance/pal-2020-
    02.pdf ...................................................................................................... 2, 10

Federally Supported Health Centers Assistance Act,
    https://bphc.hrsa.gov/sites/default/files/bphc/compliance/pal-2021-
    01_0.pdf ...................................................................................................... 14

H.R. Rep. No. 102-823 ............................................................................................ 5

H.R. Rep. No. 104-398 ............................................................................................ 3

HIPAA Privacy Rule: Enhancing Privacy, Improving Health Through
    Research, 86 (2009), https://www.ncbi.nlm.nih.gov/books/NBK9579/ ................. 11

# INTRODUCTION

ARcare, Inc., a "federally supported" health center, is entitled to immunity from Plaintiffs' claims under 42 U.S.C. § 233 *et seq*.[1]  Accordingly, ARcare, Inc. hereby moves this Court to substitute the United States in its place as the only proper defendant in this action or, in the alternative, to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim for relief against ARcare.

As a deemed employee of the United States Public Health Service (PHS) under 42 U.S.C. § 233(g) and (h), ARcare, Inc. (ARcare) is entitled to absolute immunity—and substitution of the United States in its name, place, and stead—with respect to *any* civil action or proceeding arising out of its performance of *medical or related functions* within the scope of its deemed federal employment. *See* 42 U.S.C. § 233(a).

This is such an action. Plaintiffs' claims arises out of "health or health-related functions performed by [ARcare]," 42 U.S.C. § 233(h)(1), that are not only inextricably linked to ARcare's provision of quality and integrated health care services but statutorily mandated for all deemed health center entities and a

---

[1] On July 11, 2023, ARcare requested a stay of proceedings—including the current responsive pleading deadline—pending a determination as to whether the United States is the proper defendant. ECF Nos. 23, 24. ARcare believes that its immunity from suit should excuse it from responding to the complaint but, to the extent that a response is required, it moves in the alternative to dismiss under Fed. R. Civ. P. 12(b)(6) because the complaint fails to state a claim for relief against it as an immune entity.  In the event of a final order denying its claim to immunity, ARcare will file a timely answer to the complaint.

condition of their deemed federal status—*i.e.*, "to implement and maintain systems and procedures for protecting the confidentiality of patient information and safeguarding this information against loss, destruction, or unauthorized use, consistent with federal and state requirements." *See* Health Res. & Servs. Admin., U.S. Dep't of Health & Hum. Servs. (HHS), Application for Health Center Program Award Recipients for Deemed Public Health Service Employment with Liability Protections Under the Federal Tort Claims Act, at 16 https://bphc.hrsa.gov/sites/default/files/bphc/compliance/pal-2020-02.pdf.

## LEGAL FRAMEWORK

The Emergency Health Personnel Act of 1970 "grants absolute immunity to [United States Public Health Service] officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct." *Hui v. Castaneda*, 559 U.S. 799, 806 (2010).

In October 1992, as a three-year demonstration project, Congress enacted the Federally Supported Health Centers Assistance Act ("FSHCAA") of 1992, Pub L. 102-501, codified at 42 U.S.C. § 233(g) *et seq.*, "which extends to certain entities and their employees that are 'deemed' to be PHS employees . . . the immunity provided in Section 233(a)." *C. K. v. United States*, No. 19-cv-2492, 2020 WL 6684921, at *3 (S.D. Cal. Nov. 12, 2020) (citing 42 U.S.C. § 233(g)(1)(A)); *Agyin v. Razmzan*, 986 F.3d 168, 177 (2d Cir. 2021) (holding that deemed PHS employee enjoys "the same legal immunity that is extended to employees of the Public Health Service"); *see also*

2

*Friedenberg v. Lane County*, 68 F.4th 1113, 1126 (9th Cir. 2023) (rejecting the plaintiffs' contention that "§ 233 immunity extends lesser protection to deemed PHS employees under § 233(g) than it does to actual PHS employees under § 233(a)"). Entities deemed to be PHS employees via the FSHCAA include community health centers receiving federal grant funding under 42 U.S.C. § 254b. 42 U.S.C. § 233(g)(4).

In 1995, Congress amended the FSHCAA to make it permanent and to resolve concerns that arose during the demonstration period. Federally Supported Health Centers Assistance Act of 1995, Pub. L. 104-73, 109 Stat. 777 (1995). The statutory subsections added to the FSHCAA in 1995—§ 233(g)(1)(D)–(F), (*l*)(1)–(2)— were designed to: (1) encourage increased use of the program by health centers; and (2) ensure deemed defendants' access to a federal forum in which to assert the absolute immunity afforded to them by federal law. *See* H.R. Rep. No. 104–398, at 6, 7 (1995), reprinted in 1995 U.S.C.C.A.N. 767, 769–70. To accomplish these congressional purposes, the 1995 amendments established a prospective coverage process under § 233(g)(1)(D)–(E) (requiring health center deeming application), (F) (making agency deeming determinations "final and binding" on the Secretary, the Attorney General, and other parties in subsequent suits, and prohibiting the Secretary and the Attorney General from determining "that the provision of services which are the subject of such a determination are not covered under this section").

When a civil action is filed in state court against a deemed PHS defendant, "the Attorney General, within 15 days after being notified of such filing, shall make

an appearance . . . and advise . . . as to whether the Secretary has determined" that the employee is "deemed to be an employee of the Public Health Service . . . with respect to the actions or omissions that are the subject of such civil action or proceeding." *Id*. § 233(a), (*l*)(1). If the Attorney General does so, the civil action or proceeding "shall be removed . . . to the [appropriate] district . . . and the proceeding deemed a tort action brought against the United States." Id. § 233(l)(1), (c). "If the Attorney General fails to appear in State court within the time period prescribed . . . upon petition of" any deemed entity or employee "the civil action or proceeding shall be removed to the appropriate United States district court." *Id*. § 233(l)(2). Once removed, the matter is stayed until the district court "conducts a hearing, and makes a determination, as to the appropriate forum or procedure for the assertion of the claim . . . ." *Id*.; *see Estate of Campbell v. South Jersey Medical Ctr.*, 732 Fed. Appx. 113, 117 (3d. Cir. May 1, 2018) ("For section 233(*l*)(2) to have any effect, a district court must at least have jurisdiction to substitute the United States when it is appropriate to do so.").

Courts follow the "ordinary rules of evidence and procedure" when assessing immunity under 42 U.S.C. § 233. *Hui*, 559 U.S. at 811*; see also Saucier v. Katz*, 533 U.S. 194, 200–01 (2001) ("an immunity from suit rather than a mere defense to liability . . . like an absolute immunity . . . is effectively lost if a case is erroneously permitted to go to trial") (citing *Mitchell v. Forsyth*, 472 U. S. 511, 526 (1985)). Where appropriate, substitution of the Unites States effectuates the deemed health center defendant's statutory right to absolute immunity. *C. K.*, 2020 WL 6684921,

at *3, *7 (ordering substitution for deemed PHS defendant in case originating in federal court); *Estate of Booker v. Greater Philadelphia Health Action, Inc.*, 10 F. Supp. 3d 656, 670 (E.D. Pa. 2014) (ordering substitution in case removed to federal court). The immunity unambiguously applies to "any . . . action or proceeding" "resulting from the performance of medical . . . or related functions" undertaken within the scope of the deemed federal employment. 42 U.S.C. § 233(a).

The grant of absolute immunity under § 233(a) hinges on the substance of the PHS employee's conduct, not the label applied to a plaintiff's claim. To find otherwise would allow a plaintiff, in some cases, to sidestep or defeat the purpose of § 233(a) immunity "through 'artful pleading.'" *Campbell*, 732 Fed.Appx. at 116.

## FACTUAL AND PROCEDURAL BACKGROUND

ARcare is an Arkansas nonprofit community-based health center that receives federal funding under the PHS Act, 42 U.S.C. § 254b *et seq*., to provide primary health care and related services to residents of specific geographic areas the HHS Secretary has designated as "medically underserved." *Id*. at 254b(a)(l). As such, ARcare is subject to detailed federal requirements, oversight, and control. *See* H.R. Rep. No. 102-823 at 5 ("Federal requirements associated with the grants are administratively burdensome and address all areas of operation."); *accord Agyin*, 986 F.3d at 177 (concluding that deemed health center is "subject to federal oversight and control" sufficient to render health center physician "acting under" a federal officer for purposes of 28 U.S.C. § 1442(a)(1)). Among these requirements is the obligation to "have an ongoing quality improvement system that includes

clinical services and management, and that *maintains the confidentiality of patient records*." 42 U.S.C. § 254b(k)(3)(C) (emphasis added) (prohibiting HHS's approval of a health center's grant application absent a determination of compliance with this requirement); *see also* 42 C.F.R. § 51c.110 ("*All* information as to personal facts and circumstances obtained by the project staff about recipients of services shall be held confidential, and shall not be divulged without the individual's consent. . . .") (emphasis added); 42 C.F.R. § 51c.303 ("A community health center supported under this subpart must . . . [i]mplement a system for maintaining the confidentiality of patient records in accordance with the requirements of § 51c.110 of subpart A.").

For many consecutive years, ARcare has applied for and received deemed PHS status—for itself and its employees. *See*, *e.g.*, *Engles v. ARcare*, No. 22-cv-00139-BSM (E.D. Ark.), ECF 1, Ex. C (HHS Notices of Deeming Action confirming ARcare's deemed status for CY 2020, 2021, and 2022) (copies of the notices are attached hereto as Exhibit 1 for convenience). The Notices of Deeming Action confirm coverage comparable to an "occurrence" policy—i.e., the coverage applies to conduct (acts or omissions) that occurred in a period for which the defendant was deemed, regardless of when the claim is made. *Id.* (Notices of Deeming Action) ("[d]eemed health centers must continue to receive funding under ... § 254b, in order to maintain coverage as a deemed PHS employee").

Between May and June 2022, ARcare was named as the defendant in six putative class actions arising out of the same alleged data breach in March 2022.

6

*Hale v. ARcare*, No. 22-cv-117-BSM (E.D. Ark.) (filed May 10, 2022); *Engles v. ARcare*, No. CV-22-43 (Cir. Ct. Woodruff Cnty, Ark.) (filed May 10, 2022); *White v. ARcare*, No. 22-cv-00454-KGB (E.D. Ark.) (filed May 16, 2022); *Gilmore v. ARcare*, No. 22-cv-00123 (E.D. Ark.) (filed May 19, 2022); *Whitkanack v. ARcare*, No. CV-22-46 (Cir. Ct. Woodruff Cnty, Ark.) (filed May 19, 2022); *Johnson v. ARcare*, No. 22-cv-00117 (E.D. Ark.) (filed June 17, 2023). Pursuant to 42 U.S.C. § 233(*l*)(2) and 28 U.S.C. § 1442, ARCare removed the two state court actions to this Court. *Whitkanack v. ARcare*, 22-cv-00140-BSM (E.D. Ark.), *Engles v. ARcare*, 22-cv-00139-BSM (E.D. Ark.).

The *Engles* plaintiffs moved to remand but the *Whitkanack* plaintiff did not. The Court denied the *Engles* motion, stating "it appears that ARcare is a Public Health Services employee under 42 U.S.C. section 233(a) and is a federal officer or person acting under a federal officer under 28 U.S.C. section 1442." Order, *Engles v. ARcare*, No. 22-cv-139 (E.D. Ark. March 28, 2023), ECF No. 55 (Order denying remand motion). The *Engles* Court also indicated that the question of "[w]hether the United States should be substituted as the proper defendant will be taken up at a hearing that will be set by separate notice." *Id*. (citing 42 U.S.C. § 233(*l*)(2)).

In March 2023, the Court consolidated *Hale, White, Gilmore, Whitkanack,* and *Johnson,* and designated *Hale* as the lead case. Master File No. 22-cv-00117-BSM, at ECF No. 17 (Order granting joint motion to consolidate). Shortly thereafter, in April 2023, the Court consolidated *Engles* with *Hale* as well. *Engles*, No. 22-cv-00139-BSM, at ECF No. 57 (Order to consolidate). On June 2, 2023, after

all six cases were consolidated, the named plaintiffs from *Hale*, *White*, *Gilmore*, and *Whitkanack* filed a "Consolidated Class Action Complaint" on behalf of themselves and all others similarly situated. *Hale*, No. 22-cv-00117-BSM, at ECF No. 19 (Consolidated Complaint).

The Consolidated Complaint alleges that ARcare failed to safeguard Plaintiffs' and the class members' personal information, as required, in connection with or related to health care services they received. *See* ECF 19 (Consolidated Complaint). In essence, the complaint alleges that: (1) Plaintiffs and putative class members sought and obtained health care services from ARcare and that, as a condition of receiving such services, plaintiffs and the putative class members had to furnish personal information to ARcare; (2) ARcare breached duties owed, and implied promises made, to Plaintiffs and the putative class members by failing to safeguard and protect their personal information and by failing to detect the data breach within a reasonable time; and, as a result, (3) an unauthorized individual was able to infiltrate and steal Plaintiffs' and the putative class members' personal information from ARcare's electronic health records system, causing and threatening to cause various harms to them. *Id.* at ¶¶174-245.

On July 11, 2023, ARcare asked the Court to stay all proceedings pending a hearing and a determination as to whether the United States should be substituted as the proper defendant in its place. ECF. No. 24 (Motion to stay, citing 42 U.S.C. § 233(*l*)(2), *Hunter v. Bryant*, 502 U. S. 224, 227 (1991), *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001), *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

Despite timely and proper notice under 42 U.S.C. 233(b), the Attorney General has failed to certify ARcare as having performed medical or related functions within the scope of its deemed federal employment for purposes of this consolidated action.

## ARGUMENT

Substitution of the United States for ARcare is not only proper but required by statute. Each fundamental element of ARcare's absolute immunity is satisfied: (1) it was deemed to be a PHS employee for the period in which the events giving rise to this action occurred, and (2) this action "resulted from" its "performance of medical … or related functions" (covered conduct) within the scope of its employment as a deemed PHS employee.

Where, as here, a deemed health center was acting within the scope of its employment when the alleged acts or omissions occurred, and those acts or omissions occurred in the performance of "medical … or related functions"—*i.e.*, "acts or omissions related to grant-supported activity" of the deemed entity, 42 C.F.R. § 6.6(d)—the plaintiff's exclusive remedy is a claim against the United States under the FTCA, 28 U.S.C. § 1346(b). 42 U.S.C. § 233(a) (remedy "shall be exclusive of *any other civil action or proceeding by reason of the same subject-matter* against the officer or employee . . . whose act or omission gave rise to the claim") (emphasis added).

"[T]here is no reason to think that scope certification by the Attorney General is a prerequisite to immunity under § 233(a). To be sure, that immunity is

contingent upon the alleged misconduct having occurred in the course of the PHS

defendant's duties, but a defendant may make that proof pursuant to the ordinary

rules of evidence and procedure." *Hui*, 559 U.S. at 806; *see also* HRSA, HHS, FTCA

Health Center Policy Manual, § II, K.1 at p. 20 (acknowledging that Attorney

General's "certification or failure to certify is subject to judicial review"),

https://bphc.hrsa.gov/sites/default/files/bphc/technical-assistance/ftcahc-policy-

manual.pdf.

## A.   ARcare is a deemed PHS employee for all relevant periods

Pursuant to 42 U.S.C. §§ 233(g) and (h), the HHS Secretary deemed ARcare

to be a PHS employee for the period in which the events giving rise to this civil

action occurred. Ex. 1 (Notice of Deeming Action for CY 2020, 2021, and 2022); ECF

19, at ¶¶ 26-33 (Consolidated Complaint alleging ARcare's failures to properly

safeguard patient information resulted in a data-breach in calendar year 2022).

ARCare's federal status is "final and binding" on the Secretary, the Attorney

General, and all parties to litigation, with one exception not applicable here.[2] 42

U.S.C. § 233(g)(1)(F). Accordingly, ARcare is a deemed PHS employee.

## B.   Maintenance of patient information and protection of patient privacy is a "related function" inextricably woven into patient care

---

[2] The inapplicable exception provides that the Attorney General may take away an individual's (not an entity's) deemed status if the individual "would expose the Government to an unreasonably high degree of risk of loss," but only after affording "due process" to challenge the basis for that action. P.L. 104-73 (Dec. 26, 1995) (title in statute-at-at-large accurately describes § 233(i) as a "due process" provision), codified at 42 U.S.C. § 233(i).

The protection of patient privacy and the maintenance of patient confidentiality have long been woven into the fabric of patient care. The classical version of the Hippocratic oath, in translation, provides: "What I may see or hear in the course of the treatment or even outside of the treatment in regard to the life of men, which on no account one must spread abroad, I will keep to myself . . ." Ludwig Edelstein, *The Hippocratic Oath: Text, Translation, and Interpretation* (1943). A pledge to privacy has been included in the code of ethics of nearly all health care professionals in the United States, beginning with the American Medical Association's 1847 first Code of Ethics. Institute of Medicine, Committee on Health Research and the Privacy of Health Information, Beyond the HIPAA Privacy Rule: Enhancing Privacy, Improving Health Through Research, 86 (2009), https://www.ncbi.nlm.nih.gov/books/NBK9579/. The current American Medical Association's Code of Medical Ethics mandates that "[p]hysicians must seek to protect patient privacy in all settings to the greatest extent possible," as "protecting information gathered in association with the care of the patient is a core value in health care." American Medical Association (hereinafter "AMA"), Code of Ethics § 3.1.1, Privacy in Health Care, https://code-medical-ethics.ama-assn.org/ethics-opinions/privacy-health-care; *see also* AMA Code of Medical Ethics § 3.3.2 Confidentiality & Electronic Medical Records, https://code-medical-ethics.ama-assn.org/ethics-opinions/confidentiality-electronic-medical-records ("Information gathered and recorded in association with the care of a patient is confidential, regardless of the form in which it is collected or stored.").

11

The AMA Code of Medical Ethics further counsels that "respecting patient privacy in other forms is also fundamental, as an expression of respect for patient autonomy and a prerequisite for trust." AMA Code of Medical Ethics § 3.1.1 (privacy protections extend to physical, informational, decisional, and associational forms of privacy); *see also* AMA, Opinion 3.2.1: Confidentiality, https://code-medical-ethics.ama-assn.org/ethics-opinions/confidentiality ("Patients need to be able to trust that physicians will protect information shared in confidence. . . Physicians in turn have an ethical obligation to preserve the confidentiality of information gathered in association with the care of the patient."); American Medical Association, Opinion 3.2.4: Access to Medical Records by Data Collection Companies, https://code-medical-ethics.ama-assn.org/ethics-opinions/access-medical-records-data-collection-companies ("Information gathered and recorded in association with the care of a patient is confidential . . . . Disclosing information to third parties . . . without consent undermines trust, violates principles of informed consent and confidentiality, and may harm the integrity of the patient-physician relationship.").

The statutory structure and design of the Health Center Program recognizes that privacy and confidentiality are fundamental aspects of health care from initial patient encounters, through necessary care coordination, to the use of patient data in required ongoing quality assurance and quality improvement activities. Indeed, health centers are statutorily mandated, as a condition of both their receipt of federal funding and their deemed status, to protect and safeguard the

confidentiality of patient information. 42 U.S.C. § 254b(k)(3)(C) (requiring quality improvements systems that "maintains the confidentiality of patient records"). This statutory requirement is reinforced by the PHS Act's implementing regulations. 42 C.F.R. § 51c.110 ("All information as to personal facts and circumstances obtained by the project staff about recipients of services shall be held confidential, and shall not be divulged without the individual's consent…"); 42 C.F.R. § 51c.303 ("A community health center supported under this subpart must . . . [i]mplement a system for maintaining the confidentiality of patient records in accordance with the requirements of § 51c.110 of subpart A.").

Under the FSHCAA, HHS is prohibited from deeming a health center to be a PHS employee absent a determination that the health center has "implemented appropriate policies and procedures to reduce the risk of malpractice and the risk of lawsuits arising out of any health or health-related functions performed by the entity." 42 U.S.C. § 233(h)(l). In the "deeming" application HHS designed "to verify" that the health center applicant has done so, the health center must, among other things, attest to having "implemented systems and procedures for protecting the confidentiality of patient information and safeguarding this information against loss, destruction, or unauthorized use, consistent with federal and state requirements." Deeming Application, at 16 https://bphc.hrsa.gov/sites/default/files/bphc/compliance/pal-2021-01_0.pdf. Because, as HHS's application states, "confidentiality and security" of patient information is one of the "areas/activities of *highest clinical risk* for the health center," the health

center applicant is also required to develop, implement, and document the completion of an "annual health care risk management training plan for staff members" that includes, among other things, training on "*HIPAA medical record confidentiality requirements*" and "other applicable medical record confidentiality requirements." *Id*. at 11-12 (emphasis added). Clearly, the maintenance and protection of patient privacy is a fundamental part of ARcare's work as a deemed PHS employee.

C.   **Plaintiffs' action—alleging a failure to secure and protect confidential patient information—arises out of ARcare's performance of medical or related functions within the meaning of 42 U.S.C. § 233(a)**

The action against ARcare resulted from its "performance of medical … or related functions" within the scope of its deemed federal employment. 42 U.S.C. §§ 233(a), 254b.

The Consolidated Complaint acknowledges, if not hinges on, the inextricable link between the provision of health care services and the confidentiality of patient information. *See* ECF No. 19 (Compl.) ¶ 43 ("As *part of his care and treatment*, and as a requirement to receive Defendant's services, Plaintiff Hale entrusted his PII, PHI, and other confidential information such as name, date of birth, Social Security number, medical treatment information, prescription information, medical diagnosis or condition information, and health information to ARcare….") (emphasis added), ¶ 176 ("Defendant *required patients*, including Plaintiffs and Class Members, to submit Private Information and allow Defendant to collect additional Private Information *in the ordinary course of rendering healthcare services*.")

14

(emphasis added), ¶ 179 ("Defendant's *duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and its customers*, which is recognized by laws and regulations including but not limited to HIPAA, as well as common law.") (emphasis added).

Plaintiffs explicitly assert that their claims, and those of the putative class, arise out of the patient-provider relationship. *See* ECF 19 (Compl. ¶¶ 1, 12-15, 176, 179, 194, 223, 244). Comprising several theories of professional malpractice or malfeasance (*i.e.*, negligence, breach of implied contract, unjust enrichment, breach of fiduciary duty, declaratory judgment/injunctive relief), the core allegation is that ARcare breached a duty to maintain the confidentiality of patient information and, as a direct result, caused personal injuries to Plaintiffs and other similarly situated patients of ARcare. *See* ECF 19 (Compl. at ¶¶ 175-245).

A number of courts have ruled that acts or omissions in maintaining confidential patient information are "medical … or related functions" within the meaning of § 233(a). In *Kezer v. Penobscot Cmty Health Ctr.*, the District Court for the District of Maine determined that deemed defendants performed a "related function" when they accessed the plaintiff's confidential mental health records in conducting quality assurance/improvement audits. *Kezer v. Penobscot Cmty. Health Ctr.*, No. 15-cv-225, 2019 BL 141566 at *8 (D. Me. Mar. 21, 2019) ("[T]he performance of quality improvement and quality assurance activities . . . are patently related to the provision of medical services. Indeed, the whole point is to

review the quality of previously rendered services to improve the quality of future services.").

The *Kezer* court reviewed and discussed several cases in which various operational functions were found to constitute "related functions" within the ambit of § 233(a). *See*, *e.g.*, *Brignac v. United States*, 239 F.Supp.3d 1367, 1377 (N.D. Ga. 2017) (concluding "hiring and retention of . . . physicians is directly connected to [the] provision of medical care"); *De La Cruz v. Graber*, No. 16-cv-1294, 2017 WL 4277129 at *3–4 (C.D. Cal. June 15, 2017), report and recommendation adopted, 2017 WL 4271122 (C.D. Cal. Sept. 21, 2017) (concluding medical administrator, whose performance of administrative duties gave rise to constitutional tort claim, was immune under § 233(a)); *Teresa T. v. Regaglia*, 154 F. Supp. 2d 290, 300 (D. Conn. 2001) (concluding physician's decision to report or withhold reporting of suspected child abuse is a "related function to the doctor's performance of medical services"); *C. K.*, 2020 WL 6684921, at *6 (concluding that deemed health center's chief medical officer's alleged failure to report and cover up of subordinate physician's sexual abuse of a patient resulted from the CMO's "medical . . . or related functions" for purposes of § 233(a)); *see also Mele v. Hill Health Center*, No. 3:06-cv-00455, 2008 WL 160226, at * 3 (D. Conn. Jan. 8, 2008) (concluding that claim resulting from improper disclosure of medical information "concern[ed] the medical functions of providing treatment and the related function of ensuring the privacy of patient medical information," and was "covered by section 233(a)" immunity); *Z.B. v. Ammonoosuc Cmnty Health Services*, 2004 WL 1571988, *3 (D.

Me. June 13, 2004) ( "[N]othing in the language of section 233 requires that the damages claimed result from events related only to the performance of medical functions for the named plaintiff"); *Pomeroy v. United States*, No. 17-10211-DJC, 2018 WL 1093501, at *3-4 (D.C. Mass. Feb. 27, 2018) (rejecting government position that "food services" or the "negligent provision of food" is not a medical or related function and concluding deemed health center's execution of treatment plan qualified as "related function" under § 233(a) when nurse, contrary to plan, provided solid food to patient with known swallowing disability).

More recently, the District Court for the District of South Carolina twice found that deemed PHS defendants' alleged failure to maintain the confidentiality of patient records constituted a medical or related function within the meaning of 42 U.S.C. § 233(a). *See Mixon v. CareSouth Carolina, Inc.*, Case No. 22-cv-00269, 2022 WL 1810615 *4-8 (D.S.C. June 2, 2022) (Harwell, C.J.) (granting deemed health center defendant's motion to substitute United States, over its objection, in a putative class action arising out of health center's alleged failure to safeguard personal and confidential information of current and former patients); *Ford v. Sandhills Medical Foundation, Inc.*, Case No. 4:21-cv-02307-RBH,  2022 WL 1810614 (D.S.C. June 2, 2022) (same), *appeal filed*, No. 22-2268 (4th Cir., December 9, 2022).

In both *Mixon* and *Ford*, the court considered a deemed health center's immunity from a class action that, like this case, was premised on an alleged failure to properly maintain, preserve, and/or store confidential, medical and personal

identifying information of the named plaintiffs and all other persons similarly situated (*i.e.*, current and former patients), which allowed an unauthorized person to gain access to the information. *Mixon*, 2022 WL 1810615, at *1; *Ford*, 2022 WL 1810614, at *2. Each health center filed a motion to substitute the United States, after having removed the underlying action from the state court in which it was filed. *Mixon*, 2022 WL 1810615, at *1; *Ford*, 2022 WL 1810614, at *2.

After a hearing in each case, the court granted the motions to substitute the United States, concluding "the alleged data breach arose out of [the health center's] performance of medical or related functions within the scope of its employment as a deemed PHS employee." *Mixon*, 2022 WL 1810615, at *3; *Ford*, 2022 WL 1810614, at *4. The court found that its conclusions were "strengthened by [a health center's] statutory duty to maintain the confidentiality of patient records," and the fact a health center's "deemed status hinges in part on maintaining the confidentiality of patient records." *Mixon*, 2022 WL 1810615, at *4; *Ford*, 2022 WL 1810614, at *5.

In another similar data-breach case, *Doe v. Neighborhood Healthcare*, No. 21-cv-1587, 2022 WL 17663520 at *7 (S.D. Cal. Sept. 8, 2022), the District Court for the Southern District of California agreed with *Mixon* and *Ford* that "failures by the health centers to maintain the confidential nature of the records constituted a medical or related function" within the meaning of 42 U.S.C. § 233(a)). The court found *Mixon* and *Ford* to be "consistent with longstanding principles regarding the protection of health information." *Id*. (citing Standards for Privacy of Individually Identifiable Health Information, 65 Fed. Reg. 82462-01) ("The need for privacy of

health information, in particular, has long been recognized as critical to the delivery of needed medical care."). "Although [the PHS defendant's] failure to maintain and protect the confidential information from unauthorized access was not done in the actual rendering of medical treatment, it is a related function because maintaining confidential personal and health information is necessary to effectively treat patients." *Id.* at *7 (citing cases in which § 233(a) immunity covered conduct of non-provider employees of deemed health centers); *see also Krandle v. Refuah Health Ctr., Inc.*, No. 22-cv-4977, 2023 WL 2662811, at *6 (S.D.N.Y. Mar. 28, 2023) (concluding, in resolving motion to remand, that deemed health center's alleged "failure to maintain and protect the confidential information from unauthorized access. . . is a related function because maintaining confidential personal and health information is necessary to effectively treat patients.

The plain text, structure, and purpose § 233(a) and (g) support one conclusion: the maintenance of medical records and the protection of private and confidential patient data and information is an essential element of medical care. This statutorily mandated function, in relevant context, is "medical or . . . related function[]." 42 U.S.C. § 233(a). Accordingly, Plaintiffs' claims—alleging ARcare's failure to perform this function—fit squarely within the "broad" language of this immunity-granting statute, which "easily accommodates both known and unknown causes of action," providing "comprehensive" immunity to federally supported health centers, like ARcare, from any claim arising from the performance of "medical . . . or related functions" undertaken within the scope of its deemed federal

19

employment. *See Hui*, 559 U.S. at 806 (citing § 233(a)) (concluding § 233(a) covers *Bivens* claims even though such claims post-dated the passage of § 233(a) and are not within with scope of the FTCA's waiver of sovereign immunity).

There is no dispute that ARcare was deemed to be a PHS employee and was acting in the scope of its deemed federal employment with respect to the alleged conduct. Nothing more is required for immunity to apply.

## CONCLUSION

For the foregoing reasons, this Court should order the substitution of the United States in ARcare's place pursuant to 42 U.S.C. § 233.

> Scott A. Irby (99192)
> Gary D. Marts, Jr. (2004116)
> Andrea L. Kleinhenz (2021216)
> WRIGHT, LINDSEY & JENNINGS LLP
> 200 West Capitol Avenue, Suite 2300
> Little Rock, Arkansas 72201-3699
> (501) 371-0808
> FAX: (501) 376-9442
> sirby@wlj.com;
> gmarts@wlj.com;
> akleinhenz@wlj.com
>
> Matthew Freedus (D.C. Bar # 475887)*
> Feldesman Tucker Leifer Fidell LLP
> 1129 20th Street, NW, Suite 400
> Washington, DC 20036
> (202) 466-8960;
> FAX: (202) 293-8103
> mfreedus@feldesemantucker.com
>
> *Admitted pro hac vice*
>
> *Attorneys for Defendant ARcare, Inc.*