**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

| | |
|---|---|
| **GREG HALE, ALICIA GILMORE, MICHAEL WHITKANACK, AND JESSICA WHITE**, on behalf of themselves and all others similarly situated, et al. <br><br> *Plaintiffs*, <br><br> v. <br><br> **ARCARE, INC.,** <br><br> *Defendant*. | Case No. 3:22-cv-00117-BSM |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## I.    INTRODUCTION

Plaintiffs Greg Hale, Jessica White, Alicia Gilmore, and Michael Whitkanack (collectively, "Plaintiffs"),[1] have reached a proposed class action settlement with Defendant Arcare, Inc. ("Arcare" or "Defendant") for a $3,900,000 non-reversionary common fund to resolve all claims arising from the unauthorized access to or acquisition of Private Information that Defendant discovered on or about February 24, 2022 (the "Data Incident"). Approximately 345,000 individuals were notified by Defendant that their Social Security numbers, driver's license or state identification numbers, dates of birth, financial account information, medical treatment information, prescription information, medical diagnosis or condition information, and health insurance information ("Private Information") may have been implicated in the Data Incident. S.A. ¶¶ 2, 48; Consolidated Class Action Complaint (ECF No. 19) ¶ 2.

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings defined in the Settlement Agreement ("S.A.").

The Settlement provides tangible relief and lies well within the range of reasonableness necessary for this Court to grant preliminary approval under Rule 23(e). *See* Joint Declaration of Class Counsel ("Joint Decl.") ¶¶ 9-10, 21-22. The Court should, therefore, (1) preliminarily approve the Settlement; (2) provisionally certify the Settlement Class; (3) approve the notice and claims process, and direct that notice be sent to all Class Members in the reasonable manner outlined below; (4) approve the procedures for Settlement Class Members to opt-out of or object to the Settlement; (5) appoint Verita Global as the Settlement Administrator; (6) appoint Class Representatives and Class Counsel; (7) stay the Action pending Final Approval; and (8) set a Final Approval Hearing date.

## II.    BACKGROUND

### A.  Procedural History

This is a data privacy class action brought by Plaintiffs on behalf of themselves and a class of individuals to whom Defendant provided notice that their Private Information may have been impacted in the Data Incident. S.A. ¶ 59. This litigation concerns a data security incident that Defendant, a healthcare provider, experienced between January 18 and February 24, 2022, in which an unauthorized third party allegedly accessed or acquired sensitive data belonging to Defendants' employees, customers, and patients. *See id*. ¶ 2; ECF No. 19 ¶ 1.

On May 10, 2022, Plaintiff Greg Hale filed the first class action complaint for claims arising from the Data Incident. S.A. ¶ 3. Thereafter, four other actions were filed against Defendant. *Id*. On March 1, 2023, the Court granted consolidation of the cases. *Id*. ¶ 4; Order (ECF No. 17). On June 2, 2023, Plaintiffs filed their operative Consolidated Class Action Complaint, asserting claims for negligence; breach of implied contract; unjust enrichment; breach of fiduciary duty; and declaratory judgement and injunction relief. S.A. ¶ 5.

In response, on July 26, 2023, Defendant filed a Motion to Substitute the United States or, in the Alternative, Motion to Dismiss (the "Motion"). *Id*. ¶ 6. On March 8, 2024, after the Motion had been fully briefed and argued, the Court entered an Order denying Defendant's Motion. *Id*. On April 5, 2024, Defendant filed its Notice of Appeal, and on February 13, 2026, the United States Court of Appeals for the Eighth Circuit affirmed this Court's ruling. *Id*. ¶ 7. Finally, on May 6, 2026, the Court of Appeals issued its ruling denying Defendant's petition for rehearing en banc and petition for rehearing by the panel. *Id*.

Following the Court of Appeal's ruling, the Parties began discussing the possibility of resolution, agreeing that attending mediation was in the best interest of those impacted in the Data Incident and all Parties concerned. S.A. ¶ 8. Prior to engaging in mediation, the Parties exchanged informal discovery, which allowed the parties to evaluate each side's respective position. Joint Decl. ¶¶ 6-7. The Parties exchanged discovery related to liability and damages, including, but not limited to, the number of individuals impacted by the Data Incident, the categories of Private Information involved, and the security enhancements implemented since the Data Incident to better protect its computer systems from future incidents. *Id.* Additionally, the Parties exchanged detailed mediation statements outlining their respective positions regarding liability and damages. *Id*. After nearly a day of arm's-length negotiations before experienced mediator, the Hon. Wayne Anderson (Ret.), the Parties agreed to the material terms of this Settlement, which will resolve all claims related to the Data Incident for the Class. *Id*. ¶ 8.

### B.  Summary of Settlement Terms

Under the proposed Settlement, Defendant will pay $3,900,000 to establish the Settlement Fund to be distributed under the Settlement Agreement. S.A. ¶ 62. The Settlement defines the Settlement Class as:

> **[A]ll living individuals residing in the United States who were sent a notice of the Data Incident indicating their Private Information may have been impacted in the Data Incident.**

*Id.* ¶ 59. The Class specifically excludes: (1) all persons who are directors and officers of Defendant; (2) governmental entities; and (3) the Judge assigned to the Action, that Judge's immediate family, and Court staff. *Id.* Under the Settlement, Defendant agrees to pay a total of $3,900,000 into the non-reversionary Settlement Fund, which will be used to pay: (1) all Settlement Class Member Benefits (described below) to Settlement Class Members who submit Valid Claims; (2) all Settlement Administration Costs; and (3) any attorneys' fees, costs, and Service Awards approved by the Court. *Id.* ¶ 66.

The Settlement Fund will provide broad relief to Settlement Class Members in several categories, including monetary and non-monetary components. First, all Settlement Class Members are eligible to submit a claim reimbursement of up to $5,000 per Settlement Class Member for documented losses related to the Data Incident ("Cash Payment A – Documented Losses"). S.A. ¶ 69(a). These losses may include unreimbursed losses relating to fraud or identity theft if: (i) the loss is an actual, documented, and unreimbursed monetary loss; (ii) the loss was more likely than not caused by the Data Incident; and (iii) the loss was incurred after the date of the Data Incident. *Id.* Claims must be submitted with adequate documentation. While personal certifications, declarations, or affidavits do not constitute proper documentation, they may be included to provide clarification, context, or support for other submitted reasonable documentation. *Id.* Settlement Class Members shall not be reimbursed for expenses if they have already been reimbursed by another source, including compensation provided in connection with any credit monitoring and identity theft protection product. *Id.*

Second, as an alternative to Cash Payment A, Settlement Class Members may elect to

receive a pro rata share of the Net Settlement Fund ("Cash Payment B – Alternate Cash"), estimated to be $100. S.A. ¶ 69(b).

Third, in addition to either Cash Payment A or Cash Payment B, Settlement Class Members may claim one (1) year of CyEx's Medical Shield Complete ("Medical Data Monitoring"), which includes single-bureau credit monitoring with up to $1,000,000 of identity theft insurance, as well as monitoring of healthcare insurance plan IDs, healthcare beneficiary identifier ID; medical records; national provider identifier; international classification of disease; health savings account; high risk; and Dark Web. S.A. ¶ 69(c).

Under the Settlement, all Class Members may file a claim to elect either Cash Payment A or Cash Payment B. *Id.* ¶ 69. In addition to Cash Payments, Settlement Class Members may claim Medical Data Monitoring. Cash Payments will be subject to a *pro rata* increase or decrease depending on whether the amount of Valid Claims is insufficient to or exhausts the Net Settlement Fund. *Id.* Prior to Final Approval, Defendant will provide Class Counsel with a written declaration regarding the security measures (including the associated costs) that it implemented (or will implement) following the Data Incident to better protect Settlement Class Members' Private Information from future disclosure. *Id.* ¶ 69(d). Any such costs will be paid separately by Defendant and will not come out of the Settlement Fund. *Id.*

Finally, in the event any funds remain in the Settlement Fund 180 days following the date Settlement Class Members are sent an email to select their form of payment, all funds shall be distributed *cy pres* to Legal Aid of Arkansas upon Court approval. S.A. ¶ 101.

### C. Scope of the Release

In exchange for the consideration above, Class Members who do not timely and validly exclude themselves from the Settlement will be deemed to have released Defendant from claims

arising from or related to the Data Incident at issue in this Action. S.A. ¶¶ 101-05.

### D. Notice and Administration Plan

Under the Settlement Agreement, the Parties have selected Verita Global ("Verita") to be the Settlement Administrator, which will provide the Class with notice and administer the claims. S.A. ¶¶ 71-73. The decision to select Verita was based on the scope of settlement administration services and prior experience with successful administrations in similar matters proposed balanced against the cost for such services. *See* Joint Decl. ¶ 13. Proposed Class Counsel understands that any settlement administration costs and expenses will be deducted from the Settlement Fund and endeavored to select a settlement administrator for this case offering the broad services for a price that is favorable to the Class. *Id.*

No later than five days after entry of the Preliminary Approval Order, Defendant will provide the Settlement Administrator with the Class List. S.A. ¶ 74. After the Class List has been created, and within 15 days following entry of the Preliminary Approval Order, the Settlement Administrator shall commence the Notice Program.

The Settlement Administrator will provide Email Notice to each Class Member for whom valid email addresses are known. *Id.* ¶ 76. For those for whom only a physical address is known, the Settlement Administrator will send Postcard Notice. *Id.* The Email and Postcard Notices will be sent in a form substantially similar to Exhibits 1 and 2 to the Settlement, and will clearly and concisely inform Class Members of: (a) the material terms of the Settlement; (b) how to submit a Claim Form; (c) the Claim Form, Opt-Out, and Objection Deadlines; (d) the Final Approval Hearing date; and (e) the Settlement Website address at which Settlement Class Members may access this Agreement and other related documents and information. *Id.*

The Settlement Administrator will publish copies of the Long Form Notice and Claim Form

on the Settlement Website, in addition to the Settlement Agreement and all court documents related to the Settlement. *Id.* ¶ 63. Among other duties, the Settlement Administrator will be responsible for accounting for all the claims made and exclusions requested, determining eligibility, and disbursing funds from the Settlement Fund directly to Class Members. *Id*. ¶ 73. Proposed Class Counsel has significant experience evaluating settlement administration bids in similar data breach class action settlements and was able to work with Verita to both receive the Settlement Administration quote for this case and establish a notice plan that will sufficiently inform the Settlement Class. *See* Joint Decl. ¶¶ 13, 16, 33-36.

### E.  Attorneys' Fees, Costs, and Service Awards

Additionally, Plaintiffs will separately seek an award of attorneys' fees not to exceed one-third (1/3) of the Settlement Fund ($1,300,000.00), and for reimbursement of reasonable litigation expenses not to exceed $50,000.00, which shall be paid from the Settlement Fund. S.A. ¶ 97. The Application for Attorneys' Fees, Costs, and Service Awards will be filed at least fourteen (14) days before the Objection and Opt-Out Deadlines. *Id*. Subject to Court approval, Plaintiffs intend to request a Service Award in the amount of $2,500 to each individual Class Representative ($12,500 total) for their services and efforts in representing the Class. *Id*. ¶ 98.

## III.    PRELIMINARY APPROVAL

### A.  Legal Standard

There exists a strong public policy favoring settlement agreements. *See Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("[A] strong public policy favors agreements, and courts should approach them with a presumption in their favor.") (citation omitted); *Cohn v. Nelson*, 375 F.Supp.2d 844, 852 (E.D. Mo. 2005) (noting that settlement is favored "in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal

litigation.") (citation omitted). "In approving a class settlement, the district court must consider whether it is 'fair, reasonable, and adequate.'" *Christina A. ex rel. Jennifer A. v. Bloomberg*, 315 F.3d 990, 992 (8th Cir. 2003) (quoting *Van Horn v. Trickey*, 840 F.2d 604, 606 (8th Cir. 1988) (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir.1975)).

"Review of a proposed class action settlement typically proceeds in two stages. 'At the first stage, the parties submit the proposed settlement to the Court, which must make a preliminary fairness evaluation.'" *Stuart v. State Farm Fire & Cas. Co.*, No. 4:14-CV-4001, 2020 WL 13539024, at *1 (W.D. Ark. Jan. 3, 2020) (citations and quotations omitted). *See Briles v. Tiburon Fin., LLC*, No. 8:15CV241, 2016 WL 4094866, at *5 (D. Neb. Aug. 1, 2016) (At preliminary approval, "trial courts typically first certify the class for settlement purposes, and then consider the fairness of the settlement.") (citing 4 Newberg on Class Actions, § 11.26). "If the proposed settlement is preliminarily acceptable, the Court then directs that notice be provided to absent class members, in order to afford them an opportunity to be heard on, object to, and opt out of the settlement." *Stuart*, 2020 WL 13539024, *1 (citations and quotations omitted).

"At this stage, "the 'fair, reasonable, and adequate' standard imposed by Rule 23(e)(2) is lowered, and the Court's focus is on whether the settlement is 'within the range of possible approval due to an absence of any glaring substantive or procedural deficiencies.'" *Adams v. Cradduck*, No. 5:13-CV-05074, 2016 WL 7664135, at *3 (W.D. Ark. Nov. 17, 2016) (citation omitted). "Although proposed settlements are presumptively reasonable at the preliminary-approval stage, the Court must nonetheless 'consider issues such as whether the settlement carries the hallmarks of collusive negotiation or uninformed decision-making, is unduly favorable to class representatives or certain class members, or excessively compensates attorneys.'" *Stuart*, 2020 WL 13539024, at *1 (citation omitted).

As discussed below, the Settlement Class warrants certification for settlement purposes and the Settlement falls within the "range of reasonableness" under the revised Rule 23 and other factors generally considered by Eighth Circuit Courts, and thus merits preliminary approval.

### B.  The Settlement Class Should be Preliminarily Approved

The Supreme Court has recognized that the benefits of a proposed settlement of a class action can be realized only through the certification of a settlement class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S 591, 620 (1997). Plaintiffs seek certification of a Settlement Class consisting of "all living individuals residing in the United States who were sent a notice of the Data Incident indicating their Private Information may have been impacted in the Data Incident." S.A. ¶ 59.

For the Court to certify the Settlement Class, Plaintiffs must satisfy all the requirements of Rule 23(a), and one of the requirements of Rule 23(b). The four requirements of Rule 23(a) are numerosity, commonality, typicality, and adequacy. Additionally, Plaintiffs seek certification under Rule 23(b)(3), which provides that certification is appropriate where "the questions of law or fact common to class members predominate over any questions affecting only individual members [predominance], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [superiority]." Fed. R. Civ. P. 23(b)(3).

### 1.  *The proposed Class is Sufficiently Numerous*

The numerosity requirement under Rule 23(a)(1) is satisfied where the class is so numerous that joinder of all Class Members is impracticable. Numerosity is certainly satisfied here, as the Class is comprised of approximately 345,000 members. *See Ark. Educ. Ass'n v. Bd. of Educ.*, 446 F.2d 763, 765 (8th Cir. 1971) (numerosity satisfied with 20 class members); *Adams v. Cradduck*, No. 5:13-CV-05074, 2016 WL 7664135, at *3 (W.D. Ark. Nov. 17, 2016) (numerosity satisfied with approximately 2,900 class members); *Milam v. Arkansas Util. Prot. Servs., Inc.*,

9

No. 4:18-CV-00312 BSM, 2019 WL 13318360, at *2 (E.D. Ark. Feb. 15, 2019) (numerosity satisfied with 163 class members). As such, the numerosity requirement is easily satisfied.

### 2. *Questions of Law and Fact are Common to the Class*

The commonality requirement under Rule 23(a)(2) is satisfied where "multiple questions of law or fact are common to the class." *In re Netgain Tech., LLC*, No. 21-CV-1210 (SRN/LIB), 2025 WL 3063288, at *4 (D. Minn. Nov. 3, 2025) (citations omitted). The threshold for this prong is not high. Courts generally require that plaintiffs "'demonstrate that the class members have suffered the same injury,' and that redress is 'capable of classwide resolution[,]'" although "[c]ommonality need not exist on every issue." *Adams*, 2016 WL 7664135, *4 (citations omitted).

Commonality is satisfied where there exist common issues among Plaintiffs and Class Members, including: whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiffs' and Class Members' Private Information; whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach; whether Defendant owed a duty to Class Members to safeguard their Private Information; and whether Defendant breached its duty to Class Members to safeguard their Private Information. *See* Compl. ¶ 168. These common questions, and others alleged by Plaintiffs, are central to the causes of action brought here and can be addressed on a class-wide basis. Thus, Plaintiffs have met the commonality requirement.

### 3. *Plaintiffs' Claims and Defenses are Typical of the Class*

The typicality requirement under Rule 23(a)(3) is satisfied where the "plaintiffs' claims 'stem from a single event or are based on the same legal or remedial theory.'" *In re Netgain Tech., LLC*, 2025 WL 3063288, at *4 (D. Minn. Nov. 3, 2025) (citations omitted). "The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to

the named plaintiff." *Taylor v. ANB Bancshares, Inc.*, No. 08-5170, 2010 WL 4627841, at *6 (W.D. Ark. Oct. 18, 2010), *R&R adopted,* No. 08-CV-5170, 2010 WL 4627672 (W.D. Ark. Nov. 4, 2010) (quoting *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995)) (citation omitted). "[T]he typicality requirement is liberally construed[]" and is generally satisfied "if the claims of all members arise from a single event or share the same legal theory." *Taylor*, 2010 WL 4627841, *6 (citations omitted).

Because Plaintiffs' and Class Members' claims all stem from the same Data Incident that resulted in the exposure of their Private Information, the typicality requirement is satisfied. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017) ("[I]t is sufficient for typicality if the plaintiff endured a course of conduct directed against the class.").

### 4. *Plaintiffs and Class Counsel Have Provided Fair and Adequate Representation*

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Eighth Circuit evaluates two factors when determining adequacy: "1) whether the class representatives have common interests with the members of the class; and 2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Perez-Benites v. Candy Brand, LLC*, 267 F.R.D. 242, 248 (W.D. Ark. 2010) (citations omitted).

"This inquiry serves to uncover conflicts of interest between named parties and the class they seek to represent." *Taylor*, 2010 WL 4627841, at *10. It "depends upon two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *U.S. Fid. & Guar. Co. v. Lord*, 585 F.2d 860, 873 (8th Cir. 1978) (citations and quotations omitted).

Plaintiffs have no conflicts with the Class and have participated actively in the case and

11

kept in regular communication with counsel staying apprised of the litigation. Joint Decl. ¶ 39. After litigating this case since 2022, Plaintiffs were able to achieve a substantial common fund for Class Members. *Id*. ¶¶ 21-22, 39. Moreover, proposed Class Counsel have significant experience in class and complex litigation, including data privacy class actions in state and federal courts throughout the country. *Id*. ¶¶ 33-36. Proposed Class Counsel have invested considerable time and resources into the prosecution of this action. *Id*. ¶ 37. Class Counsel have experience litigating complex class action lawsuits and were able to negotiate an outstanding settlement for the Class Members. *Id*. ¶¶ 33-37. Thus, the Court should appoint Jean Martin of Aylstock, Witkin, Kreis & Overholtz, PLC, and Bryan Bleichner of Chestnut Cambronne PA as Class Counsel, and determine that the Rule 23(a) adequacy requirement is satisfied.

### 5.  *Certification under Rule 23(b)(3) is Appropriate*

Under Rule 23(b)(3), the Court must "find 'that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Hicks v. Sw. Energy Co.*, 330 F.R.D. 183, 194 (E.D. Ark. 2018) (citation omitted).

### a.  Common Questions of Law and Fact Predominate

As to predominance, "Courts have held that when common questions represent a significant aspect of the case and can be resolved in a single adjudication, then it should be handled in a class action rather than on an individual basis." *Perez-Benites v. Candy Brand, LLC*, 267 F.R.D. 242, 249 (W.D. Ark. 2010) (citations omitted). In this case, the common factual and legal questions all cut to the issues "at the heart of the litigation." *Tate v. EyeMed Vision Care, LLC*, No. 1:21-CV-36, 2025 WL 2119389, at *5 (S.D. Ohio July 29, 2025).

Here, the key predominating questions are whether Defendant had a duty to exercise

reasonable care in safeguarding, securing, and protecting the Plaintiffs' and Class Members' Private Information, and whether Defendant breached that duty. The common questions that arise from Defendant's conduct predominate over any individualized issues. Critically, the answers to these questions are not tangential or theoretical such that the litigation will not be advanced by certification. Rather, these common questions go right to the center of the controversy, and the answers will be the same for each Class Member. Thus, the predominance requirement is readily satisfied. *See, e.g., In re Netgain Tech., LLC*, 2025 WL 3063288, at \*5 (finding predominance in analogous data breach action); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312–15 (N.D. Cal. 2018) (similar, data breach class action).

### b. A Settlement Class is the Superior Method of Adjudicating this Case

"The other requirement of Rule 23(b)(3) is that a class action must be superior to other available methods for fair and efficient adjudication of the controversy." *Perez-Benites*, 267 F.R.D. at 249. Superiority is satisfied "when 'the class members' claims are generally small and unlikely to be pursued individually.'" *In re Netgain Tech., LLC*, 2025 WL 3063288, at \*5 (citation omitted).

Relevant factors include: "1) the class members' interests in individually controlling the prosecution or defense of separate actions; 2) the extent and nature of any litigation concerning the controversy already begun by or against class members; 3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and 4) the likely difficulties in managing a class action." *Perez-Benites*, 267 F.R.D. at 249 (citing Fed. R. Civ. P. 23(b)(3)(A)-(D).

The Settlement provides Class Members with various forms of relief and contains well-defined administrative procedures to ensure due process. This includes the right of any Class Member who is dissatisfied with the settlement to object to or to request exclusion from the Class. Moreover, the cost of litigating each Class Member's case on an individual basis would be

substantial. The most economically feasible method of litigating and resolving these hundreds of thousands of claims is through a class action, as has been recognized in analogous data breach actions. *See In re Netgain Tech., LLC*, 2025 WL 3063288, at \*5 (noting inefficiency of litigating individual claims, particularly against the amount in controversy, and finding superiority).

Under these circumstances, a class action resolution in this Court will provide the most effective and efficient relief for all Class Members who desire to submit a claim. Therefore, the Court should grant class certification for settlement purposes under Rule 23.

### C.  The Proposed Settlement is Fair, Reasonable, and Adequate

As discussed above, preliminary approval requires a court to determine whether it is "likely" to find that the proposed settlement is "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(1)(B), (e)(2)). Specifically, the Court contemplates "whether '(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate ...; and (D) the proposal treats class members equitably relative to each other.'" *Barclay v. iFIT Health & Fitness, Inc.*, No. 19-CV-2970 (ECT/DJF), 2025 WL 3004039, at \*9 (D. Minn. Oct. 27, 2025) (citing Fed. R. Civ. P. 23(e)(2)). As detailed below, the Settlement satisfies the Rule 23(e) factors, as well as the Eighth Circuit's factors, and thus warrants preliminary approval.[2]

### 1.  Plaintiffs and Class Counsel Have Adequately Represented the Class

As discussed at Section III(B)(4), *supra*, the adequacy inquiry considers "whether '(1) the

---

[2] Prior to the amendment of Rule 23(e), the Eighth Circuit had applied various factors at the final approval stage, including: (1) the merits of the plaintiff's case weighed against the terms of the settlement, (2) the defendant's financial condition, (3) the complexity and expense of further litigation, and (4) the amount of opposition to the settlement. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005). These factors remain relevant within the Eighth Circuit, and are considered below.

class representatives have common interests with members of the class, and (2) whether the class representatives [have] vigorously prosecute[d] the interests of the class through qualified counsel." *Murphy v. Harpstead*, No. CV 16-2623 (DWF/LIB), 2023 WL 4034515, at *5 (D. Minn. June 15, 2023) (citations omitted).

Plaintiffs and Class Counsel have provided adequate representation for the same reasons that they are adequate representatives under Rule 23(a)(4). *See* Joint Decl. ¶ 39. Plaintiffs, like Class Members, have been victims of the same Data Incident, and thus share common interests with the Class. *Id*. ¶ 40. Throughout the litigation, Plaintiffs have represented Class Members' best interests, maintaining contact with counsel, assisting in the investigation of the case, reviewing the Complaint, remaining available for consultation throughout the mediation and settlement negotiations, and reviewing the Settlement Agreement. *Id* ¶ 39. Class Counsel have likewise vigorously pursued Class Members' interests in securing a Settlement that provides immediate and tangible benefits to Class Members while avoiding the risks of continued litigation. In doing so, Class Counsel relied on their extensive experience in data breach litigation, their detailed investigation of this particular matter, and informal discovery exchanged. *Id*. ¶¶ 21, 24-26, 33-34. This factor warrants preliminary approval.

### 2. *The Proposed Settlement Was Negotiated at Arm's-Length*

The Settlement and its terms are the product of intensive, arms-length bargaining under the guidance of an experienced mediator. *See id.* ¶¶ 8, 11-12. Here, "[t]he terms of the Settlement Agreement were negotiated at arm's length, vigorously advocated by experienced counsel for Plaintiffs and Defendant[.]" *Gomez v. Centennial Bank*, No. 4:23-CV-00333-LPR, 2025 WL 2166002, at *3 (E.D. Ark. July 30, 2025).

Courts give "significant consideration to the judgment of experienced counsel who

conducted arms-length negotiations." *Yarrington v. Solvay Pharms., Inc.*, No. 09-CV-2261 (RHK/RLE), 2010 WL 11453553, at \*7 (D. Minn. Mar. 16, 2010). This factor is further supported by the presence of an experienced mediator during the Parties' settlement negotiations. *See In re Netgain Tech., LLC*, 2025 WL 3063288, at \*2 ("The Parties participated in multiple mediated settlement negotiations before the Honorable Jeffrey J. Keyes (Ret.) of Keyes ADR. As a result of these negotiations, the Parties were able to reach a final Settlement Agreement, which is now before the Court. Based on the uncontroverted evidence, the Settlement Agreement was negotiated in good-faith and at arms-length."); *Randall v. GreatBanc Tr. Co.*, No. 22-CV-2354 (LMP/DJF), 2026 WL 1068035, at \*5 (D. Minn. Apr. 20, 2026) (similar).

Given that the pending Settlement was reached by experienced counsel and with the assistance of experienced mediator, the Hon. Wayne Anderson (Ret.), this Court should find that this factor is satisfied because there exists no evidence of fraud or collusion. *See* Joint Decl. ¶¶ 11-13, 28.

### 3. *The Settlement Provides Substantial Relief to the Settlement Class*

To assess the adequacy of relief provided by the Settlement, the Court considers: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).[3]

#### a. Costs, Risks, and Delay of Trial and Appeal

The value achieved through the Settlement Agreement is guaranteed, where chances of

---

[3] A fourth factor—any agreement required to be identified under Rule 23(e)(3)—is irrelevant here, since no such agreements exist.

prevailing on the merits are uncertain. While Plaintiffs strongly believe in the merits of their case, they also understand that Defendant will assert a number of potentially case-dispositive defenses. Due at least in part to their cutting-edge nature, data breach cases like this one generally face substantial hurdles. *See Jackson v. Nationwide Ret. Sols., Inc.*, No. 2:22-CV-3499, 2024 WL 958726, at *4 (S.D. Ohio Mar. 5, 2024) ("Here, the difficulty Plaintiffs would encounter in proving their claims, the substantial litigation expenses, and the possibility of further delay in recovery due to the appellate process weigh in favor of approving the Settlement."); *Hammond v. Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060(RMB)(RLE), 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). In contrast, through the Settlement, Plaintiffs and Class Members gain significant benefits without having to face the risk of not receiving any relief at all. *See* Joint Decl. ¶ 21-22, 29.

b.  Effectiveness of Method of Distributing Relief

The proposed method of distributing relief is likewise adequate. Given the nature of this case, the parties do not anticipate any issues identifying Class Members or distributing the relevant notices and relief. Likewise, the Settlement benefits will be paid directly to valid claimants no later than 30 days of the Settlement's Effective Date. S.A. ¶ 91. The fairness and effectiveness of distributing relief supports granting preliminary approval and commencing the Notice Program.

c.  Terms of Attorneys' Fees

Likewise, there are no grounds to doubt the fairness of the proposed settlement on this basis. At this juncture, the Court's duty is simply to "determine that the proposal is reasonable for

purposes of providing Notice to Class Members and scheduling a final fairness hearing." *Se. Pennsylvania Transportation Auth. v. Orrstown Fin. Servs., Inc.*, No. 1:12-CV-00993, 2023 WL 1454371, at \*11 (M.D. Pa. Feb. 1, 2023).

Class Counsel have agreed to limit their fee request to one-third (1/3) of the Settlement Fund ($1,300,000.00), and for reimbursement of reasonable litigation expenses not to exceed $50,000.00, which shall be paid from the Settlement Fund. S.A. ¶ 97. Courts in the Eighth Circuit, as well as this district, routinely approve fee awards of one-third or more. *See Isbell v. Polaris, Inc.*, No. 22-CV-1322 (WMW/DJF), 2023 WL 6662980, at \*2 (D. Minn. Oct. 12, 2023) (approving 33.33% fees, noting that "[a]n award of one-third of the settlement is common in the Eighth Circuit, as courts have routinely awarded attorneys' fees ranging from 25% to 36% of a common fund under the percentage-of-the-fund method."); *Baldwin v. Nat'l W. Life Ins. Co.*, No. 2:21-CV-04066-WJE, 2022 WL 16709706, at \*2 (W.D. Mo. June 16, 2022) ("The one-third fee amount is consistent with fees regularly awarded by the Eighth Circuit."); *Stoudemire v. Lee Enters., Inc.*, No. 3:22-CV-00086-SHL-SBJ, 2025 WL 4114171, at \*3 (S.D. Iowa Aug. 14, 2025) (Recognizing Eighth Circuit courts "have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund.").

Furthermore, Plaintiffs will file an application for an award of attorneys' fees and expenses at least 14 days before the objection and opt out deadlines. This timing will allow the Class to evaluate the fee and expense request in determining whether to participate in the Settlement and provide the Court the ability to consider the request and the Class's response to them, if any, when evaluating whether to grant final approval of class action settlement.

### 4. *The Proposed Settlement Treats Settlement Class Members Equitably*

Moreover, the proposed Settlement does not improperly discriminate between any Class

18

Member, as all Settlement Class Members are entitled to the same relief. All Settlement Class Members are eligible to make a claim for monetary relief and/or Medical Data Monitoring. Likewise, the Notice Program will be implemented uniformly across the Class, and all Settlement Class Members will have the opportunity to object to or exclude themselves from the Settlement. And, while Plaintiffs will each be seeking a $2,500 award for their services on behalf of the Class, this award is equal or less than the amount that any given Class Member can claim in reimbursements.

### 5. *Other Factors Considered by Eighth Circuit Courts Weigh in Favor of Preliminary Approval*

The factors considered by Eighth Circuit Courts prior to the amendment of Rule 23(e) are still considered today and similarly weigh in favor of approval.

First, the Settlement provides for significant relief considering the risks of continued litigation. As discussed extensively above, while Plaintiffs remain confident in the merits of their claims, they face significant risk in further litigation due in part to the constantly evolving nature of data breach litigation. Thus, this factor weighs in favor of preliminary approval.

Second, Defendant's financial condition is not at issue here, and thus does not weigh either for or against approval of the Settlement.

Third, continued litigation is likely to be complex, lengthy, and expensive. Although Plaintiffs believe in the strengths of their claims, the risks discussed above cannot be disregarded. Looking past the potential that either side may not be successful at trial, Plaintiffs anticipate accruing substantial fees and costs were litigation to proceed, including through significant discovery and attendant motions practice.

Fourth, while no opposition to the Settlement is currently known, this factor is better examined after notice has been issued to Class Members, and thus does not weigh either for or

against preliminary approval of the Settlement. Thus, these additional factors weigh in favor of approving a result exactly like that obtained by Plaintiffs and Class Counsel. Accordingly, the Settlement should be preliminarily approved.

### D. The Court Should Appoint the Proposed Class Representatives, Proposed Class Counsel, and Settlement Administrator

Plaintiffs also seek to be appointed as Class Representatives for the Settlement Class. Plaintiffs have cooperated with counsel, assisted in the preparation of the Complaints, participated in discovery, reviewed and approved of the settlement demand, and approved the terms of the Settlement on behalf of the Settlement Class. Joint Decl. ¶¶ 39-42. Moreover, Plaintiffs are committed to continuing to prosecute this case through the Court's potential final approval, including overseeing the notice program, and defending the Settlement against any objectors. They are adequate to serve, and the Court should appoint them as Class Representatives.

Also, for the reasons previously discussed with respect to adequacy of representation, the Court should designate Jean Martin of Aylstock, Witkin, Kreis & Overholtz, PLC and Bryan Bleichner of Chestnut Cambronne PA as Class Counsel. Finally, the parties have agreed that Verita should act as Settlement Administrator. Verita has a long history of successful settlement administrations in class actions, including data breach actions such as this. *Id.* ¶ 13. The Court should thus appoint Verita to act as the Settlement Administrator in this case.

### E. The Proposed Notice Program is Reasonable and Should be Approved

The Court should adopt the proposed notice program under Rule 23(e) and order that it be executed. Under Rule 23(e)(1), the notice program must be directed "in a reasonable manner to all class members who would be bound by" the proposed Settlement. Likewise, Rule 23(b)(3) requires that notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Courts have recognized

20

that the best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The Notice Program provided for in the Settlement Agreement has been designed to fulfill the criteria enumerated in Rule 23 and the Manual for Complex Litigation. *See, e.g.,* S.A. Exs. 1-4. Following preliminary approval, the Settlement Administrator will disseminate the Notice Program to Class Members via email and U.S. mail. S.A. ¶ 76. Additionally, the Settlement Administrator will establish the Settlement Website, which will make all versions of the Settlement Notice available to Class Members, as well as all relevant filings. *Id.* ¶ 77. The Notices themselves have been designed to be clear, straightforward, and simple to understand. They provide: (a) a description of the material terms of the Settlement; (b) steps on how to submit a Claim Form; (c) the Claim Form Deadline; (d) the Opt-Out Deadline; (e) the Objection Deadline; (f) the Final Approval Hearing date; and (g) the Settlement Website address at which Settlement Class Members may access the Settlement Agreement and other related documents and information. *Id.* ¶ 76. *See, e.g.*, Joint Decl. ¶¶ 14-16; S.A. Exs. 1-4.

In sum, the Notice Program is designed to provide Class Members with the best practicable notice under the circumstances, and should be approved by this Court.

## IV.    CONCLUSION

Accordingly, Plaintiffs respectfully request that the Court: (1) preliminarily approve the Settlement; (2) provisionally certify the Settlement Class; (3) approve the notice and claims process, and direct that notice be sent to all Class Members; (4) approve the procedures for Settlement Class Members to opt-out of or object to the Settlement; (5) appoint Verita as the

Settlement Administrator; (6) appoint Class Representatives and Class Counsel; (7) stay the Action

pending Final Approval; and (8) set a Final Approval Hearing date.


Date: July 30, 2026                         Respectfully submitted,

                                            */s/ Bryan L. Bleichner*
                                            Bryan L. Bleichner (admitted *pro hac vice*)
                                            Philip J. Krzeski (admitted *pro hac vice*)
                                            **CHESTNUT CAMBRONNE PA**
                                            100 Washington Ave S, Ste 1700
                                            Minneapolis, MN 55401
                                            Phone: (612) 339-7300
                                            Fax: (612) 336-2940
                                            bbleichner@chestnutcambronne.com
                                            pkrzeski@chestnutcambronne.com

                                            Jean Martin (admitted *pro hac vice*)
                                            Francesca Kester Burne (admitted *pro hac vice*)
                                            **AYLSTOCK, WITKIN, KREIS,**
                                            **& OVERHOLTZ PLC**
                                            17 E Main St, Ste 200
                                            Pensacola, FL 32502
                                            Phone: (844) 794-7402
                                            Phone: (850) 202-1010
                                            jmartin@awkolaw.com
                                            fburne@awkolaw.com

                                            ***Interim Co-Lead Class Counsel***