**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**

| | |
|---|---|
| GREG HALE, ALICIA GILMORE, MICHAEL WHITKANACK, and JESSICA WHITE, on behalf of themselves and all others similarly situated, <br><br> V. <br><br> ARCARE, INC. | Case No. 3:22-cv-117-BSM |

**SETTLEMENT AGREEMENT**

This Settlement Agreement[1] is entered into between Plaintiffs, individually, and on behalf of the Settlement Class, and Defendant Arcare, Inc., as of the date last signed below. The Parties hereby agree to the following terms in full settlement of the Action, which will include a dismissal of all claims against Defendant in this Action, subject to a Final Approval Order entered by the Court.

**I.     Procedural History**

1.     Defendant is a healthcare provider with its principal place of business in Augusta, Arkansas.

2.     On February 24, 2022, Defendant experienced a data security incident that impacted its computer systems and caused a temporary disruption to services. Defendant launched an investigation during which it determined that an unauthorized actor may have accessed and/or acquired sensitive data during a period of unauthorized access to Defendant's computer systems between January 18 and February 24, 2022. That information included Social Security numbers, driver's license or state identification numbers, dates of birth, financial account information,

---

[1] All capitalized terms herein shall have the same meanings as those defined in Section II below.

medical treatment information, prescription information, medical diagnosis or condition information, and health insurance information.

3.    On May 10, 2022, Plaintiff Greg Hale filed a class action complaint against ARcare. *See* Case No. 3:22-cv-117. Four other class actions were subsequently filed against ARcare in the United States District Court for the Eastern District of Arkansas. *See White v. ARcare,* No. 4:22-cv-454; *see also Gilmore v. ARcare,* No. 4:22-cv-123; *Johnson v. ARcare,* No. 4:22-cv-571; *Whitkanack v. ARcare,* No. 3:22-cv-00140.

4.    These cases were subsequently consolidated into the instant Action.

5.    Plaintiffs filed their Consolidated Amended Class Action Complaint against Defendant on Jun 2, 2023, alleging claims for (1) negligence; (2) breach of implied contract; (3) unjust enrichment; (4) breach of fiduciary duty; and (5) declaratory judgement/injunction relief.

6.    On July 26, 2023, Defendant filed their Motion to Substitute the United States or, in the Alternative, Motion to Dismiss (the "Motion"). Defendant's Motion was fully briefed and argued, and on March 8, 2024 the Court entered an order denying Defendant's Motion.

7.    On April 5, 2024, Defendant filed its Notice of Appeal, and on February 13, 2026, the United State Court of Appeals for the Eight Circuit affirmed this Court's ruling, and finally, on May 6, 2026, the Court of Appeals issued its ruling denying Defendant's petition for rehearing en banc and petition for rehearing by the panel.

8.    Shortly thereafter, the Parties began discussing the prospect of early resolution. They decided it was in the best interest of those impacted in the Data Incident, as well as all parties concerned, to explore settlement, and to attend mediation. Mediation was then scheduled with experienced class action mediator, the Hon. Wayne Anderson (Ret.).

9.    In advance of mediation, Plaintiffs requested and Defendant produced informal

discovery requests related to liability and damages, including, but not limited to, the number of individuals impacted by the Data Incident, the categories of Private Information involved, and the security enhancements implemented since the Data Incident to better protect its computer systems from future incidents. The Parties also exchanged detailed mediation statements outlining their positions with respect to liability, damages, and settlement.

10.    After nearly a day of arm's-length negotiations, the Parties agreed to the material terms of this Settlement which resolves all claims against the Defendant on a classwide basis.

11.    The Parties now agree to settle the Action without any admission by the Defendant of liability or wrongdoing, with respect to all Released Claims of the Releasing Parties. Defendant has entered into this Agreement to resolve all controversies and disputes arising out of or relating to the allegations made in the Complaint and the Data Incident as it relates to it, and to avoid the litigation costs and expenses, distractions, burden, expense, and disruption to its business operations associated with further litigation. Defendant does not in any way acknowledge, admit to, or concede any of the allegations made in the Complaint, and expressly disclaims and denies any fault or liability, or any charges of wrongdoing that have been or could have been asserted in the Complaint. Nothing contained in this Agreement shall be used or construed as an admission of liability, and this Agreement shall not be offered or received in evidence in any action or proceeding in any court or other forum as an admission or concession of liability or wrongdoing of any nature or for any other purpose other than to enforce the terms of this Agreement. Plaintiffs enter into this Agreement to recover on the claims asserted in the Complaint, and to avoid the risk, delay, and uncertainty of continued litigation. Plaintiffs do not in any way concede that the claims alleged in the Complaint lack merit or are subject to any defenses. The Parties intend this Agreement to bind Plaintiffs, Defendant, and all Settlement Class Members.

**NOW, THEREFORE,** in light of the foregoing, for good and valuable consideration, the receipt and sufficiency of which is hereby mutually acknowledged, the Parties agree, subject to approval by the Court, as follows.

## II.    Definitions

12.    "**Action**" means the above-captioned consolidated action, *Greg Hale, on behalf of himself and all others similarly situated, et al.*, *v. Arcare, Inc.*, Case No. 43:22-cv-00117-BSM (E.D. Ar.).

13.    "**Agreement**" or "**Settlement**" or "**Settlement Agreement**" means this Settlement Agreement, including all exhibits, between Plaintiffs and Defendant.

14.    "**Application for Attorneys' Fees, Costs, and Service Awards**" means the application seeking attorneys' fees, costs, and Service Awards, which Plaintiffs will file no later than fourteen days prior to the deadline to Opt-Out or Object to the Settlement.

15.    "**CAFA Notice**" means Class Action Fairness Act Notice which the Settlement Administrator shall serve upon the appropriate state and federal officials, providing notice of the proposed Settlement. The Settlement Administrator shall provide a declaration attesting to compliance with 28 U.S.C. § 1715(b), which will be filed with the Motion for Final Approval.

16.    "**Cash Payment**" means the cash compensation paid to Settlement Class Members who elected to submit a Claim for either Cash Payment A – Documented Losses or Cash Payment B – Alternate Cash.

17.    "**Cash Payment A – Documented Losses**" means the cash compensation of up to $5,000.00 that Settlement Class Members with documented losses may elect under the Settlement.

18.    "**Cash Payment B – Alternate Cash**" means the pro rata cash compensation payment, estimated in the amount of $100, that Settlement Class Members may elect under the

4

Settlement.

19.     "**Claim Form**" means the proof of claim, substantially in the form attached hereto as *Exhibit 4*, which may be modified as necessary, subject to the Parties' approval.

20.     "**Claim Form Deadline**" shall be 90 days after the Notice Date and is the last day by which a Claim Form may be submitted.

21.     "**Claimant**" means an individual who submits a Claim Form.

22.     "**Claim Process**" means the process by which Claimants submit Claims to the Settlement Administrator and the Settlement Administrator determines which Claims are Valid Claims.

23.     "**Class Counsel**" means: Jean Martin of Aylstock, Witkin, Kreis & Overholtz, PLC, and Bryan Bleichner of Chestnut Cambronne PA.

24.     "**Class List**" is the list of Settlement Class members' names and email addresses that will be provided by Defendant to the Settlement Administrator following Preliminary Approval.

25.     "**Class Representatives**" or "**Plaintiffs**" means Greg Hale, Jessica White, Alicia Gilmore, Michael Whitkanack, and Melissa Johnson.

26.     "**Complaint**" means the Consolidated Amended Class Action Complaint in this Action on filed on June 2, 2023.

27.     "**Court**" means the United States District Court for the Eastern District of Arkansas, and the Judge(s) assigned to the Action.

28.     "**Data Incident**" means the unauthorized access to or acquisition of Settlement Class Members' Private Information that Defendant discovered on or about February 24, 2022.

29.     "**Defendant**" means Arcare, Inc., the Defendant in the Action.

30. "**Effective Date**" means the day after the entry of the Final Approval Order, provided no objections are made to the Settlement. If there are objections to the Settlement, then the Effective Date shall be the later of: (a) 30 days after entry of the Final Approval Order if no appeals are taken from the Final Approval Order; or (b) if appeals are taken from the Final Approval Order, then the earlier of 30 days after the last appellate court ruling affirming the Final Approval Order or 30 days after the entry of a dismissal of the appeal.

31. "**Email Notice**" means the email form of Notice of the Settlement, if email addresses are maintained by Defendant, substantially in the form attached hereto as *Exhibit 1*, and distributed to Settlement Class Members.

32. "**Escrow Account**" means the interest-bearing account to be established by the Settlement Administrator consistent with the terms and conditions described herein.

33. "**Final Approval**" means the final approval of the Settlement, which occurs when the Court enters the Final Approval Order, substantially in the form attached hereto as *Exhibit 6*.

34. "**Final Approval Hearing**" means the hearing held before the Court during which the Court will consider granting Final Approval of the Settlement and the Application for Attorneys' Fees, Costs, and Service Awards, which the Parties will request to be no earlier than 120 days after the entry of the Preliminary Approval Order.

35. "**Final Approval Order**" means the final order the Court enters granting Final Approval of the Settlement. The Final Approval Order also includes the orders, which may be entered separately, determining the amount of approved attorneys' fees, costs, and Service Awards.

36. "**Long Form Notice**" means the long form notice of the Settlement, substantially in the form attached hereto as *Exhibit 3*, that shall be posted on the Settlement Website and shall be available to Settlement Class Members by mail upon request to the Settlement Administrator.

37.    "**Medical Data Monitoring**" means the CyEx monitoring product with one year of monitoring that Settlement Class Members may elect as a Settlement Class Member Benefit under the Settlement.

38.    "**Motion for Final Approval**" means the unopposed motion that Plaintiffs and Class Counsel shall file with the Court seeking Final Approval of the Settlement.

39.    "**Motion for Preliminary Approval**" means the motion that Plaintiffs shall file with the court seeking Preliminary Approval of the Settlement.

40.    "**Net Settlement Fund**" means the amount of the Settlement Fund following payment of Settlement Administration Costs and any attorneys' fees, costs, and Service Awards.

41.    "**Notice**" means the Email Notice, Postcard Notice, and Long Form Notice that Plaintiffs will ask the Court to approve in connection with the Motion for Preliminary Approval.

42.    "**Notice Date**" means the date by which Notice to the Settlement Class must be substantially completed by, and shall be 30 days after the date of the Preliminary Approval Order.

43.    "**Notice Program**" means the methods provided for in this Agreement for giving Notice to the Settlement Class and may consist of Email Notice, Postcard Notice, and Long Form Notice, along with the Settlement Website and the Settlement telephone number.

44.    "**Notice of Deficiency**" means the notice sent by the Settlement Administrator to a Settlement Class Member who has submitted an invalid Claim.

45.    "**Objection Deadline**" means 60 days after the Notice Date and is the last date by which Settlement Class Members may object to the Settlement.

46.    "**Opt-Out Deadline**" means 60 days after the Notice Date and is the last date by which Settlement Class Members may opt-out of the Settlement.

47.    "**Party**" means each of the Plaintiffs and Defendant, and "Parties" means Plaintiffs

and Defendant, collectively.

48.    "**Private Information**" means the personally identifiable information and private health information which consists of some combination of the following: Social Security numbers, driver's license or state identification numbers, dates of birth, financial account information, medical treatment information, prescription information, medical diagnosis or condition information, and health insurance information.

49.    "**Postcard Notice**" means the postcard notice of the Settlement, substantially in the form attached hereto as *Exhibit 2,* that the Settlement Administrator may disseminate to Settlement Class members by mail.

50.    "**Preliminary Approval**" means the preliminary approval of the Settlement, which occurs when the Court enters the Preliminary Approval Order, substantially in the form submitted with the Motion for Preliminary Approval.

51.    "**Preliminary Approval Order**" means the order preliminarily approving the Settlement and proposed Notice Program, substantially in the form attached hereto as *Exhibit 5*.

52.    "**Releases**" means the releases and waiver set forth in Section XIII of this Agreement.

53.    "**Released Claims**" means any and all actual, potential, filed or unfiled, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected claims, demands, liabilities, rights, causes of action, damages, punitive, exemplary or multiplied damages, expenses, costs, attorneys' fees and/or obligations, whether in law or in equity, accrued or unaccrued, direct, individual or representative, joint or several, of every nature and description whatsoever, based on any federal, state, local, statutory or common law or any other law, against the Released Parties, or any of them, arising out of or relating to actual or alleged facts, transactions, events, matters,

8

occurrences, acts, disclosures, statements, representations, omissions or failures to act relating to the Data Incident.

54.    "**Released Parties**" means Defendant and Defendant's past, present, and future direct and indirect heirs, assigns, associates, corporations, investors, owners, parents, subsidiaries, affiliates, divisions, officers, directors, shareholders, members, employees, attorneys, insurers, reinsurers, benefit plans, predecessors, successors, managers, administrators, executors, and trustees.

55.    "**Releasing Parties**" means Plaintiffs and Settlement Class Members and their respective past, present, and future heirs, beneficiaries, conservators, executors, estates, administrators, assigns, agents, accountants, financial and other advisors, and any other representatives of any of these persons and entities.

56.    "**Service Awards**" means the monetary compensation the Court may approve for the Class Representatives for serving as representative of the Settlement Class.

57.    "**Settlement Administrator**" means Verita Global, Inc..

58.    "**Settlement Administration Costs**" means all costs and fees of the Settlement Administrator regarding Notice and Settlement administration.

59.    "**Settlement Class**" means all living individuals residing in the United States who were sent a notice of the Data Incident indicating their Private Information may have been impacted in the Data Incident. Excluded from the Settlement Class are: (1) all persons who are directors and officers of Defendant; (2) governmental entities; and (3) the Judge assigned to the Action, that Judge's immediate family, and Court staff.

60.    "**Settlement Class Member**" means any member of the Settlement Class who has not opted-out of the Settlement.

61.    "**Settlement Class Member Benefit**" means the Cash Payment and/or Medical Data Monitoring, elected by Settlement Class Members.

62.    "**Settlement Fund**" means the non-reversionary all cash fund of $3,900,000 that Defendant is obligated to fund or cause to be funded pursuant to Section III herein.

63.    "**Settlement Website**" means the website the Settlement Administrator will establish as a means for Settlement Class Members to submit Claim Forms and obtain notice and information about the Settlement, including hyperlinked access to this Agreement, the Preliminary Approval Order, Long Form Notice, Claim Form, Motion for Final Approval, and Final Approval Order, as well as other documents as the Parties agree to post or the Court orders posted. The Settlement Website shall remain online and operable for at least six months after Final Approval.

64.    "**Valid Claim**" means a Claim Form submitted by a Settlement Class Member that is: (a) submitted in accordance with the provisions of the Settlement; (b) accurately, fully, and truthfully completed and executed, with all of the information requested in the Claim Form, by a Settlement Class Member; (c) signed physically or by e-signature by a Settlement Class Member personally, subject to the penalty of perjury; (d) returned via mail and postmarked by the Claim Form Deadline, or, if submitted online, submitted by 11:59 p.m. Central time on the Claim Form Deadline; and (e) determined to be valid by the Settlement Administrator. The Settlement Administrator may require additional information from the Claimant to validate the Claim, including, but not limited to, answers related to questions regarding the validity or legitimacy of the physical or e-signature. Failure to respond to the Settlement Administrator's Notice of Deficiency may result in a determination that the Claim is not a Valid Claim.

65.    Unless otherwise specified, "days" shall mean calendar days.

### III.    Settlement Fund

66.   Within 30 days of Preliminary Approval, Defendant shall fund or cause to be funded $3,900,000 to establish the Settlement Fund. In the event there is no Final Approval, or the Effective Date does not occur, following the payment of any outstanding Settlement Administration Costs, all funds remaining in the Settlement Fund shall be returned to Defendant.

67.   The Settlement Fund shall be used to pay: (1) all Settlement Class Member Benefits to Settlement Class Members who submit Valid Claims; (2) all Settlement Administration Costs; and (3) any attorneys' fees, costs, and Service Awards approved by the Court.

68.   The funds in the Escrow Account shall be deemed a "qualified settlement fund" within the meaning of United States Treasury Reg. § 1.468B-l at all times since creation of the Escrow Account. The Settlement Fund shall earn a reasonable rate of interest and all interest earned on the Settlement funds shall be for the benefit of the Settlement Class. All taxes (including any estimated taxes, and any interest or penalties relating to them) arising with respect to the income earned by the Escrow Account or otherwise, including any taxes or tax detriments that may be imposed on Defendant, Defendant's Counsel, Plaintiffs, and/or Class Counsel with respect to income earned by the Escrow Account, for any period during which the Escrow Account does not qualify as a "qualified settlement fund" for the purpose of federal or state income taxes or otherwise, shall be paid out of the Escrow Account. Defendant, Defendant's Counsel, Plaintiffs, and Class Counsel shall have no liability or responsibility for any of the taxes. The Escrow Account shall indemnify and hold Defendant, Defendant's Counsel, Plaintiffs, and Class Counsel harmless for all taxes (including, without limitation, taxes payable by reason of any such indemnification).

## IV.   **Certification of the Settlement Class**

69.   In the Unopposed Motion for Preliminary Approval and Motion for Final Approval, Plaintiffs shall propose and request to the Court that the Settlement Class be certified for

Settlement purposes only. Defendant agrees solely for purposes of the Settlement provided for in this Agreement, and the implementation of such Settlement, that this case shall proceed as a class action; provided however, that if a Final Approval Order is not issued, then any certification shall be null and void and, for the avoidance of doubt, Defendant shall retain all rights to object to any future requests to certify a class. Plaintiffs and Class Counsel shall not reference this Agreement in support of any subsequent motion for class certification of any class in the Action.

## V.    Settlement Class Member Benefits

70.    All Settlement Class Members may elect either Cash Payment A – Documented Losses or Cash Payment B – Alternate Cash. Additionally, All Settlement Class Members may also elect to receive Medical Data Monitoring. Cash Payments will be subject to a *pro rata* (a) increase from the Net Settlement Fund if the amount of Valid Claims is insufficient to exhaust the entire Net Settlement Fund or (b) decrease from the Net Settlement Fund if the amount of Valid Claims exhausts the amount of the Net Settlement Fund. For purposes of calculating the *pro rata* increase or decrease, the Settlement Administrator must distribute the funds in the Net Settlement Fund first for payment of Medical Data Monitoring, then for Cash Payment A – Documented Losses, and then to all those who elect Cash Payment B – Alternate Cash. Any *pro rata* increases or decreases will be on an equal percentage basis. If a Settlement Class Member does not submit a Valid Claim, the Settlement Class Member will release his or her claims without receiving a Settlement Class Member Benefit.

### a.    Cash Payment A – Documented Losses

All Settlement Class Members are eligible to submit a claim for a Cash Payment for Documented Losses for up to $5,000.00 per Settlement Cass Member upon presentment of reasonable documentation of losses related to the Data Incident. Documented expenses include,

by way of example, unreimbursed losses relating to fraud or identity theft: if (i) the loss is an actual, documented, and unreimbursed monetary loss; (ii) the loss was more likely than not caused by the Data Incident; and (iii) the loss was incurred after the date of the Data Incident. To receive payment for documented losses, a Settlement Class Member must complete and submit a Claim Form and include documentation in support of the Claim. Except as expressly provided herein, personal certifications, declarations, or affidavits from the Settlement Class Member do not constitute proper documentation, but may be included to provide clarification, context, or support for other submitted reasonable documentation. Settlement Class Members shall not be reimbursed for expenses if they have been reimbursed for the same expenses by another source, including compensation provided in connection with any credit monitoring and identity theft protection product. If a Settlement Class member does not submit documentation supporting a loss, or if the Settlement Administrator rejects for any reason the Settlement Class member's Claim and the Settlement Class member fails to cure the Claim, the Claim will be rejected.

b.    **Cash Payment B – Alternate Cash**

As an alternative to Cash Payment A above, a Settlement Class Member may elect to receive Cash Payment B, which is a cash payment in the estimated amount of $100.

c.    **Medical Data Monitoring**

In addition to Cash Payment A or Cash Payment B, Settlement Class Members may also make a Claim for Medical Data Monitoring that includes one year of CyEx's Medical Shield Complete. Th product includes credit monitoring with one bureau, with additional monitoring of: (a) healthcare insurance plan IDs, healthcare beneficiary identifier ID; (b) medical records; (c) national provider identifier; (d) international classification of disease; (e) health savings account;

13

(f) high risk; and (g), Dark Web. The product also provides for $1,000,000 of identity theft insurance and contains real-time alerts and victim assistance.

### d.    **Injunctive Relief**

Prior to Final Approval, Defendant will provide Class Counsel with a written declaration regarding the security measures, including the cost associated therewith, it implemented following the Data Incident (or will implement) to better protect the Settlement Class's Private Information from future disclosure resulting from a subsequent data incident. The costs of any such security measures on the part of Defendant were paid or will be paid separately by Defendant and will not come out of the Settlement Fund.

## VI.    Settlement Approval

71.    Plaintiffs' Motion for Preliminary Approval shall, among other things, request the Court: (1) preliminarily approve the terms of the Settlement as being within the range of fair, adequate, and reasonable; (2) provisionally certify the Settlement Class for settlement purposes only; (3) approve the Notice Program and the form and content of the Notices; (4) approve the Claim Process and the form and content of the Claim Form; (5) approve the procedures for Settlement Class Members to opt-out of the Settlement or for Settlement Class Members to object to the Settlement; (6) appoint Verita Global, Inc. as the Settlement Administrator; (7) appoint Plaintiffs Greg Hale, Jessica White, Alicia Gilmore, and Michael Whitkanack as Class Representatives and Jean Martin of Aylstock, Witkin, Kreis & Overholtz, PLC, and Bryan Bleichner of Chestnut Cambronne as Class Counsel for Settlement purposes; (8) stay the Action pending Final Approval of the Settlement; and (9) schedule a Final Approval Hearing for a time and date mutually convenient for the Court, the Parties, Class Counsel, and Defendant's Counsel.

## VII.    Settlement Administrator

72.     The Parties agree that, subject to Court approval, Verita Global, Inc. shall be the Settlement Administrator. Class Counsel shall oversee the Settlement Administrator. The Settlement Administrator shall fulfill the requirements set forth in the Preliminary Approval Order and the Agreement and comply with all applicable laws, including, but not limited to, the Due Process Clause of the United States Constitution.

73.     The Settlement Administrator shall administer various aspects of the Settlement as described in the next paragraph and perform such other functions as are specified for the Settlement Administrator elsewhere in this Agreement, including, but not limited to, effectuating the Notice Program, handling the Claim Process, administering the Settlement Fund, and ensuring the distribution of all Settlement Class Members Benefits.

74.     The Settlement Administrator's duties include the following:

a.     Completing the Court-approved Notice Program by noticing the Settlement Class by Email Notice and Postcard Notice, if necessary, and sending out Long Form Notices and paper Claim Forms upon request from Settlement Class Members, reviewing Claim Forms, notifying Claimants of deficient Claim Forms using the Notice of Deficiency, and sending Settlement Class Member Benefits to Settlement Class Members who submit a Valid Claim;

b.     Establishing and maintaining the Settlement Fund and the Escrow Account;

c.     Establishing and maintaining a post office box to receive opt-out requests from the Settlement Class, objections from Settlement Class Members, and Claim Forms;

d.     Establishing and maintaining the Settlement Website to provide important information and to receive electronic Claim Forms;

e.     Establishing and maintaining an automated toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries, and answer the frequently

asked questions of Settlement Class Members who call with or otherwise communicate such inquiries;

f.   Responding to any mailed Settlement Class Member inquiries;

g.   Processing all opt-out requests from the Settlement Class;

h.   Providing weekly reports to Class Counsel and Defendant's Counsel that summarize the number of Claims submitted, Claims approved and rejected, Notice of Deficiency sent, opt-out requests and objections received that week, the total number of opt-out requests and objections received to date, and other pertinent information;

i.   In advance of the Final Approval Hearing, preparing a declaration confirming the Notice Program was completed in accordance with the terms of this Agreement and the Preliminary Approval Order, describing how the Notice Program was completed, indicating the number of Claim Forms received, including the value of all Claims for Cash Payment A – Documented Losses, the number of Claims for Cash Payment B – Alternate Cash, and the number of Settlement Class Members who elected Medical Data Monitoring, and providing the names of each Settlement Class Member who timely and properly requested to opt-out from the Settlement Class, indicating the number of objections received, and other information as may be necessary to allow the Parties to seek and obtain Final Approval;

j.   Distributing, out of the Settlement Fund, Cash Payments by electronic means or by paper check;

k.   Ensuring the issuance of the Medical Data Monitoring activation codes to all Settlement Class Members who elect Medical Data Monitoring;

l.   Paying Court-approved attorneys' fees, costs, and Service Awards out of the Settlement Fund;

m.    Paying Settlement Administration Costs out of the Settlement Fund following approval by Class Counsel; and

n.    Any other Settlement administration function at the instruction of Class Counsel and Defendant.

## VIII.    <u>Notice to the Settlement Class, Opt-Out Procedures, and Objection Procedures</u>

75.    Defendant will provide the Settlement Administrator with the Class List no later than five days after entry of the Preliminary Approval Order. To the extent necessary, Defendant will cooperate with updating the Class List to accomplish the Notice Program and otherwise administer the Settlement.

76.    Within 30 days following entry of the Preliminary Approval Order, the Settlement Administrator shall substantially complete the Notice Program provided herein, using the Email Notice, Postcard Notice, if necessary, and Long Form Notice approved by the Court.

77.    All Settlement Class Members for which email addresses are maintained by Defendant and provided to the Settlement Administrator in the Class List will be sent an Email Notice. Those Settlement Class Members for which email addresses are not provided, but a physical address is known and provided by Defendant to the Settlement Administrator in the Class List, the Settlement Administrator will send Postcard Notice. The Email Notice and Postcard Notice shall include, among other information: (a) a description of the material terms of the Settlement; (b) how to submit a Claim Form; (c) the Claim Form Deadline; (d) the Opt-Out Deadline which is the last for Settlement Class members to opt-out of the Settlement Class; (e) the Objection Deadline which is the last day for Settlement Class Members to object to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards; (f) the Final Approval Hearing date; and (g) the Settlement Website address at which Settlement Class Members may access this

17

Agreement and other related documents and information. Class Counsel shall insert the correct dates and deadlines in the Notices before the Notice Program commences, based upon those dates and deadlines set by the Court in the Preliminary Approval Order. If the date or time for the Final Approval Hearing changes, the Settlement Administrator shall update the Settlement Website to reflect the new date. No additional notice to the Settlement Class is required if the date or time for the Final Approval Hearing changes.

78.    The Settlement Administrator shall establish the Settlement Website no later than the day before Notice is first initiated. The Settlement Administrator shall ensure the Settlement Website makes available the Court-approved online Claim Form that can be submitted online directly on the Settlement Website or in printable version that can be sent by U.S. Mail to the Settlement Administrator.

79.    The Long Form Notice will include a procedure for Settlement Class Members to opt-out of the Settlement Class, and the Email Notice and Postcard Notice shall direct Settlement Class Members to review the Long Form Notice to obtain the opt-out instructions. Members of the Settlement Class may opt-out of the Settlement Class at any time before the Opt-Out Deadline by mailing a request to opt-out to the Settlement Administrator postmarked no later than Opt-Out Deadline. The opt-out request must be personally signed by the Settlement Class member and contain the requestor's name, address, telephone number, and email address (if any), and include a statement indicating a request to opt-out of the Settlement Class. Aggregate or mass requests to opt-out field by third parties on behalf of an aggregate, mass or class of Settlement Class Members or multiple Settlement Class Members where the opt-out has not been signed by each and every individual Settlement Class Member will not be allowed. Any Settlement Class Member who does not timely and validly request to opt-out shall be bound by the terms of this Agreement even if that

Settlement Class Member does not submit a Valid Claim.

80. The Long Form Notice shall also include a procedure for Settlement Class Members to object to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards, and the Email Notice and Postcard Notice shall direct Settlement Class members to review the Long Form Notice to obtain the objection instructions. Objections must be sent to the Clerk of Court, and sent by U.S. Mail to Class Counsel, Defendant's Counsel, and the Settlement Administrator. For an objection to be considered by the Court, the objection must be submitted no later than the Objection Deadline, as specified in the Notice, and the Settlement Class Member must not have opted-out of the Settlement Class. Objections submitted by mail must be postmarked on the envelope no later than the last day of the Objection Deadline. If submitted by private courier (e.g., Federal Express), an objection shall be deemed to have been submitted on the shipping date reflected on the shipping label.

81. For an objection to be considered by the Court, the objection must also set forth:

a. the objector's full name, mailing address, telephone number, and email address (if any);

b. all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel;

c. the number of times the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case;

d. the identity of all counsel who represent the objector, including any former

19

or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards;

e.    the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding five years;

f.    the identity of all counsel (if any) representing the objector, and whether they will appear at the Final Approval Hearing;

g.    a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any);

h.    a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing;

i.    a disclosure and certification as to whether artificial intelligence was used in preparation of the objection;  and

j.    the objector's signature (an attorney's signature is not sufficient).

Class Counsel and/or Defendant's Counsel may conduct limited discovery on any objector or objector's counsel, including taking depositions and propounding written discovery.

## IX.    Claim Process and Disbursement of Cash Payments and Medical Data Monitoring

82.    The Notice and the Settlement Website will explain to Settlement Class Members that they may be entitled to a Settlement Class Member Benefit and how to submit a Claim Form.

83.    Claim Forms may be submitted online through the Settlement Website or through

20

U.S. Mail by sending them to the Settlement Administrator at the address designated on the Claim Form.

84.    The Settlement Administrator shall collect, review, and address each Claim Form received to determine whether the Claim Form meets the requirements set forth in this Settlement and is thus a Valid Claim. The Settlement Administrator shall examine the Claim Form before designating the Claim as a Valid Claim to determine that the information on the Claim Form is reasonably complete. The Settlement Administrator shall have the sole authority to determine whether a Claim by any Claimant is a Valid Claim.

85.    The Settlement Administrator shall use all reasonable efforts and means to identify and reject duplicate claims. No Settlement Class Member may submit more than one Claim Form. The Settlement Administrator shall identify any Claim Forms that appear to seek relief on behalf of the same Settlement Class Member. The Settlement Administrator shall use its best efforts to determine whether there is any duplication of Claims, and if there is, contact the Settlement Class Member in an effort to determine which Claim Form is the appropriate one for consideration.

86.    The Settlement Administrator shall exercise, in its discretion, all usual and customary steps to prevent fraud and abuse and take any reasonable steps to prevent fraud and abuse in the Claim Process. The Settlement Administrator may, in its discretion, deny in whole or in part any Claim Form to prevent actual or possible fraud or abuse. By agreement, the Parties can instruct the Settlement Administrator to take whatever steps it deems appropriate if the Settlement Administrator identifies actual or possible fraud or abuse relating to the submission of Claims, including, but not limited to, denying in whole or in part any Claim to prevent actual or possible fraud or abuse. If any fraud is detected or reasonably suspected, the Settlement Administrator and Parties may require information from Claimants or deny Claims, subject to the supervision of the

Parties and ultimate oversight by the Court.

87.     Claim Forms that do not meet the terms and conditions of this Settlement shall be promptly rejected by the Settlement Administrator and the Settlement Administrator shall advise the Settlement Class Member of the reason(s) why the Claim Form was rejected. However, if the Claim Form is rejected for containing incomplete or inaccurate information, and/or omitting required information, the Settlement Administrator may send a Notice of Deficiency explaining what information is missing or inaccurate and needed to validate the Claim and have it submitted for consideration. The Settlement Administrator shall notify the Settlement Class Member using the contact information provided in the Claim Form. The additional information and/or documentation can include, for example, answers to questions regarding the validity of the physical or e-signature. A Settlement Class Member shall have until the Claim Form Deadline, or 15 days after the date the Notice of Deficiency is sent via mail and postmarked or via email, whichever is later, to reply to the Notice of Deficiency and provide the required information. If the Settlement Class Member timely and adequately provides the requested information and/or documentation, the Claim shall be deemed a Valid Claim and processed by the Settlement Administrator. If the Settlement Class Member does not timely and completely provide the requested information and/or documentation, the Settlement Administrator shall reduce or deny the Claim.

88.     Where a good faith basis exists, the Settlement Administrator may reduce or reject a Claim for, among other reasons, the following:

        a.      Failure to fully complete and/or sign the Claim Form;

        b.      Illegible Claim Form;

        c.      The Claim Form is fraudulent;

d.      The Claim Form is duplicative of another Claim Form;

e.      The Claimant is not a Settlement Class Member;

f.      The Claimant submitted a timely and valid request to opt-out of the Settlement Class.

g.      The person submitting the Claim Form requests that payment be made to a person or entity other than the Claimant for whom the Claim Form is submitted;

h.      Failure to submit a Claim Form by the Claim Form Deadline; and/or

i.      The Claim Form otherwise does not comply with the requirements of this Settlement.

89.     The Settlement Administrator's reduction or denial of a Claim is final, subject to the following dispute resolution procedures:

a.      The Settlement Administrator shall have 30 days from the Claim Form Deadline to approve or reject Claims based on findings of fraud or duplication;

b.      A request for additional information by sending a Notice of Deficiency shall not be considered a denial for purposes of this paragraph;

c.      If a Claim is rejected for fraud or duplication, the Settlement Administrator shall notify the Claimant using the contact information provided in the Claim Form. Class Counsel and Defendant's Counsel shall be provided with copies of all such notifications to Claimants; and

d.      The Settlement Administrator's determination as to whether to approve, deny, or reduce a Claim shall be final and binding.

90.     The Settlement Administrator shall provide all information gathered in investigating Claims, including, but not limited to, copies of all correspondence and email and all notes of the Settlement Administrator, the decision reached, and all reasons supporting the

23

decision, if requested by Class Counsel or Defendant's Counsel. Additionally, Class Counsel and Defendant's Counsel shall have the right to inspect the Claim Forms and supporting documentation received by the Settlement Administrator at any time upon reasonable notice.

91.     No person or entity shall have any claim against Defendant, Defendant's Counsel, Plaintiffs, the Settlement Class, Class Counsel, and/or the Settlement Administrator based on any eligibility determinations, distributions, or awards made in accordance with this Settlement.

92.     No later than 30 days after the Effective Date, whichever is later, the Settlement Administrator shall distribute the Settlement Class Member Benefits.

93.      Cash Payments to Settlement Class Members will be made by electronic payment or by paper check. Following Final Approval, the Settlement Administrator will send Settlement Class Members an email to select a form of electronic payment or to receive payment by paper check. In the event a Settlement Class Member does not make an election or there is a problem with issuance of an electronic payment, a paper check will be sent to the Settlement Class Member's last known address. Settlement Class Members shall have 90 days to select their form of payment. Paper checks must be negotiated within 90 days of issuance. In the event the Settlement Administrator is unable to distribute funds to the Settlement Class Members entitled to receive them due to incorrect or incomplete information provided to the Settlement Administrator, the funds shall become residual funds, and such Settlement Class Members shall forfeit their entitlement right to the funds.

94.     In the event there are funds remaining in the Settlement Fund 240 days following the date Settlement Class Members are sent an email to select their form of payment, said funds attributable to unclaimed and undeliverable funds shall be treated as residual funds as described in Section XII.

24

95.     The Settlement Administrator will send an email to Settlement Class Members with Valid Claims that include an election for Medical Monitoring with information on how to enroll in the Medical Monitoring, including the activation code.

## X.     **Final Approval Order and Final Judgment**

96.     Plaintiffs shall file their Motion for Final Approval of the Settlement no later than 14 days before the Final Approval Hearing. At the Final Approval Hearing, the Court will hear argument on Plaintiffs' Motion for Final Approval of the Settlement and Application for Attorneys' Fees, Costs, and Service Awards. In the Court's discretion, the Court will also hear argument at the Final Approval Hearing from any Settlement Class Members (or their counsel) who object to the Settlement and/or to the Application for Attorneys' Fees, Costs, and Service Awards, provided the objectors submitted timely objections that meet all requirements listed in this Agreement.

97.     At or following the Final Approval Hearing, the Court will determine whether to enter the Final Approval Order and final judgment thereon and whether to grant the Application for Attorneys' Fees, Costs, and Service Awards. Such proposed Final Approval Order shall, among other things:

  a.     Determine that the Settlement is fair, adequate and reasonable;

  b.     Finally certify the Settlement Class for settlement purposes only;

  c.     Determine the completed Notice Program satisfies Due Process requirements;

  d.     Bar and enjoin all Releasing Parties from asserting or otherwise pursuing any of the Released Claims at any time and in any jurisdiction, including during any appeal from the Final Approval Order; and retain jurisdiction over the enforcement of the Court's injunctions;

  e.     Release Defendant and the Released Parties from the Released Claims, as

specified in Section XIII below; and

f.       Reserve the Court's continuing and exclusive jurisdiction over the Parties to this Agreement, including Defendant, Plaintiffs, all Settlement Class Members, and all objectors, to administer, supervise, construe, and enforce this Agreement in accordance with its terms.

## XI.    Attorneys' Fees, Costs, and Service Awards

98.      ***Attorneys' Fees and Costs*** - Class Counsel shall apply to the Court for an award of attorneys' fees of up to one third of the Settlement Fund, plus reimbursement of reasonable costs and expenses up to $50,000. The attorneys' fees and cost approved by the Court shall be paid by the Settlement Administrator out of the Settlement Fund by wire transfer to an account designated by Class Counsel within 10 days of the Effective Date. Class Counsel shall be responsible for allocating and distributing attorneys' fees among all Plaintiffs' counsel.

99.      ***Service Awards*** – Class Counsel shall apply to the Court for Service Awards for the Class Representatives of up to $2,500.00 each. The Service Awards approved by the Court shall be paid by the Settlement Administrator out of the Settlement Fund directly to the Class Representatives within 10 days of the Effective Date.

100.     Attorneys' fees, costs, and Service Awards were not negotiated by the Parties until all other material terms of the Settlement had been determined. This Settlement is not contingent on approval of the request for attorneys' fees, costs, and Service Awards and if the Court denies the request or grants amounts less than what was requested, the remaining provisions of the Agreement shall remain in force.

## XII.    Disposition of Residual Funds

101.    In the event there are funds remaining in the Settlement Fund 180 days following the date Settlement Class Members are sent an email to select their form of payment, upon Court approval, all funds shall be distributed *cy pres* to Legal Aid of Arkansas

102.    In the event there are funds remaining in the Settlement Fund 180 days following the date Settlement Class Members are sent an email to select their form of payment, upon Court approval, all funds shall be distributed *cy pres* to Legal Aid of Arkansas.

## XIII.   Releases

103.    Upon the Effective Date, and in consideration of the Settlement relief and other consideration described herein, the Releasing Parties shall be deemed to have, and by operation of the Final Approval Order shall have, fully, finally, and forever released, acquitted, relinquished, and completely discharged Defendant from any and all Released Claims.

104.    The Releasing Parties expressly waive all rights under California Civil Code section 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Releasing Parties also waive the provisions and rights of any law(s) that are comparable in effect to California Civil Code section 1542 (including, without limitation, California Civil Code § 1798.80, et seq., Montana Code Ann. § 28- 1-1602; North Dakota Cent. Code § 9-13-02; and South Dakota Codified Laws § 20-7-11). The Releasing Parties agree that, once this Agreement is executed, they will not, directly or indirectly, individually or in concert with another, maintain, cause to be maintained, or voluntarily assist in maintaining any further demand, action, claim, lawsuit, arbitration, or similar proceeding, in any capacity whatsoever, based on any of the

Released Claims.

105.    Settlement Class members who opt-out of the Settlement prior to the Opt-Out Deadline do not release their claims arising out of related to the Data Incident and will not obtain any of the Settlement Class Member Benefits under the Settlement.

106.    Upon the Effective Date: (a) this Settlement shall be the exclusive remedy for any and all Released Claims of Plaintiffs and Settlement Class Members; and (b) Plaintiffs and Settlement Class Members stipulate to be and shall be permanently barred and enjoined by Court order from initiating, asserting, or prosecuting all Released Claim, whether on behalf of Plaintiffs, any Settlement Class Member or others, in any jurisdiction, including in any federal, state, or local court or tribunal.

107.    The power to enforce any term of this Settlement is not affected by the releases in this section.

## XIV.    **Termination of Settlement**

108.    This Agreement shall be subject to and is expressly conditioned on the occurrence of all the following events:

    a.    Court approval of the Settlement consideration set forth in Section V and the Releases set forth in Section XIII of this Agreement;

    b.    The Court has entered the Preliminary Approval Order;

    c.    The Court has entered the Final Approval Order, and all objections, if any, are overruled, and all appeals taken from the Final Approval Order are resolved in favor of Final Approval; and

    d.    The Effective Date has occurred.

109.    If any of the conditions specified in the preceding paragraph are not met, or if the

Court otherwise imposes any modification to or condition of approval of the Settlement to which the Parties do not consent, then this Agreement shall be cancelled and terminated.

110.    In the event this Agreement is terminated or fails to become effective, then the Parties shall return to the *status quo ante* in the Action as if the Parties had not entered into this Agreement, and the Parties shall jointly file a status report in the Court seeking to reopen the Action and all papers filed. In such event, the terms and provisions of this Agreement shall have no further force and effect with respect to the Parties and shall not be used in this Action or in any other action or proceeding for any other purpose, and any order entered by this Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*.

111.    In the event this Agreement is terminated or fails to become effective, all funds in the Settlement Fund shall be promptly returned to the Defendant as described hereinabove. However, Defendant shall have no right to seek from Plaintiffs, Class Counsel, or the Settlement Administrator the Settlement Administration Costs paid or incurred.

## XV.    **Effect of Termination**

112.    The grounds upon which this Agreement may be terminated are set forth in Section XIV. In the event of a termination, this Agreement shall be considered null and void; all of Plaintiffs', Class Counsel's, Defendant's, and Defendant's Counsel's obligations under the Settlement shall cease to be of any force and effect; and the Parties shall return to the *status quo ante* in the Action as if the Parties had not entered into this Agreement. In addition, in the event of such a termination, the Parties' respective pre-Settlement rights, claims, and defenses will be retained and preserved.

113.    In the event the Settlement is terminated in accordance with the provisions of this Agreement, any discussions, offers, or negotiations associated with this Settlement shall not be

29

discoverable or offered into evidence or used in the Action or any other action or proceeding for any purpose. In such event, all Parties to the Action shall stand in the same position as if this Agreement had not been negotiated, made, or filed with the Court.

**XVI.    No Admission of Liability**

114.    This Agreement reflects the Parties' compromise and settlement of disputed claims. This Agreement shall not be construed as or deemed to be evidence of an admission or concession of any point of fact or law. Defendant has denied and continues to deny each of the claims and contentions alleged in the Complaint. Defendant does not admit any liability or wrongdoing of any kind, by this Agreement or otherwise. Defendant has agreed to enter into this Agreement to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to be completely free of any further claims that were asserted or could possibly have been asserted in the Action.

115.    Class Counsel believe the claims asserted in the Action have merit, and they have examined and considered the benefits to be obtained under the proposed Settlement set forth in this Agreement, the risks associated with the continued prosecution of this complex, costly, and time-consuming litigation, and the likelihood of success on the merits of the Action. Class Counsel fully investigated the facts and law relevant to the merits of the claims, conducted discovery, and conducted independent investigation of the alleged claims. Class Counsel concluded that the proposed Settlement set forth in this Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class.

116.    This Agreement constitutes a compromise and settlement of disputed claims. No action taken by the Parties in connection with the negotiations of this Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made,

30

or an acknowledgment or admission by any party of any fault, liability, or wrongdoing of any kind whatsoever.

117.    Neither the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement (a) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by the Plaintiffs or Settlement Class Members, or of any wrongdoing or liability of the Released Parties; or (b) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission of any of the Released Parties, in the Action or in any proceeding in any court, administrative agency, or other tribunal.

118.    In addition to any other defenses Defendant or the Released Parties may have at law, in equity, or otherwise, to the extent permitted by law, this Agreement may be pleaded as a full and complete defense to and may be used as the basis for an injunction against, any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of this Agreement or the Releases contained herein.

## XVII. **Miscellaneous Provisions**

119.    ***Confidentiality***. To the extent permitted by ethics rules, the Parties and their counsel shall keep confidential all settlement communications, including communications regarding the negotiation and drafting of this Agreement. This paragraph shall not be construed to limit or impede the Notice requirements contained in this Agreement, nor shall this paragraph be construed to prevent Class Counsel or Defendant's Counsel from notifying or explaining that the Action has settled or limit the representations that the Parties or their counsel may make to the Court to assist in the Court's evaluation of the Settlement, Preliminary Approval, Final Approval, and any objection to the Settlement's terms. Defendant may also provide information about the Agreement to its attorneys, members, partners, insurers, brokers, agents, and other persons or entities as

required by securities laws, other applicable laws and regulations, and as necessary to affect the Settlement.

120. ***Gender and Plurals***. As used in this Agreement, the masculine, feminine, or neutral gender, and the singular or plural number, shall each be deemed to include the others whenever the context so indicates.

121. ***Binding Effect***. This Agreement shall be binding upon, and inure to and for the benefit of, the successors and assigns of the Releasing Parties and the Released Parties.

122. ***Cooperation of Parties***. The Parties to this Agreement agree to cooperate in good faith to prepare and execute all documents, seek Court approval, uphold Court approval, and do all things reasonably necessary to complete and effectuate the Settlement described in this Agreement.

123. ***Obligation to Meet and Confer***. Before filing any motion in the Court raising a dispute arising out of or related to this Agreement, the Parties shall consult with each other and certify to the Court that they have met and conferred in an attempt to resolve the dispute.

124. ***Integration and No Reliance***. This Agreement constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof. This Agreement is executed without reliance on any covenant, agreement, representation, or warranty by any Party or any Party's representative other than those expressly set forth in this Agreement. No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party hereto, except as provided for herein.

125. ***No Conflict Intended***. Any inconsistency between the headings used in this Agreement and the text of the paragraphs of this Agreement shall be resolved in favor of the text.

126. ***Governing Law***. Except as otherwise provided herein, the Agreement shall be

construed in accordance with, and be governed by, the laws of the State of Arkansas, without regard to the principles thereof regarding choice of law.

127.   ***Counterparts***. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all Parties do not sign the same counterparts. Original signatures are not required. Any signature submitted through email of a PDF shall be deemed an original.

128.   ***Jurisdiction***. The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties. The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice Program and the Settlement Administrator. As part of the agreement to render services in connection with this Settlement, the Settlement Administrator shall consent to the jurisdiction of the Court for this purpose. The Court shall retain jurisdiction over the enforcement of the Court's injunction barring and enjoining all Releasing Parties from asserting any of the Released Claims and from pursuing any Released Claims against the Released Parties at any time and in any jurisdiction, including during any appeal from the Final Approval Order.

129.   ***Notices***. All notices provided for herein shall be sent by email with a hard copy sent by overnight mail to:

**If to Plaintiffs or Class Counsel**:

Bryan L. Bleichner
Philip J. Krzeski
**Chestnut Cambronne PA**
100 Washington Ave., Ste. 1700
Minneapolis, MN 55401
Bbleichner@chestnutcambronne.com
Pkrzeski@chestnutcambronne.com

Jean S. Martin
**Aylstock, Witkin, Kreis & Overholtz, PLC**
17 E. Main St., Ste. 200
Pensacola, FL 32502
Jmartin@awkolaw.comm

**If to Defendant or Defendant's Counsel**:

Scott A. Irby
Gary D. Marts Jr.
**Wright Lindsey & Jennings LLP**
200 West Capitol Ave., Ste. 2300
Little Rock, Arkansas, 72201
sirby@wlj.com
gmarts@wlj.com

The notice recipients and addresses designated above may be changed by written notice. Upon the request of any of the Parties, the Parties agree to promptly provide each other with copies of objections, requests for exclusion, or other filings received because of the Notice Program.

130.    *Modification and Amendment*. This Agreement may not be amended or modified, except by a written instrument signed by Class Counsel and Defendant's Counsel and, if the Settlement has been approved preliminarily by the Court, approved by the Court.

131.    *No Waiver*. The waiver by any Party of any breach of this Agreement by another Party shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement.

132.    *Authority*. Any person executing this Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all terms and provisions of this Agreement.

133.    *Agreement Mutually Prepared*. Neither Plaintiffs nor Defendant shall be considered the drafter of this Agreement or any of its provisions for the purpose of any statute,

case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

134.    ***Independent Investigation and Decision to Settle***. The Parties understand and acknowledge they: (a) have performed an independent investigation of the allegations of fact and law made in connection with this Action; and (b) that even if they may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Action as reflected in this Agreement, that will not affect or in any respect limit the binding nature of this Agreement. All Parties recognize and acknowledge they reviewed and analyzed data that they and their experts used to make certain determinations, arguments, and settlement positions. The Parties agree this Settlement is fair, reasonable, and adequate, and will not attempt to renegotiate or otherwise void or invalidate or terminate the Settlement irrespective of what any unexamined data later shows. It is the Parties' intention to resolve their disputes in connection with this Action pursuant to the terms of this Agreement now and thus, in furtherance of their intentions, the Agreement shall remain in full force and effect notwithstanding the discovery of any additional facts or law, or changes in law, and this Agreement shall not be subject to rescission or modification by reason of any changes or differences in facts or law, subsequently occurring or otherwise.

135.    ***Receipt of Advice of Counsel***. Each Party acknowledges, agrees, and specifically warrants that he, she, or it has fully read this Agreement and the Releases contained herein, received independent legal advice with respect to the advisability of entering into this Agreement and the Releases, and the legal effects of this Agreement and the Releases, and fully understands the effect of this Agreement and the Releases.

*Signatures on the following page*

**PLAINTIFFS**

Greg Hale (Jul 28, 2026 11:41:49 CDT)

Greg Hale

*Alicia Gilmore*

ID Qzi9koujL6ZML7pdqHkvuqnn

Alicia Gilmore

*Michael Whitkanack*

Michael Whitkanack

7/29/2026

DB4BB452346E488

Jessica White


**CLASS COUNSEL** (On Behalf of the Plaintiffs and the Settlement Class)

BRYAN BLEICHNER
**CHESTNUT CAMBRONNE PA**

JEAN MARTIN
**AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLC**
**DEFENDANT ARCARE, INC.**

By: Steven F. Collier MD
Its CEO


**DEFENDANT ARCARE, INC.**

37

# Exhibit 1

To:

From:

Subject: Notice of Proposed Arcare Data Incident Class Action Settlement

**If you are a living individual residing in the United States who was sent notice that your Private Information may have been impacted in the Arcare, Inc. Data Incident, you may be eligible for benefits from a class action Settlement.**

*A federal court authorized this Notice.*

A Settlement has been reached in the class action lawsuit titled *Hale, et al., v. Arcare, Inc.*, Case No. 3:22-cv-117-BSM, pending in the United States District Court for the Eastern District of Arkansas. The lawsuit arises from the unauthorized access to or acquisition of Private Information that Arcare discovered on or about February 24, 2022 ("Data Incident").

**Who is included?** The Settlement Class includes all living individuals residing in the United States who were sent a notice that their Private Information may have been impacted in the Data Incident.

**What does the Settlement provide?** Arcare will establish a $3,900,000 Settlement Fund. Settlement Class Members who submit a Valid Claim may select either:

1. Cash Payment A – Documented Losses: Reimbursement of up to $5,000 for actual, documented, and unreimbursed monetary losses that were more likely than not caused by the Data Incident and incurred after the Data Incident. Reasonable supporting documentation is required, and amounts previously reimbursed by another source are not eligible.
2. Cash Payment B – Alternate Cash: An estimated $100 cash payment, subject to upward or downward pro rata adjustment.

Settlement Class Members may also select Medical Data Monitoring in addition to either cash option. This benefit includes one year of CyEx Medical Shield Complete, including one-bureau credit monitoring, medical-data monitoring, up to $1,000,000 in identity-theft insurance, real-time alerts, and victim assistance.

Cash Payments may be increased or decreased on a pro rata basis. Visit www.[website].com for complete benefit details and claim instructions.

**How do I get Settlement benefits?** You must complete and submit a Claim Form by **Month XX, 2026**. You may submit a Claim Form electronically through the Settlement Website at www.[website].com. You may also print a Claim Form from the Settlement Website or request one by calling the Settlement Administrator. Mailed Claim Forms must be postmarked by **Month XX, 2026**.

**What are my other options?** If you **stay in** the Settlement Class, you will be legally bound by the Settlement's terms and you will release your claims against the Released Parties, regardless of whether you file a claim. If you do not want to be legally bound by the Settlement, you must **opt out** of the Settlement by **Month XX, 2026**. If you opt out, you will not be eligible to receive any Settlement benefits, but you will retain the right to pursue your own claims against the Released Parties. If you do not opt out, you may **object** to the Settlement by **Month XX, 2026**. Objecting does not exclude you from the Settlement. The Long Form Notice available at www.[website].com explains how to opt out or object. If you do nothing, you will not receive benefits and will still be bound by the Settlement.

**Do I have a lawyer?** Yes. The Court appointed Jean Martin of Aylstock, Witkin, Kreis & Overholtz, PLC, and Bryan Bleichner of Chestnut Cambronne PA to represent the Settlement Class. You will not be charged for their services.

**The Court's Final Approval Hearing.** The Court will hold a Final Approval Hearing at **X:XX x.m.** on **Month XX, 2026,** at the United States District Court for the Eastern District of Arkansas, 500 West Capitol Avenue, Little Rock, Arkansas 72201, to determine whether to grant final approval to the Settlement. The Court will also consider Class Counsel's request for attorneys' fees, costs, and Service Awards. The Court will consider any properly filed objections and may hear from people who have requested permission to speak. You may attend the hearing, but you do not have to. You may also hire your own attorney, at your own expense, to attend or speak on your behalf.

**Want more information?** Call 1-XXX-XXX-XXXX, email XXXX@XXXXXXXXXX.com, or visit www.[website].com.

# Exhibit 2

Class Member ID _____

**Why am I receiving this Notice?** A proposed Settlement has been reached in the class action lawsuit titled *Hale, et al., v. v. Arcare, Inc.,* Case No. 3:22-cv-117-BSM, pending in the United States District Court for the Eastern District of Arkansas. You received this Notice because you may be a Settlement Class Member. The Settlement Class includes all living individuals residing in the United States who were sent a notice indicating that their Private Information may have been impacted in the Data Incident involving Arcare, Inc. ("Arcare" or "Defendant").

**What does the Settlement provide?** Arcare will establish a $3,900,000 Settlement Fund. Settlement Class Members who submit a Valid Claim may select either:

1. Cash Payment A – Documented Losses: Reimbursement of up to $5,000 for actual, documented, and unreimbursed monetary losses that were more likely than not caused by the Data Incident and incurred after the Data Incident. Reasonable supporting documentation is required, and amounts previously reimbursed by another source are not eligible.
2. Cash Payment B – Alternate Cash: An estimated $100 cash payment, subject to pro rata adjustment.

Settlement Class Members may also select **Medical Data Monitoring** in addition to either cash option. This benefit includes one year of CyEx Medical Shield Complete, including one-bureau credit monitoring, medical-data monitoring, up to $1,000,000 in identity-theft insurance, real-time alerts, and victim assistance.

Cash Payments may be increased or decreased on a pro rata basis. You must submit a completed Claim Form online or by mail by **Month DD, 2026**, to receive any Settlement benefit. Visit **www.website.com** for complete benefit details and claim instructions.

**What are my other options?** If you **stay in** the Settlement Class, you will be legally bound by the Settlement's terms and you will release your claims against the Released Parties, regardless of whether you file a claim. If you do not want to be legally bound by the Settlement, you must **opt out** of the Settlement by **Month DD, 2026**. If you opt out, you will not be entitled to any relief, but you will retain the right to pursue your own claims against the Released Parties. If you do not opt out, you may **object** to the Settlement by **Month DD, 2026**. The Long Form Notice available at www.website.com explains how to opt out or object. If you do nothing, you will not receive benefits and will still be bound by the Settlement.

**The Court's Final Approval Hearing.** The Court will hold a Final Approval Hearing on **Month DD, 2026, at X:XX x.m.** to consider whether to approve the Settlement and Class Counsel's request for attorneys' fees, costs, and Service Awards. You may appear at the hearing, either yourself or through an attorney hired by you, but you do not have to. For more information, visit the website.

**Do I have a lawyer in the case?** The Court appointed Jean Martin of Aylstock, Witkin, Kreis & Overholtz, PLC, and Bryan Bleichner of Chestnut Cambronne PA as to represent the Settlement Class. You will not be charged for their services.

For more information, please call toll-free XXX-XXX-XXXX, email XXXX@XXXXXXXXXX.com or visit www.website.com.

# Exhibit 3

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

**If you are a living individual residing in the United States who was sent notice that your Private Information may have been impacted in the Arcare, Inc. Data Incident, you may be eligible for benefits from a class action Settlement.**

*A federal court authorized this Notice. This is not a solicitation from a lawyer.*

- A Settlement has been reached in a class action lawsuit against Arcare, Inc. ("Arcare" or "Defendant") arising from the Action entitled *Hale, et al., v. Arcare, Inc.*, which alleged claims for negligence, breach of implied contract, unjust enrichment, breach of fiduciary duty, and declaratory judgment and injunction relief.

- You are included in the "Settlement Class" if you were impacted by the "Data Incident" affecting Arcare, Inc. between January 18 and February 24, 2022, specifically all living individuals residing in the United States who were sent a notice of the Data Incident indicating their Private Information may have been impacted.

- Your legal rights are affected whether you act or don't act. Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **DO NOTHING** | If you do nothing, you will not receive benefits. You will also give up your rights to be part of any other lawsuit against the Defendant for the legal claims made in this case and released by the Settlement Agreement. |
| **SUBMIT A CLAIM FORM** | If you want to be eligible to receive benefits, you must submit a Claim Form. Claim Forms must be submitted electronically via the Settlement Website by **Month XX, 2026** or postmarked no later than **Month XX, 2026**. |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT** | If you exclude yourself or "Opt-Out", you will not receive benefits. This is the only option that allows you to be part of any other lawsuit against the Defendant for the legal claims made in this case and released by the Settlement Agreement. |
| **OBJECT TO THE SETTLEMENT** | If you object, you must write to the Court with reasons why you do not agree with the Settlement. |
| **GO TO THE FINAL APPROVAL HEARING** | You may ask the Court for permission for you or your attorney to speak about your objection at the Final Approval Hearing. |

- These rights and options—and the deadlines to exercise them—are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the Settlement. If the Court denies final approval, the Settlement will be void and the litigation will continue against the Defendant.

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **PAGE 3**

1. Why is this Notice being provided?
2. What is this lawsuit about?
3. What is a class action?
4. Why is there a Settlement?

**WHO IS INCLUDED IN THE SETTLEMENT?** . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **PAGE 3**

5. How do I know if I am part of the Settlement?
6. Are there exceptions to being included in the Settlement?
7. I am still not sure if I am included.

**THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **PAGE 4**

8. What does the Settlement provide?
9. What can I get from the Settlement?

**HOW TO GET SETTLEMENT BENEFITS.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **PAGE 5**

10. How do I get Settlement benefits?
11. When will I get my benefits?
12. What am I giving up to get Settlement benefits or stay in the Settlement?
13. What are the Released Claims?

**EXCLUDING YOURSELF FROM THE SETTLEMENT.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . **PAGE 6**

14. How do I get out of the Settlement?
15. If I exclude myself, can I still get benefits from the Settlement?
16. If I do not exclude myself, can I sue the Defendant for the same thing later?

**THE LAWYERS REPRESENTING YOU** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **PAGE 6**

17. Do I have a lawyer in this case?
18. How will Class Counsel be paid?

**OBJECTING TO THE SETTLEMENT.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **PAGE 7**

19. How do I tell the Court that I do not like the Settlement?
20. What is the difference between objecting to and excluding myself from the Settlement?

**THE COURT'S FINAL APPROVAL HEARING** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **PAGE 8**

21. When and where will the Court decide whether to approve the Settlement?
22. Do I have to come to the Final Approval Hearing?
23. May I speak at the Final Approval Hearing?

**IF YOU DO NOTHING** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **PAGE 8**

24. What happens if I do nothing?

**GETTING MORE INFORMATION.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **PAGE 9**

25. How do I get more information?

## BASIC INFORMATION

| 1.  Why is this Notice being provided? |
|---|

The Court directed that this Notice be provided because you have a right to know about a proposed Settlement that has been reached in a class action lawsuit and about all of your options before the Court decides whether to grant final approval to the Settlement. This Notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The case is titled *Hale, et al., v. Arcare, Inc.*, pending in the United States District Court for the Eastern District of Arkansas (No. 3:22-cv-117-BSM), arising from the unauthorized access to or acquisition of Private Information that Defendant discovered on or about February 24, 2022 (the "Data Incident"). This is referred to as the "Action." The people who filed the lawsuit are called Plaintiffs and the organization they sued, Arcare, Inc. ("Arcare"), is called Defendant.

| 2.  What is this lawsuit about? |
|---|

Arcare determined that there was unauthorized access to sensitive data between January 18 and February 24, 2022. Approximately 345,000 individuals were notified by the Defendant that their Social Security numbers, driver's license or state identification numbers, dates of birth, financial account information, medical treatment information, prescription information, medical diagnosis or condition information, and health insurance information ("Private Information") may have been implicated in the Data Incident.

Plaintiffs filed their Consolidated Amended Class Action Complaint against Defendant on June 2, 2023, alleging claims for (1) negligence; (2) breach of implied contract; (3) unjust enrichment; (4) breach of fiduciary duty; and (5) declaratory judgement and injunction relief.

| 3.  What is a class action? |
|---|

In a class action, one or more people called "Class Representatives" (in this Action, Greg Hale, Jessica White, Alicia Gilmore, Michael Whitkanack, and Melissa Johnson) sue on behalf of people who have similar claims. Together, all these people are called the Settlement Class. One court resolves the issues for all Settlement Class Members, except for those who exclude themselves from the Class.

| 4.  Why is there a Settlement? |
|---|

The Court did not decide in favor of the Plaintiffs or the Defendant. Instead, the Plaintiffs negotiated a Settlement with the Defendant that allows them to avoid the risks and costs of lengthy and uncertain litigation and the uncertainty of a trial. The Class Representatives and their attorneys think the Settlement is best for all Settlement Class Members.

## WHO IS INCLUDED IN THE SETTLEMENT?

| 5.  How do I know if I am part of the Settlement? |
|---|

The Settlement includes all living individuals residing in the United States who were sent a notice of the Data Incident indicating their Private Information may have been impacted in the Data Incident.

| 6.  Are there exceptions to being included in the Settlement? |
|---|

Yes, the Settlement Class specifically excludes: (1) all persons who are directors and officers of Defendant; (2) governmental entities; and (3) the Judge assigned to the Action, that Judge's immediate family, and Court staff.

| 7.  I am still not sure if I am included. |
|---|

QUESTIONS? CALL 1-___-___-____ TOLL-FREE, EMAIL XXXX@XXXXXXX.COM OR VISIT www.website.com

If you are still not sure whether you are included, call 1-___-___-____, email XXXX@XXXXXXX.COM or visit www.website.com for more information.

### THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY

| 8.  What does the Settlement provide? |
| --- |

The Defendant has agreed to pay a total of $3,900,000 to settle the Action. The "Settlement Fund" shall be used to pay: (1) all Settlement Class Member Benefits to Settlement Class Members who submit Valid Claims; (2) all Settlement Administration Costs; and (3) any attorneys' fees, costs, and Service Awards approved by the Court.

| 9.  What can I get from the Settlement? |
| --- |

If you are a Settlement Class Member, you may file a claim to receive benefits from the Settlement Fund. All Settlement Class Members may elect either Cash Payment A – Documented Losses or Cash Payment B – Alternate Cash. Additionally, all Settlement Class Members may also elect to receive Medical Data Monitoring.

a. Cash Payment A – Documented Losses: All Settlement Class Members are eligible to submit a claim for a Cash Payment for Documented Losses for up to $5,000.00 per Settlement Class Member upon presentment of reasonable documentation of losses related to the Data Incident. Documented expenses include, by way of example, unreimbursed losses relating to fraud or identity theft: if (i) the loss is an actual, documented, and unreimbursed monetary loss; (ii) the loss was more likely than not caused by the Data Incident; and (iii) the loss was incurred after the date of the Data Incident. To receive payment for documented losses, a Settlement Class Member must complete and submit a Claim Form and include documentation in support of the Claim. Except as expressly provided herein, personal certifications, declarations, or affidavits from the Settlement Class Member do not constitute proper documentation, but may be included to provide clarification, context, or support for other submitted reasonable documentation. Settlement Class Members shall not be reimbursed for expenses if they have been reimbursed for the same expenses by another source, including compensation provided in connection with any credit monitoring and identity theft protection product. If a Settlement Class Member does not submit documentation supporting a loss, or if the Settlement Administrator rejects for any reason the Settlement Class Member's Claim and the Settlement Class Member fails to cure the Claim, the Claim will be rejected.

b. Cash Payment B – Alternate Cash: As an alternative to Cash Payment A above, a Settlement Class Member may elect to receive Cash Payment B, which is a cash payment in the estimated amount of $100.

c. Medical Data Monitoring: In addition to Cash Payment A or Cash Payment B, Settlement Class Members may also make a Claim for Medical Data Monitoring that includes one year of CyEx's Medical Shield Complete. The product includes credit monitoring with one bureau, with additional monitoring of: (a) healthcare insurance plan IDs, healthcare beneficiary identifier ID; (b) medical records; (c) national provider identifier; (d) international classification of disease; (e) health savings account; (f) high risk; and (g), Dark Web. The product also provides for $1,000,000 of identity theft insurance and contains real-time alerts and victim assistance.

Cash Payments will be subject to a *pro rata* (a) increase from the Net Settlement Fund if the amount of Valid Claims is insufficient to exhaust the entire Net Settlement Fund or (b) decrease from the Net Settlement Fund if the amount of Valid Claims exhausts the amount of the Net Settlement Fund. For purposes of calculating the *pro rata* increase or decrease, the Settlement Administrator must distribute the funds in the Net Settlement Fund first for payment of Medical Data Monitoring, then for Cash Payment A – Documented Losses, and then to all those who elect Cash Payment B – Alternate Cash. Any *pro rata* increases or decreases will be on an equal percentage

basis. If a Settlement Class Member does not submit a Valid Claim, the Settlement Class Member will release his or her claims without receiving a Settlement Class Member Benefit.

## HOW TO GET SETTLEMENT BENEFITS

### 10. How do I get Settlement benefits?

You must file a Settlement Claim within 90 days of the Notice Date to be eligible to receive benefits. Settlement Class Members may submit Claim Forms electronically through the Settlement Website or by mail to the Settlement Administrator. Claim Forms must be submitted electronically or postmarked no later than **Month XX, 2026**.

### 11. When will I get my benefits?

The Court will hold a Final Approval Hearing at __:_0 _.m. on Month XX, 2026, to determine whether the Settlement Agreement should receive Final Approval by the Court. If the Court approves the Settlement, there may be appeals. It is always uncertain whether any appeals can be resolved favorably, and resolving them can take time, perhaps more than a year. Settlement benefits will be distributed after the Settlement is approved and becomes final.

### 12. What am I giving up to get Settlement benefits or stay in the Settlement?

Unless you exclude yourself from the Settlement, you will give up your right to sue, continue to sue, or be part of any other lawsuit against Defendant and certain Released Parties for any claim related to the Action or released by the Settlement Agreement. You will be legally bound by all of the Court's orders, as well as the "Released Claims," below.

"Released Parties" means Defendant and Defendant's past, present, and future direct and indirect heirs, assigns, associates, corporations, investors, owners, parents, subsidiaries, affiliates, divisions, officers, directors, shareholders, members, employees, attorneys, insurers, reinsurers, benefit plans, predecessors, successors, managers, administrators, executors, and trustees.

### 13. What are the Released Claims?

"Released Claims" mean any and all actual, potential, filed or unfiled, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected claims, demands, liabilities, rights, causes of action, damages, punitive, exemplary or multiplied damages, expenses, costs, attorneys' fees and/or obligations, whether in law or in equity, accrued or unaccrued, direct, individual or representative, joint or several, of every nature and description whatsoever, based on any federal, state, local, statutory or common law or any other law, against the Released Parties, or any of them, arising out of or relating to actual or alleged facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures to act relating to the Data Incident. More information about the Released Claims can be found in the Settlement Agreement and Release, available at www.website.com.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

### 14. How do I get out of the Settlement?

To exclude yourself from the Settlement, you must individually sign and timely submit written notice of the intent to opt out to the designated Post Office box established by the Claims Administrator. The written notice must clearly manifest a Person's intent to be excluded from the Settlement Class.

The request must include: The individual's full name, current address, telephone number, email address (if any), personal signature, and the words "Request for Exclusion" or a comparable statement that the individual does not

wish to participate in the Settlement at the top of the communication.

To be effective, all Requests for Exclusions must be postmarked no later than **Month XX, 2026,** to:

*Hale, et al., v. Arcare, Inc.* Settlement Administrator
P.O. Box _____
City, ST _____-____

### 15. If I exclude myself, can I still get benefits from the Settlement?

No. If you exclude yourself from the Settlement, you will not receive benefits because you will no longer be eligible for them.

### 16. If I do not exclude myself, can I sue the Defendant for the same thing later?

No. If you stay in the Settlement (*i.e.*, do nothing or do not exclude yourself from the Settlement), you give up any right to separately sue the Defendant or Released Parties for the claims released by the Settlement Agreement and Release.

## THE LAWYERS REPRESENTING YOU

### 17. Do I have a lawyer in this case?

Yes. The Court appointed Jean Martin of Aylstock, Witkin, Kreis & Overholtz, PLC, and Bryan Bleichner of Chestnut Cambronne PA to represent you and other Settlement Class Members. These lawyers are called Class Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

### 18. How will Class Counsel be paid?

If the Settlement is approved and becomes final, Class Counsel will ask the Court to award attorneys' fees of up to 1/3 of the Settlement Fund ($1,300,000), and for reimbursement of reasonable litigation expenses not to exceed $50,000, which shall be paid from the Settlement Fund. Plaintiffs intend to request a Service Award in the amount of $2,500 to each individual Class Representative ($12,500 total) for their services and efforts in representing the Class. If approved, these amounts will be deducted from the Settlement Fund before making payments to Settlement Class Members who submit Valid Claims.

## OBJECTING TO THE SETTLEMENT

### 19. How do I tell the Court that I do not like the Settlement?

If you are a Settlement Class Member, you can object to the Settlement if you do not like it or a portion of it. You can give reasons why you think the Court should not approve the Settlement. The Court will consider your views before making a decision. Objections must be sent to the Clerk of Court, and sent by the U.S. Mail to Class Counsel, Defendant's Counsel, and the Settlement Administrator. Your objection must be filed and postmarked by **Month XX, 2026**.

For an objection to be considered, the objection must set forth:

    a.  the objector's full name, mailing address, telephone number, and email address (if any);
    b.  all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel;
    c.  the number of times the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case;

QUESTIONS? CALL 1-___-___-____ TOLL-FREE, EMAIL XXXX@XXXXXXX.COM OR VISIT www.website.com

d.  the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards;

e.  the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding five years;

f.  the identity of all counsel (if any) representing the objector, and whether they will appear at the Final Approval Hearing;

g.  a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any);

h.  a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing;

i.  a disclosure and certification as to whether artificial intelligence was used in preparation of the objection; and

j.  the objector's signature (an attorney's signature is not sufficient).

| Court | Class Counsel | Defense Counsel | Settlement Administrator |
|---|---|---|---|
| United States District Court for the Eastern District of Arkansas 500 West Capitol Avenue Little Rock, Arkansas 72201 | Jean Martin Aylstock, Witkin, Kreis & Overholtz, PLC 17 E. Main Street Suite 200 Pensacola, FL 32502<br><br>Bryan Bleichner Chestnut Cambronne PA 100 Washington Ave. S., Suite 1700 Minneapolis, MN 55401 | TBD | *Hale, et al., v. Arcare, Inc.* Settlement Administrator P.O. Box _____ City, ST _____-____ |

| 20. What is the difference between objecting to and excluding myself from the Settlement? |
|---|

Objecting is telling the Court that you do not like something about the Settlement. Excluding yourself is telling the Court that you do not want to be part of the Class in this Settlement. If you exclude yourself from the Settlement, you have no basis to object because the Settlement no longer applies to you.

### THE COURT'S FINAL APPROVAL HEARING

| 21. When and where will the Court decide whether to approve the Settlement? |
|---|

The Court will hold a Final Approval Hearing at __:_0 _.m. on Month __, 2026, to determine whether the Settlement Agreement should receive Final Approval by the Court at the United States District Court for the Eastern District of Arkansas, 500 West Capitol Avenue, Little Rock, Arkansas 72201. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. The Court will take into consideration any properly-filed objections and may also listen to people who have asked to speak at the hearing (*see* Question 23). The Court will also decide whether to approve payments of attorneys' fees, costs, and service awards.

| 22. Do I have to come to the Final Approval Hearing? |
|---|

No. Class Counsel will answer any questions the Court may have, but you are welcome to come at your own expense. If you file an objection, you do not have to come to Court to talk about it. You may also hire your own lawyer to attend, at your own expense, but you are not required to do so.

| 23. May I speak at the Final Approval Hearing? |
|---|

Yes. You may ask the Court for permission to speak at the Final Approval Hearing. To do so, you must follow the instructions provided in Question 19 above. You cannot speak at the hearing if you exclude yourself from the Settlement.

## IF YOU DO NOTHING

| 24. What happens if I do nothing? |
|---|

If you do nothing, you will not receive any benefits from this Settlement and you will be bound by the terms of the Settlement Agreement and Release if it is approved and becomes final. This means you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against the Defendant or the Released Parties about the issues resolved by this Settlement and released by the Settlement Agreement.

## GETTING MORE INFORMATION

| 25. How do I get more information? |
|---|

More details are in the Settlement Agreement and Release, which is available at www.website.com. You may also call 1-___-___-____, email xxxx@xxxxxxx.com, or write to the Settlement Administrator, *Greg Hale, on behalf of himself and all others similarly situated, et al., v. Arcare, Inc*. P.O. Box _____, City, ST _____-____.

***Please do not call the Court or the Clerk of the Court for additional information.***
***They cannot answer any questions regarding the Settlement or the Action.***

# Exhibit 4

<u>**CLAIM FORM**</u>

***Greg Hale, on behalf of himself and all others similarly situated, et al., v. Arcare, Inc.***
**Case No. 3:22-cv-117-BSM**
**United States District Court**
**Eastern District of Arkansas**

**USE THIS FORM TO MAKE A CLAIM FOR SETTLEMENT BENEFITS**

For more information, call 1-___-___-____, email XXX@XXXXXX.com or visit www.website.com

**The DEADLINE to submit this Claim Form online (or have it postmarked for mailing) is**

**[XXXX XX, 2026]**

### I. GENERAL INSTRUCTIONS

You are a Settlement Class Member if you are a living individual residing in the United States who was sent a notice of the Arcare, Inc. Data Incident indicating that your Private Information may have been impacted. The unauthorized access to or acquisition of Private Information that Arcare discovered on or about February 24, 2022, is referred to as the "Data Incident."

The Settlement establishes a $3,900,000 Settlement Fund to pay Settlement Class Member Benefits to Settlement Class Members who submit Valid Claims, Settlement Administration Costs, and any attorneys' fees, costs, and Service Awards approved by the Court. As a Settlement Class Member, you may elect either Cash Payment A – Documented Losses or Cash Payment B – Alternate Cash. You may also elect Medical Data Monitoring in addition to either cash option. **You must submit a completed Claim Form to receive Settlement Class Member Benefit.** Cash Payments may be increased or decreased on a pro rata basis depending on the number and value of Valid Claims and the amount available in the Net Settlement Fund.

The benefits are as follows:

### a. <u>Cash Payment A – Documented Losses</u>

All Settlement Class Members are eligible to submit a claim for a Cash Payment for Documented Losses for up to $5,000.00 per Settlement Class Member upon presentment of reasonable documentation of losses related to the Data Incident. Documented expenses include, by way of example, unreimbursed losses relating to fraud or identity theft: if (i) the loss is an actual, documented, and unreimbursed monetary loss; (ii) the loss was more likely than not caused by the Data Incident; and (iii) the loss was incurred after the date of the Data Incident. To receive payment for documented losses, a Settlement Class Member must complete and submit a Claim Form and include documentation in support of the Claim. Except as expressly provided herein, personal certifications, declarations, or affidavits from the Settlement Class Member do not constitute proper documentation, but may be included to provide clarification, context, or support for other submitted reasonable documentation. Settlement Class Members shall not be reimbursed for expenses if they have been reimbursed for the same expenses by another source, including compensation provided in connection with any credit monitoring and identity theft protection product. If a Settlement Class Member does not submit documentation supporting a loss, or if the Settlement Administrator rejects for any reason the Settlement Class Member's Claim and the Settlement Class Member fails to cure the Claim, the Claim will be rejected.

### b. <u>Cash Payment B – Alternate Cash</u>

As an alternative to Cash Payment A above, a Settlement Class Member may elect to receive Cash Payment B, which is a cash payment in the estimated amount of $100.

### c. <u>Medical Data Monitoring</u>

In addition to Cash Payment A or Cash Payment B, Settlement Class Members may also make a Claim for Medical Data Monitoring that includes one year of CyEx's Medical Shield Complete. The product includes credit monitoring with one bureau, with additional monitoring of: (a) healthcare insurance plan IDs, healthcare beneficiary identifier ID; (b) medical records; (c) national provider identifier; (d) international classification of disease; (e) health savings account; (f) high risk; and (g) Dark Web. The product also provides for $1,000,000 of identity theft insurance and contains real-time alerts and victim assistance.

### Completing the Claim Form

This Claim Form may be submitted online through the Settlement website at www.website.com or completed and mailed to the address below. Online Claim Forms must be submitted by 11:59 p.m. Central Time on the Claim Form Deadline, and mailed Claim Forms must be postmarked by the Claim Form Deadline. Please type or legibly print all requested information in blue or black ink. If submitting by U.S. Mail, mail your completed Claim Form, including any required supporting documentation, to:

*Hale, et al., v. Arcare, Inc.*
Settlement Administrator
P.O. Box XXXX XXXXX, XX XXXXX

## II.    CLAIMANT INFORMATION

The Settlement Administrator will use this information for all communications regarding this Claim Form and the Settlement. If this information changes prior to distribution of cash payments, you must notify the Settlement Administrator in writing at the address above.

Claimant Name: _____
First Name           MI    Last Name

Street Address:

_____

Address Line 2:

_____

City: _____ State: _____ Zip Code: _____

Class Member ID, if available:

_____

If you received a notice of this Settlement by U.S. mail, your Class Member ID is on the envelope or postcard.
If you received a notice of this Settlement by email, your Class Member ID is in the email.

Email Address: _____
An email address is required if you select Medical Data Monitoring.

[optional] Daytime Phone Number: ( _____ )_____ - _____

[optional] Evening Phone Number: ( _____ )_____ - _____

**You may select either Option A or Option B, but not both. You may also select Option C in addition to either cash option:**

### 1) CASH PAYMENT A – Documented Losses

☐   Check this box if you are electing Cash Payment A – **Documented Losses**. You may seek reimbursement of up to $5,000 for actual, documented, and unreimbursed monetary losses that were more likely than not caused by the Data Incident and were incurred after the Data Incident. You must attach reasonable documentation supporting each claimed loss. A personal certification, declaration, or affidavit does not, by itself, constitute sufficient documentation, but may be provided to clarify or support other documentation.

### 2) CASH PAYMENT B – Alternate Cash

☐   Check this box if you are electing Cash Payment B – **Alternate Cash**, estimated at $100 and subject to pro rata adjustment.

### 3) MEDICAL DATA MONITORING

☐   Check this box if you are electing to seek **Medical Data Monitoring** that includes one year of CyEx's Medical Shield Complete. This benefit may be selected in addition to Cash Payment A or Cash Payment

B and includes one-bureau credit monitoring, medical-data monitoring, up to $1,000,000 of identity theft insurance, real-time alerts, and victim assistance.

## CASH PAYMENT A – Making a Claim for Documented Losses

To make a claim for Documented Losses, **you must**: (i) complete the loss table below or attach a separate sheet containing the same information; (ii) identify and attach reasonable documentation supporting each claimed loss; (iii) explain how each loss was more likely than not caused by the Data Incident; and (iv) sign the Certification in Section III. Each loss must be actual, documented, unreimbursed, and incurred after the Data Incident.

## DOCUMENTED LOSS DETAILS

For each loss, identify the type of loss, the date incurred, the amount, the supporting documentation attached, and how the loss relates to the Data Incident. Attach additional pages if necessary. The total amount claimed may not exceed $5,000.

| Type and description of loss | Date incurred | Amount claimed | Supporting documentation attached and explanation of how the loss relates to the Data Incident |
|---|---|---|---|
| | __/__/____ | $ | |
| | __/__/____ | $ | |
| | __/__/____ | $ | |
| | __/__/____ | $ | |
| | __/__/____ | $ | |
| | __/__/____ | $ | |

**Total Amount Claimed: $_____**

Examples of supporting documentation may include account statements, correspondence with financial institutions or government agencies, invoices, receipts, or other records showing the loss and amount. Personal certifications, declarations, or affidavits may provide context but do not, by themselves, constitute sufficient documentation.

**Failure to meet the requirements of this section may result in your claim being rejected by the Settlement Administrator.**

**III.   CERTIFICATION**

By submitting this Claim Form, I certify that I am a living individual residing in the United States who was sent notice that my Private Information may have been impacted in the Data Incident; that I have submitted only one Claim Form; and that the information provided in this Claim Form and any attachments is true and correct. For any Documented Losses claimed, I certify that the losses are actual, documented, unreimbursed monetary losses; were more likely than not caused by the Data Incident; were incurred after the Data Incident; and have not been reimbursed by another source. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I understand that this Claim may be subject to audit, verification, and Court review and that the Settlement Administrator may require additional information or documentation. I also understand that Cash Payments may be increased or reduced on a pro rata basis and that any Claim may be reduced or denied in accordance with the Settlement Agreement.


Signature: _____        Date: _____


Print Name: _____

# Exhibit 5

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

| | |
|---|---|
| GREG HALE, ALICIA GILMORE, MICHAEL WHITKANACK, and JESSICA WHITE, on behalf of themselves and all others similarly situated,<br><br>        v.<br><br>ARCARE, INC. | Case No. 3:22-cv-117-BSM |

**[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT**

The Court has received the Settlement Agreement and Release (ECF No. ___) (the "Settlement Agreement"), entered into between Plaintiffs Greg Hale, Jessica White, Alicia Gilmore, and Michael Whitkanack (collectively, "Plaintiffs" or "Class Representatives"), individually and as representatives of the Settlement Class (as defined below), and Defendant Arcare, Inc. ("Arcare" or "Defendant") providing for a $3,900,000 non-reversionary common fund to resolve all claims arising from the unauthorized access to or acquisition of Private Information that Defendant discovered on or about February 24, 2022 (the "Data Incident").

After reviewing the Settlement Agreement and other documents filed in support of the Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Motion"), and having considered the arguments by the respective parties, THE COURT HEREBY ORDERS THE FOLLOWING:

1.      Jurisdiction. The Court preliminarily finds that the Court has personal jurisdiction over all Settlement Class Members (as defined in the Settlement Agreement), that the Court has subject-matter jurisdiction over the claims asserted in this action, and that venue is proper.

1

2. <u>Preliminary Approval of the Proposed Settlement Agreement</u>. The Court hereby grants preliminary approval of the proposed settlement upon the terms and conditions set forth in the Settlement Agreement. The Court preliminarily finds that the Parties have shown the Court it will likely be able to approve the proposed settlement, as embodied in the Settlement Agreement, as being fair, adequate and reasonable under Rule 23(e) of the Federal Rules of Civil Procedure ("Rule 23").

3. The Court further finds that the Settlement Agreement substantially fulfills the purposes and objectives of the class action and provides substantial relief to the Settlement Class without the risks, burdens, costs, or delay associated with continued litigation, trial, and/or appeal. The Court also finds that the Settlement Agreement: (a) is the result of informed, arm's-length negotiations between experienced class action attorneys and made with the assistance of the mediation services of Judge Wayne Andersen (ret.).; (b) is sufficient to warrant notice of the Settlement and Final Approval Hearing to be disseminated to the Settlement Class; and (c) meets all applicable requirements of law, including Rule 23 and the Class Action Fairness Act, 28 U.S.C. § 1715, and the United States Constitution. The Court further preliminarily finds that the terms of the Settlement Agreement have no obvious deficiencies and do not improperly grant preferential treatment to any individual Settlement Class Member.

I.    <u>PRELIMINARY CERTIFICATION OF THE SETTLEMENT CLASS</u>

4. <u>Settlement Classes</u>. The Court orders that the Settlement Class and the California Subclass are each preliminarily certified for settlement purposes only. The "Settlement Class" is defined as all living individuals residing in the United States who were sent a notice of the Data Incident indicating their Private Information may have been impacted in the Data Incident. Excluded from the Settlement Class are: (1) all persons who are directors and officers of Defendant; (2) governmental entities; and (3) the Judge assigned to the Action, that Judge's immediate family, and Court staff. The Court finds that, for purposes of the settlement, subject to the Final Approval Hearing, the above-defined Settlement Class meets all of the requirements for class certification.

5.      The Court further finds that, for purposes of the settlement only, the requirements of Rule 23 are satisfied and that:  a) the Settlement Class is ascertainable; b) the members of the Settlement Class are so numerous that joinder is impracticable; c) there are questions of law and fact common to the Settlement Class Members which predominate over any individual questions; d) the representative Plaintiffs' claims are typical of the claims of the Settlement Class Members; e) Class Representatives and Class Counsel have fairly, adequately, reasonably and competently represented and protected the interests of the Settlement Class; and f) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

6.      <u>Class Representatives</u>.  For the purposes of settlement only, the Court Greg Hale, Jessica White, Alicia Gilmore, Michael Whitkanack, and Melissa Johnson as Class Representatives for the Settlement Class.   The Court finds that the Settlement Class Representatives will adequately protect the interests of the Settlement Class.

7.      <u>Class Counsel</u>.  For the purposes of settlement only, the Court appoints attorneys Jean Martin of Aylstock, Witkin, Kreis & Overholtz, PLC, and Bryan Bleichner of Chestnut Cambronne PA as Class Counsel for the Settlement Class.  The Court finds that these attorneys are competent and capable of exercising the responsibilities of Class Counsel on behalf of the Settlement Class.

## II.      NOTICE AND SETTLEMENT ADMINISTRATION

8.      <u>Settlement Administrator</u>.  The Court appoints Verita Global, Inc. as the Settlement Administrator.   The Settlement Administrator is directed to carry out the Notice Plan in conformance with the Settlement Agreement and the below stated schedule, and to perform all tasks that the Settlement Agreement requires of it.

9.      <u>Qualified Settlement Fund</u>.  The Settlement Administrator is authorized to establish the Settlement Fund under 26 C.F.R. §§ 1.468B-1(d)(1) for federal tax purposes.  The Settlement Fund shall be a court-approved Qualified Settlement Fund ("QSF") for federal tax purposes pursuant to Treas. Reg. § 1.468B-1.  Defendant shall be the "transferor" to the QSF within the meaning of Section 1.468B-1(d)(1) of the Treasury Regulations with respect to the Settlement

3

Fund. The Settlement Administrator shall be the "administrator" of the QSF within the meaning of Section 1.468B-2(k)(3) of the Treasury Regulations, responsible for causing the filing of all tax returns required to be filed by or with respect to the QSF, paying from the QSF any taxes owed by or with respect to the QSF, and complying with any applicable information reporting or tax withholding requirements imposed by Section 1.468B-2(l)(2) of the Treasury Regulations or any other applicable law on or with respect to the QSF. Arcare shall provide to the Settlement Administrator any documentation reasonably requested by the Settlement Administrator that is required to obtain QSF status for the Settlement Fund pursuant to Treas. Reg. §1.468B-l. All taxes or income or interest generated by the Settlement Fund, if any, shall be paid out of the Settlement Fund.

10.    Class Notice. The Court approves the proposed manner of the Notice of Settlement set forth in the Settlement Agreement. As set forth in Section VIII of the Settlement Agreement, the Settlement Administrator shall disseminate direct notice to each Settlement Class Member for whom Arcare has available contact information. The Court approves, as to form and content, the Notice Plan, the Settlement Website, the Toll-Free Number, and the forms of notice (attached as Exhibits B (Email Notice), C (Postcard Notice), and D (Long Form Notice) to the Settlement Agreement). Nonmaterial modifications to the notices may be made by the Settlement Administrator without further order of the Court, so long as they are approved by the Parties and consistent in all material respects with the Settlement Agreement and this Order.

11.    The Court finds that the content, format, and method of disseminating the Notice of Settlement set forth in the Settlement Agreement and in paragraph 10 above: (a) constitute the best notice practicable under the circumstances; (b) are reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of this action, the terms of the proposed Settlement Agreement, and their rights to object to the Settlement Agreement and to exclude themselves from the Settlement Class; (c) are reasonable and constitute due, adequate, and sufficient notice to those persons entitled to receive notice; and (d) satisfy the requirements of Rule 23, the United States Constitution and the requirements of due process, and any other legal requirements. The Court further finds that the notices are written in plain language, use simple terminology, and are designed to be readily understandable by Settlement Class Members.

4

Accordingly, the Court hereby approves such notice and directs that such notice be disseminated in the manner set forth in the proposed Settlement Agreement and consistent with Rule 23.

12.    The Settlement Administrator shall provide notice consistent with the Notice Plan and notice shall begin to be disseminated to Settlement Class Members within thirty (30) calendar days after the Court issues this Order ("Notice Date").  All costs associated with providing all forms of notice, responding to inquiries from the Settlement Class, and performing all other Settlement Administrator's duties shall be paid out of the Settlement Fund as set forth in ¶ 74(m) of the Settlement Agreement.

## III.    OPT OUT AND OBJECTION PROCEDURES

13.    Exclusion from the Settlement Class.  Any person falling within the definition of the Settlement Class may, upon request, be excluded or "opt out" from the Settlement Class. Settlement Class Members may opt out by timely sending a written opt-out request to the Settlement Administrator postmarked no later than sixty (60) calendar days after the Notice Date (the "Opt-Out Deadline").  The opt-out request must be personally signed by the Settlement Class member and contain the requestor's name, address, telephone number, and email address (if any), and include a statement indicating a request to opt-out of the Settlement Class.

14.    Settlement Class Members who timely opt out of the Settlement Agreement: a) will not be a part of the Settlement Agreement; b) will have no right to receive any benefits under the Settlement Agreement; c) will not be bound by the terms of the Settlement Agreement; and d) will not have any right to object to the terms of the Settlement Agreement or be heard at the fairness hearing.  Any individual in the Settlement Class who does not submit a valid and timely Request for Exclusion in the manner described herein shall be deemed to be a Settlement Class Member upon expiration of the Exclusion Deadline, and shall be bound by all subsequent proceedings, orders, and judgments applicable to the Settlement Class (including the Final Approval Order and Final Judgment dismissing the Action).

15.    Objections to the Settlement Agreement.  Any Settlement Class Member, on his or her own, or through an attorney hired at his or her own expense, may object to the terms of the

5

Settlement Agreement.  Any such objection must be a written statement submitted to the the Clerk of Court, and sent by U.S. Mail to Class Counsel, Defendant's Counsel, and the Settlement Administrator. Objections are to be filed with the Court or postmarked within sixty (60) calendar days after the Notice Date (the "Objection Deadline").

16.     Any Settlement Class Member, on his or her own, or through an attorney hired at his or her own expense, may object to Class Counsel's motion for an award of attorney fees and expenses, and the Class Representatives' motion for service (or incentive) awards as set forth in paragraph 17, above.

17.     To be effective, any objection described in paragraphs 15 or 16 above must contain all of the following information: i) the person's full name, mailing address, email address, and telephone number; (ii) all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel; (iii) the number of times the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case; (iv) the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards; (v) the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding five years; (vi) whether the objector's counsel, if any, will appear at the Final Approval Hearing; (vii) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any); (viii) a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; (ix) a disclosure and certification as to whether artificial intelligence

6

was used in preparation of the objection; and (x) be personally signed by the individual Settlement Class Member (an attorney's signature is not sufficient.

IV.    FAIRNESS HEARING

18.    Class Counsel's motion for an award of attorneys' fees and expenses and Class Representatives' motion for service awards will be filed with the Court no later than fourteen (14) calendar days before the Opt-Out and Objection Deadline.

19.    Plaintiffs shall file their motion for Final Approval of the Settlement no later than 14 days before the Final Approval hearing.

20.    The Court will hold a Final Approval (fairness) hearing on _____, at _____ [a.m.] [p.m.]] [a date is requested that is no earlier than 120 days after the date that the Court enters this Order], to consider the fairness, reasonableness and adequacy of the proposed Settlement Agreement as well as Class Counsel's motion for Attorneys' Fees and Expenses Award and Service Awards.  The Court reserves the right to adjourn or continue the Final Approval (fairness) hearing without further notice to the Settlement Class Members.

21.    Class Counsel's motion for Attorneys' Fees and Expenses Award and Service Awards will be considered separately from the fairness, reasonableness, and adequacy of the Settlement Agreement.  Any order or proceeding relating to the amount of any award of attorneys' fees, costs, or expenses or Service Awards, or any appeal from any order relating thereto, or reversal or modification thereof, shall not operate to modify, terminate, or cancel the Settlement Agreement.

22.    Reasonable Procedures.  Class Counsel and defense counsel are hereby authorized to use all reasonable procedures in connection with approval and administration of the Settlement Agreement that are not materially inconsistent with this Order or the Settlement Agreement, including making, without further approval of the Court, minor changes to the form or content of the notices and other exhibits that they jointly agree are reasonable or necessary to further the purpose of effectuating the Settlement Agreement.

7

23.    <u>Extensions of Time</u>.  The time periods and dates provided in this Order may be altered by the Court or through written consent of the Parties' counsel, without notice to the Settlement Class; provided, however, that any such changes in the schedule of settlement proceedings will be posted on the Settlement Website.

24.    <u>Termination of the Settlement Agreement and Use of this Order</u>.  If the Judgment does not become final, the Parties shall be restored to their respective positions in the Action as of the date of the signing of the Settlement Agreement and this Order shall be null, void, and vacated, and shall not be used or cited thereafter by any person or entity.

IT IS SO ORDERED.

Dated: _____

By:    _____
       Brian S. Miller
       United States District Judge

# Exhibit 6

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

| | |
|---|---|
| GREG HALE, ALICIA GILMORE, MICHAEL WHITKANACK, and JESSICA WHITE, on behalf of themselves and all others similarly situated,<br><br>     v.<br><br>ARCARE, INC. | Case No. 3:22-cv-00117-BSM |

## ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**WHEREAS,** the above-captioned class action is pending in this Court (the "Action");

**WHEREAS,** Plaintiffs Greg Hale, Alicia Gilmore, Michael Whitkanack, and Jessica White ("Plaintiffs"), individually and on behalf of all others similarly situated, and Defendant Arcare, Inc. ("Defendant') have entered into a Settlement Agreement (the "Settlement Agreement") that settles the above-captioned litigation and provides for a complete dismissal with prejudice of the claims asserted against Defendant in the above-captioned action (the "Action") on the terms and conditions set forth in the Settlement, subject to approval of the Court;

**WHEREAS,** the Court has read and considered: (a) Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement, and the papers filed and arguments made in connection therewith; (b) the Settlement Agreement and exhibits attached thereto; (c) all objections submitted to the Court; and (d) the entire record of this case;

**WHEREAS,** unless otherwise defined, the capitalized terms herein shall have the same meaning as they have in the Settlement Agreement;

**WHEREAS,** the Court finds that, for settlement purposes only, the Settlement Class

1

defined as "as all living individuals residing in the United States who were sent a notice of the Data Incident indicating their Private Information may have been impacted in the Data Incident" satisfy the factors laid out in Fed. R. Civ. P. 23(a) and (b)(3). Specifically, the Court finds that:

1.    **Rule 23(a)(1):** Numerosity is satisfied because the Settlement Class of approximately 345,000 individuals is so numerous that joinder is impracticable. *See Int'l Union of Elec., Radio, & Mach. Workers v. Hudson*, 295 Ark. 107, 118-19, 747 S.W.2d 81, 87 (1988) (declaring that "at least several hundred" class members were sufficient); *Cooper Cmtys., Inc. v. Sarver*, 288 Ark. 6, 9, 701 S.W.2d 364, 365 (1986) (holding that 184 potential class members were enough).

2.    **Rule 23(a)(2):** Commonality is satisfied because there are questions of law or fact common to the class. This includes whether Defendant had a duty to use reasonable care to safeguard Plaintiffs' and Class Members' Private Information and whether Defendant failed to adequately safeguard the records of Plaintiffs and Settlement Class Members. Defendant's data security safeguards were common across the class, and the safeguards that applied to the data of one Settlement Class Member did not differ from those safeguards that applied to another.

3.    **Rule 23(a)(3):** "Typicality under Rule 23(a)(3) means that there are 'other members of the class who have the same or similar grievances as the plaintiff.'" *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996) (quoting *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977)). Typicality is satisfied here because Settlement Class Members' claims all stem from the Data Incident, which resulted in the exposure of Private Information. Plaintiffs and Class Counsel provided fair and adequate representation to the Settlement Class, satisfying the adequacy requirement.

4.    **Rule 23(a)(4):** The Court has reviewed the qualifications of Class Counsel and the

2

work performed by Representative Plaintiffs and Class Counsel throughout the pendency of this litigation as attested to in the Joint Declaration of Class Counsel in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and the Declaration of _____ in Support of Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards to Class Representatives, and has concluded that the Class was represented in a fair and adequate manner.

5.      **Rule 23(b)(3):** The Court has determined commonality is satisfied and that the common questions that arise from Defendant's conduct predominate over any individualized issues. Plaintiffs have demonstrated that their claims can be proved on a systematic, class-wide basis, satisfying the commonality requirement. *See Blades v. Monsanto Co*., 400 F.3d 562, 569 (8th Cir. 2005). The Court finds that Superiority is satisfied here because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of hundreds of thousands of claims in one action is far superior to individual lawsuits. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1.      The Court, for purposes of this Final Judgment, adopts the defined terms as set forth in the Settlement Agreement for any term not otherwise defined herein.

2.      The Court finds that the Settlement Agreement is fair, reasonable, and adequate, as expressed further herein. The Court also finds the Settlement Agreement was entered into in good faith, at arm's length, and without collusion. The Court approves and directs consummation of the Settlement Agreement.

3.      The Court approves the Release provided in the Settlement Agreement and orders

3

that, as of the Effective Date, the Released Claims will be released as to Released Parties.

4.       The Court has and reserves jurisdiction over the Settlement and this Settlement Agreement, and for purposes of the Settlement and Settlement Agreement, the Court has and reserves jurisdiction over the Parties to the Settlement.

5.       The Court finds that there is no just reason for delay of entry of final judgment with respect to the foregoing.

6.       The Court dismisses with prejudice all claims of the Class against Defendant in the Litigation, without costs and fees except as explicitly provided for in the Settlement Agreement.

7.       The Court GRANTS Plaintiffs' Motion for an Award of Attorneys' Fees (Doc. __). The Court awards Class Counsel 33.33% of the Settlement Fund ($1,300,000.00) and $_____ in reimbursement of expenses to be paid according to the terms of the Settlement Agreement. This amount of fees and reimbursement is fair and reasonable. The Court awards the Class Representatives, Greg Hale, Jessica White, Alicia Gilmore, and Michael Whitkanack $2,500 each to be paid according to the terms of the Settlement Agreement. The award is justified based on their service to the Class.

8.       **Class Certification for Settlement Purposes Only:** The Court certifies, solely for purposes of effectuating the proposed Settlement, a Settlement Class in this matter defined as follows:

> All as all living individuals residing in the United States who were sent a notice of the Data Incident indicating their Private Information may have been impacted in the Data Incident

The Settlement Class includes approximately 345,000 individuals. The Settlement Class specifically excludes: (1) all persons who are directors and officers of Defendant; (2) governmental entities; and (3) the Judge assigned to the Action, that Judge's immediate family, and Court staff.

9. The Court finds that the Class defined above satisfies the requirements of Fed. R. Civ. P. 23(a) and (b)(3) for settlement purposes in that: (a) the Class of approximately 345,000 individuals is so numerous that joinder of all Class Members would be impracticable; (b) there are issues of law and fact that are common to the Class; (c) the claims of the Class Representatives are typical of and arise from the same operative facts and seek similar relief as the claims of the Class Members; (d) the Class Representatives and Class Counsel have fairly and adequately protected the interests of the Class, as the Class Representatives have no interests antagonistic to or in conflict with the Class and have retained experienced and competent counsel to prosecute this matter on behalf of the Class; (e) questions of law or fact common to Class Members predominate over any questions affecting only individual members; and (f) a class action and class settlement are superior to other methods available for a fair and efficient resolution of this controversy.

10. Having considered the negotiation of, the terms of, and all of the materials submitted concerning the Settlement Agreement; having considered Plaintiffs' and the Class's likelihood of success both of maintaining this action as a class action and of prevailing on the claims at trial, including the possibility that Defendant could prevail on one or more of its defenses; having considered the range of the Plaintiffs' possible recovery (and that of the Class) and the complexity, expense, and duration of the Litigation; and having considered the substance and amount of opposition to the proposed settlement, it is hereby determined that:

    a. Plaintiffs and Class Counsel have adequately represented the proposed Class;

    b. the terms of the Settlement Agreement were negotiated at arm's length, vigorously advocated by experienced counsel for Plaintiffs and Defendant;

    c. the outcome of the Litigation was in doubt when the Settlement was reached, making the compromise under this Settlement reasonable under the circumstances;

    d. it is possible the proposed Class could receive more if the Litigation were to go

5

to trial, but it is also possible that the proposed Class could receive less (including the possibility of receiving nothing) and/or that Defendant could defeat class certification;

e.  the value of immediate recovery outweighs the possibility of future relief that would likely occur, if at all, only after further protracted litigation and appeals;

f.  the Parties have in good faith determined that the Settlement Agreement is in their respective best interests, including both Plaintiffs and Class Counsel determining that it is in the best interest of the Class Members;

g.  the aggregate consideration for the Class—including both the Settlement Fund, which Defendant shall fund, and remedial measures Defendant is or has implemented—is commensurate with the claims asserted and being released as part of the Settlement; and

h.  the terms of the Settlement Agreement treat the Class Members equitably relative to each other and fall within the range of settlement terms that would be considered a fair, reasonable, and adequate resolution of the Litigation.

11.  Therefore, pursuant to Rule 23(e), the terms of the Settlement Agreement are finally approved as fair, reasonable, and adequate as to, and in the best interest of, the Class and each of the Class Members. Class Members who did not opt-out of the Settlement are bound by this Final Approval Order. The Settlement Agreement and its terms shall have res judicata and preclusive effect in, all pending and future lawsuits or other proceedings as to Released Claims and waivers applicable thereto.

12.  The Court approves the distribution and allocation of the Settlement Fund under the Settlement Agreement.

13.  This Final Approval Order, and all statements, documents, or proceedings relating to the Settlement Agreement are not, and shall not be construed as, used as, or deemed to be evidence of, an admission by or against Defendant of any claim, any fact alleged in the Litigation, any fault, any wrongdoing, any violation of law, or any liability of any kind on the part of Defendant or of the validity or certifiability for this Litigation or other litigation of any claims or

class that have been, or could have been, asserted in the Litigation.

14.     This Final Approval Order, and all statements, documents, or proceedings relating to the Settlement Agreement shall not be offered or received or be admissible in evidence in any action or proceeding or be used in any way as an admission or concession or evidence of any liability or wrongdoing by Defendant, or that Plaintiffs, any Class Member, or any other person has suffered any damage due to the Incident. Notwithstanding the above, the Settlement Agreement and this Final Approval Order may be filed in any action by Defendant, Class Counsel, or Class Members seeking to enforce the Settlement Agreement or the Final Approval Order.

15.     The Settlement Agreement and Final Approval Order shall not be construed or admissible as an admission by Defendant that Plaintiffs' claims or any similar claims are suitable for class treatment.


        IT IS SO ORDERED.


Dated: _____

By:     _____
        Brian S. Miller
        United States District Judge