**N THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

| | |
|---|---|
| GREG HALE, ALICIA GILMORE, MICHAEL WHITKANACK, and JESSICA WHITE, on behalf of themselves and all others similarly situated,<br><br>v.<br><br>ARCARE, INC. | Case No. 3:22-cv-117-BSM |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**

## I. INTRODUCTION

Plaintiffs, by and through counsel, hereby move this Honorable Court for an award of reasonable attorneys' fees, costs, and service awards. In support of their motion, Plaintiffs show the Court as follows:

This case arises out of a data security incident that impacted Defendant's network between January 18 and February 24, 2022. What followed were four years of complex, hard-fought litigation, culminating in a substantial settlement for the benefit of nearly 345,000 Settlement Class Members. Settlement in this matter was not reached quickly or without considerable effort. Rather, the parties reached an agreement in principle in April 2026, following years of contested litigation, a consequential appeal to the Eighth Circuit that consumed approximately two years, and months of hard-fought negotiations, including a full-day mediation session before Judge (ret.) Wayne Andersen. The Parties thereafter devoted substantial additional time and effort finalizing the Settlement Agreement and its associated exhibits. Plaintiffs filed their Motion for Preliminary Approval on July 29, 2026, and preliminary approval was granted on August 3, 2026.

The Settlement represents an excellent result for the Class, achieved against a well-funded Defendant represented by highly competent counsel. *See* Joint Declaration in Support of Plaintiffs' Motion for an Award of Attorneys' Fees, Costs, and Service Awards, ¶ 12 ("Joint Decl."). The result is all the more remarkable given the substantial legal and procedural obstacles Class Counsel overcame over the course of this litigation. Although Plaintiffs believe in the merits of their claims, this litigation was inherently risky and complex. Among other challenges, Defendant pursued an appeal to the Eighth Circuit Court of Appeals from this Court's Order denying Arcare's motion to substitute the United States or, in the alternative, to dismiss the Consolidated Class Action Complaint ("CCAC") based on alleged immunity under the Federally Supported Health Centers Assistance Act ("FSHCAA"), 42 U.S.C. § 233. Joint Decl., ¶ 25. Class Counsel successfully litigated that appeal, as well as Defendant's petition for rehearing, protecting the Class's ability to pursue its claims. *Id.* The appellate proceedings alone consumed approximately two years. *Id.* ¶ 6.

The underlying claims presented substantial risks as well. Data breach litigation remains a fast-developing area of law, leaving Plaintiffs exposed to significant uncertainty at every stage of the proceedings. *Id.* ¶ 26. Had the case not settled, Plaintiffs would likely have had to oppose a motion for summary judgment, and both obtain and maintain class certification under Fed. R. Civ. P. 23. Even if Plaintiffs prevailed on certification, Defendant's prior appeal of this Court's ruling demonstrated its willingness to pursue appellate review of adverse decisions; Plaintiffs almost certainly would have faced an interlocutory appeal attempt under Fed. R. Civ. P. 23(f). Without class certification, individual class members would have had no practical means of obtaining a recovery. *Id.* ¶ 25. As another court in this Circuit recognized, because the "legal issues involved in [data breach litigation] are cutting-edge and unsettled . . . many resources would necessarily be

spent litigating substantive law as well as other issues." *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 14-2522, 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015).

It was against this backdrop – and only after four years of effort – that Class Counsel secured the Settlement now before the Court. The result reflects the skill, experience, and diligence of Class Counsel, together with the commitment of Class Representatives Greg Hale, Alicia Gilmore, Michael Whitkanack, and Jessica White ("Class Representatives"). Class Counsel maintain national class action practices and have particularly specialized skill in data breach class actions. *See* Joint Decl., ¶ 28. These skills have been recognized by courts across the country. *Id.* ¶¶ 28-30. The Class Representatives likewise devoted meaningful time and effort to this litigation, actively participating in the case, communicating with counsel, and assisting in prosecuting the case. *Id.* ¶ 19. Their willingness to undertake those responsibilities made this recovery possible.

This case also exemplifies the important public benefit served by the class action mechanism. No individual Class member had a large enough claim to retain counsel to pursue it individually, and therefore, absent this class action, the Class would not be able to seek relief for their injuries. Through the efforts of the Class Representatives and the zealous and diligent work of Class Counsel, the Settlement provides meaningful relief for the injuries allegedly suffered by Plaintiffs and Settlement Class Members.

Pursuant to Rule 23(h) and applicable Eighth Circuit precedent, Class Counsel and the Class Representatives are entitled to be compensated from the Settlement for having achieved a benefit on behalf of nearly 345,000 Settlement Class Members. This was not a matter of simply negotiating a settlement at the outset of litigation. Class Counsel investigated and prosecuted the claims, engaged in extensive motion practice, successfully briefed, argued, and won a consequential appeal (and petition for rehearing) before the Eighth Circuit, participated in

prolonged arm's-length settlement negotiations, and spent additional weeks finalizing the Settlement Agreement and associated documents necessary to obtain preliminary and final approval. The requested fees and costs reflect four years of work, including two years of appellate litigation that was critical to preserving the Class's right to pursue recovery.

In recognition of the substantial benefit conferred upon the Settlement Class, Class Counsel respectfully moves the Court for an award of attorneys' fees in the amount of $1,300,000, or one-third of the Settlement Fund, and $27,659.84 in litigation costs. Joint Decl., ¶¶ 31, 34. This request is contemplated by the Settlement Agreement, and Class Counsel apprised the Court of this request in the Unopposed Motion for Preliminary Approval. ECF No. 62.

The Eighth Circuit has expressly and repeatedly approved fees based on the potential recovery to the Class, and routinely approves fees that equal 25% to 36% of the benefits provided. Plaintiffs' motion should be granted because the request is reasonable and appropriate in light of the substantial risks presented in prosecuting this action, the quality and extent of work conducted, and the stakes of the case. For four years, Class Counsel prosecuted this case through contested litigation, successfully defended the Class's interests before the Eighth Circuit, and continued their efforts until a favorable settlement was secured. Furthermore, the requested fees and costs were clearly disclosed in the notice to the class, no Class Member has objected to date, and the costs incurred were reasonable and necessary for the litigation.

Finally, Class Counsel also respectfully moves the Court for an award of $2,500 to each of the Class Representatives for their work on behalf of the Class. These Service Awards were also contemplated by the Settlement Agreement and are fair and reasonable given the time and effort expended by the Class Representatives over the last four years. S.A. ¶ 99.

## II. INCORPORATION BY REFERENCE

Plaintiffs incorporate by reference Plaintiffs' Memorandum in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 63) ("Motion for Preliminary Approval of Class Action Settlement").

## III. FACTUAL AND PROCEDURAL HISTORY

Plaintiffs refer the Court to pp. 2-3 of the Motion for Preliminary Approval of Class Action Settlement for a detailed breakdown of the factual and procedural history that ultimately culminated in the settlement currently before the Court.

## IV. SETTLEMENT BENEFITS

Under the proposed Settlement, Defendant will pay $3,900,000 to establish the Settlement Fund to be distributed under the Settlement Agreement. S.A. ¶ 62. The Settlement defines the Settlement Class as:

> [A]ll living individuals residing in the United States who were sent a notice of the Data Incident indicating their Private Information may have been impacted in the Data Incident.

*Id.* ¶ 59. The Class specifically excludes: (1) all persons who are directors and officers of Defendant; (2) governmental entities; and (3) the Judge assigned to the Action, that Judge's immediate family, and Court staff. *Id.* Under the Settlement, Defendant agrees to pay a total of $3,900,000 into the non-reversionary Settlement Fund, which will be used to pay: (1) all Settlement Class Member Benefits (described below) to Settlement Class Members who submit Valid Claims; (2) all Settlement Administration Costs; and (3) any attorneys' fees, costs, and Service Awards approved by the Court. *Id.* ¶¶ 66-67.

The Settlement Fund will provide broad relief to Settlement Class Members in several categories, including monetary and non-monetary components. First, all Settlement Class Members are eligible to submit a claim for reimbursement of up to $5,000 per Settlement Class

Member for documented losses related to the Data Incident ("Cash Payment A – Documented Losses"). *Id.* ¶ 70(a). These losses may include unreimbursed losses relating to fraud or identity theft if: (i) the loss is an actual, documented, and unreimbursed monetary loss; (ii) the loss was more likely than not caused by the Data Incident; and (iii) the loss was incurred after the date of the Data Incident. *Id*. Claims must be submitted with adequate documentation. While personal certifications, declarations, or affidavits do not constitute proper documentation, they may be included to provide clarification, context, or support for other submitted reasonable documentation. *Id.* Settlement Class Members shall not be reimbursed for expenses if they have already been reimbursed by another source, including compensation provided in connection with any credit monitoring and identity theft protection product. *Id*.

Second, as an alternative to Cash Payment A, Settlement Class Members may elect to receive a pro rata share of the Net Settlement Fund ("Cash Payment B – Alternate Cash"), estimated to be $100. *Id.* ¶ 70(b).

Third, in addition to either Cash Payment A or Cash Payment B, Settlement Class Members may claim one (1) year of CyEx's Medical Shield Complete ("Medical Data Monitoring"), which includes single-bureau credit monitoring with up to $1,000,000 of identity theft insurance, as well as monitoring of healthcare insurance plan IDs, healthcare beneficiary identifier ID; medical records; national provider identifier; international classification of disease; health savings account; high risk; and Dark Web. *Id.* ¶ 70(c).

Under the Settlement, all Class Members may file a claim to elect either Cash Payment A or Cash Payment B. *Id*. ¶ 70. In addition to Cash Payments, Settlement Class Members may claim Medical Data Monitoring. Cash Payments will be subject to a pro rata increase or decrease depending on whether the amount of Valid Claims is insufficient to or exhausts the Net Settlement

Fund. *Id*. Additionally, prior to Final Approval, Defendant will provide Class Counsel with a written declaration regarding the security measures (including the associated costs) that it implemented (or will implement) following the Data Incident to better protect Settlement Class Members' Private Information from future disclosure. *Id*. ¶ 70(d). Any such costs will be paid separately by Defendant and will not come out of the Settlement Fund. *Id*.

Finally, in the event any funds remain in the Settlement Fund 180 days following the date Settlement Class Members are sent an email to select their form of payment, all funds shall be distributed *cy pres* to Legal Aid of Arkansas upon Court approval. *Id*. ¶ 101.

## V. LEGAL STANDARD

### A. Courts in the Eighth Circuit commonly award attorneys' fees of one-third of the total value of a settlement.

Courts historically use two main approaches to analyzing a request for attorneys' fees: the lodestar approach and the percent-of-benefit approach. *Johnston v. Comerica Mortg. Corp*., 83 F. 3d 241, 244 (8th Cir. 1996). Under the lodestar approach, the hours expended by an attorney are multiplied by a reasonable rate, which is adjusted given the characteristics of a particular action. *Id*. The percent-of-benefit (or percent-of-fund) approach permits an award of fees that is equal to some fraction of the common fund the attorneys were successful in procuring during the course of litigation. *Id*.

Under Rule 23(h) and "the 'common fund' doctrine, Class Counsel is entitled to an award of reasonable attorneys' fees from the settlement proceeds" in a class action. *Tussey v. ABB, Inc*., No. 06-CV-04305-NKL, 2019 WL 3859763, at *2 (W.D. Mo. Aug. 16, 2019) (citing Fed. R. Civ. P. 23(h); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole")). The common fund doctrine "rests on the perception that

persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Boeing*, 444 U.S. at 478.

It is within the discretion of the Court to determine what approach to use and if a requested fee is reasonable in a given case. *In re LifeTime Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 847 F.3d 619, 622 (8th Cir. 2017). However, whereas the lodestar approach is viewed as appropriate in statutory fee-shifting cases, the percent-of-benefit method is widely endorsed in common fund cases. *Johnston*, 83 F.3d at 245; *see also Report of the Third Circuit Task Force*, 108 F.R.D. 237, 246–49 (1985) (concluding that the percent-of-recovery fee was the best determinant of the reasonable value of services rendered by counsel in common fund cases); *In re Chrysler Motors Corp. Overnight Evaluation Program Litig.*, 736 F. Supp. 1007, 1009 (E.D. Mo. 1990) (adopting what the court called the "healthy trend" of applying the percent-of-fund approach over the lodestar analysis); *see also In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 821 (3d Cir.1995).

"In the Eighth Circuit, use of a percentage method of awarding attorneys' fees in a common-fund case is not only approved, but also 'well established.'" *In re Xcel Energy, Inc., Securities, Derivative & "ERISA" Litig. ("Xcel Energy")*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005) (quoting *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999)). Indeed, in common fund cases, the percentage of the benefit approach is "recommended." *Tussey*, 2019 WL 3859763, at *2; *see also Johnston*, 83 F.3d at 246 (approving percentage method of awarding fees); *Petrovic*, 200 F.3d at 1157 (same); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (same).[1] The percentage of the benefit approach aids litigants and the courts because it "directly

[1] While the use of the lodestar approach is sometimes used to crosscheck the result of the percent-of-benefit method, it is not required. *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 865–66 (8th Cir. 2017); citing *Petrovic*, 200 F.3d at 1157 (finding no reason to examine the lodestar crosscheck carried out by the district court where the percent-of-fund approach yielded a reasonable result); *see also In re U.S. Bancorp Litig.*, 291 F.3d at 1038. Even when a lodestar

aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 120 (2d Cir. 2005); *see also Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) (percentage of fund is "a method of more closely aligning the lawyer's interests with those of his client by giving him a stake in a successful outcome"). The percentage-of-the-benefit method better aligns counsel and the class and encourages the most efficient resolution of the litigation. *In re NuvaRing Prod. Liab. Litig.*, No. 4:08 MDL 1964 RWS, 2014 WL 7271959, at *4 (E.D. Mo. Dec. 18, 2014). "[U]nder the percentage approach, the class members and the class counsel have the same interest—maximizing the recovery of the class." Silber and Goodrich, *Common Funds and Common Problems: Fee Objections and Class Counsel's Response*, 17 Rev. Litig. 525, 534 (Summer 1998).

Courts determine the total benefit to the class "based on both the monetary and the non-monetary value of the settlement." *Tussey*, 2019 WL 3859763, at *2; *see also* Principles of the Law of Aggregate Litigation, A.L.I., § 3.13(b) (May 20, 2009) ("a percent-of-the-fund approach should be the method utilized in most common-fund cases, with the percentage being based on both the monetary and the nonmonetary value of the settlement."). Thus, consideration of injunctive or declaratory relief, as well as savings to class members, is appropriately considered as part of the total value of a settlement. *Tussey*, 2019 WL 3859763, at *2 (including tax avoidance and injunctive relief in addition to monetary relief as being the basis for the total value of the settlement for determining an appropriate common-fund fee); *Barfield v. Sho-Me Power Elec. Coop.*, No. 2:11-CV-4321NKL, 2015 WL 3460346, at *4 (W.D. Mo. June 1, 2015) (including

---

crosscheck is done, it "need entail neither mathematical precision nor bean counting" and a court "need not scrutinize each time entry" and can rely on "representation[s] by class counsel as to total hours." *In re NuvaRing*, 2014 WL 7271959, at *4.

administrative costs paid separately by defendant as being part of the total value of the settlement). The value of the settlement for purposes of determining the fee is the value that is made available to class members, regardless of whether the full amount is claimed through the claims process. *See Keil v. Lopez*, 862 F.3d 685, 697 (8th Cir. 2017) (approving requested fees and noting that "even if 97 percent of the class did not exercise their right to share in the fund, their opportunity to do so was a benefit to them") (citing *Boeing*, 444 U.S. at 480 stating ("[t]heir right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel.")). Moreover, here, the Settlement Fund is non-reversionary, and Cash Payments will be increased pro rata if Valid Claims do not exhaust the Net Settlement Fund. S.A. ¶¶ 66–67, 70.

As to the appropriate percentage to award to Class Counsel, the amount is within the discretion of the court, but "courts have frequently awarded attorney fees between 25 and 36 percent of a common fund in class actions." *Caligiuri v. Symantec Corp*., 855 F.3d 860, 866 (8th Cir. 2017) (affirming 33% fee) (quoting *Khoday v. Symantec Corp*., No. 11-cv-180, 2016 WL 1637039, at *9 (D. Minn. Apr. 5, 2016)); *In re U.S. Bancorp. Litig*., 291 F.3d at 1038 (affirming 36% fee); Within this range, the most common fee awarded is one-third of the value of the settlement. *See, e.g.*, *Caligiuri*, 855 F.3d at 865–66 (affirming one-third fee); *Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017) (same); *Barfield*, 2015 WL 3460346, at *4 (awarding one-third fee and collecting cases awarding one-third fees).

Finally, although the Eighth Circuit has not formally established fee-evaluation factors, it has approved consideration of several, none of which is determinative. Specifically, in *Caligiuri*, the Eighth Circuit held that it was appropriate in evaluating the fee to look at various factors, including: (1) the benefit conferred on the class; (2) the risk to which plaintiffs' counsel was

exposed (i.e., whether their fee was fixed or contingent); (3) the difficulty and novelty of the legal and factual issues of the case; (4) the skill of the lawyers, both for plaintiffs and defendants; (5) the reaction of the class; and (6) the comparison between the requested attorney fee percentage and percentages awarded in similar cases. *Caligiuri*, 855 F.3d at 866. Evaluation of these factors assists a court in determining a reasonable fee. *Id*.

**B. Courts in the Eighth Circuit award reimbursement of reasonable costs and expenses advanced by Class Counsel.**

In addition to fees, "[a]n attorney who creates or preserves a common fund by judgment or settlement for the benefit of a class is entitled to receive reimbursement of reasonable fees and expenses involved." *Tussey*, 2019 WL 3859763, at *5 (quoting ALBA CONTE, 1 ATTORNEY FEE AWARDS § 2:19 (3d ed.); *see also Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 166–67 (1939) (recognizing a federal court's equity power to award costs from a common fund)). "Counsel in common fund cases may recover those expenses that would normally be charged to a fee-paying client." *Tussey*, 2019 WL 3859763, at *5 (quoting *In re Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.*, No. MDL 05-1708, 2008 WL 682174, at *4 (D. Minn. Mar. 7, 2008)). "Reimbursable expenses include many litigation expenses beyond those narrowly defined 'costs' recoverable from an opposing party under Rule 54(d), and includes: expert fees; travel; long-distance and conference telephone; postage; delivery services; and computerized legal research." *Id*. (collecting cases).

As to amount, "reducing litigation expenses because the district judge thinks costs too high in general is not permissible." *Id*. (internal quotations omitted). And, in general, courts approve requested expense reimbursements because class counsel bring the case on a contingent basis, "so they had a strong incentive to keep costs to a reasonable level." *Id*. Courts in this Circuit have noted that expenses equal to or slightly greater than 4% of the relief obtained for the class "should

be viewed as generally reasonable." *Id.* (citing Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: an Empirical Study*, 1 J. OF EMPIRICAL LEGAL STUDIES 27, 70 (2004)); *see also Keslar v. Bartu*, 201 F.3d 1016, 1017 (8th Cir. 2000) (per curiam) (finding no abuse of discretion in $17,000 cost award when case settled for only $70,000).

**C. The Requested Service Awards are Reasonable**

Apart from Class Counsel, "[a]t the conclusion of a class action, the class representatives are eligible for a special payment in recognition of their service to the class." 5 Newberg on Class Actions § 17:1 (5th ed. 2015). "Courts often grant service awards to named plaintiffs in class action suits to 'promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits.'" *Caligiuri*, 855 F.3d at 867 (quoting *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1086 (D. Minn. 2010)). Otherwise, most people could not afford to spend the time and effort to pursue what would provide only a modest individual recovery for the effort involved but would also benefit thousands of other people who do not have to expend any time or resources. *See id*. Relevant considerations in determining whether to grant an incentive award include actions plaintiffs took to protect the interests of the class; the degree to which the class has benefitted from those actions; and the amount of time and effort plaintiffs expended in pursuing the litigation. *In re U.S. Bancorp Litig.*, 291 F.3d at 1038.

As to amount, "courts in this circuit regularly grant service awards of $10,000 or greater." *Caligiuri*, 855 F.3d at 867 (approving $10,000 service award) (citing *Huyer v. Njema*, 847 F.3d 934, 941 (8th Cir. 2017) (affirming approval of settlement that included $10,000 service awards to named plaintiffs); *Jones v. Casey's Gen. Stores, Inc.*, 266 F.R.D. 222, 231 (S.D. Iowa 2009) (approving $10,000 service awards to each of nine plaintiffs); *see also Lutz v. Electromed, Inc.*, No. 21-cv-2198 (D. Minn.) (approving $9,900 service award to Plaintiff in data breach settlement).

And much higher service awards are not uncommon. *See, e.g.*, *Zilhaver v. UnitedHealth Group, Inc.*, 646 F. Supp. 2d 1075, 1085 (D. Minn. 2009) (approving $15,000 service awards to two representatives); *Tussey*, 2019 WL 3859763, at *6 (approving $25,000 service awards to each of three representatives); *In re Charter Commc'ns, Inc., Sec. Litig.*, No. MDL 1506, 2005 WL 4045741, at *25 (E.D. Mo. June 30, 2005) (approving $26,625 service award).

## VI. DISCUSSION

Under these standards, the Court should grant the requested payments from the Settlement fund of attorneys' fees, costs, and service awards. The requested amounts are reasonable, in line with amounts routinely approved in the Eighth Circuit, and well within the Court's discretion.

### A. The Court should award Class Counsel attorneys' fees from the Settlement Fund in the amount of one-third of the value of the settlement.

The Court should award Class Counsel 33.33% of the Settlement Fund, which is the fee amount the Settlement Agreement contemplates. S.A. ¶ 98. Not only is this amount common in the Eighth Circuit, but all the *Caligiuri* factors support approving the requested fee. *Caligiuri*, 855 F.3d at 866 (listing factors).

First, the Settlement confers a substantial benefit on the Class. It creates a $3,900,000 non-reversionary Settlement Fund from which Settlement Class Members may claim reimbursement of up to $5,000 in documented losses or, alternatively, a pro rata cash payment, in addition to one year of Medical Data Monitoring. S.A. ¶¶ 62, 66–67, 70. Defendant will also pay separately for the security measures it implemented or will implement following the Data Incident. *Id.* ¶ 70(d). These terms compare favorably with settlements approved in other data breach cases. *Rutledge v. Saint Francis Healthcare System*, No. 1:20-cv-00013-SPC (E.D. Mo.) (data breach settlement providing up to $280 in value to settlement class members in the form of: reimbursement up to $180 of out of pocket expenses and time spent dealing with the data breach; credit monitoring

services valued at $100; and equitable relief in the form of data security enhancements); *Chacon et al, v. Nebraska Medicine*, No. 8:21-cv-00070 (D. Neb.) (data breach settlement providing up to $300 in ordinary expense reimbursements; up to $3,000 in extraordinary expense reimbursements; credit monitoring services; and equitable relief in the form of data security enhancements). This factor supports granting the requested fee. *Caligiuri*, 855 F.3d at 866; Joint Decl., ¶¶ 9-12.

Second, the risks of the litigation for Class Counsel were high. Class Counsel took this case on a purely contingent basis, receiving no compensation to date. Joint Decl., ¶¶ 20, 27. As such, they assumed significant risk of nonpayment or underpayment. *Id*. This risk of non-payment was real. Defendant moved to substitute the United States as the defendant or, in the alternative, to dismiss the CCAC based on alleged immunity under the FSHCAA, and when this Court denied that motion, Defendant appealed to the Eighth Circuit and then petitioned for rehearing. Joint Decl. ¶¶ 6, 25. Class Counsel took on these risks knowing full well their efforts may not bear fruit. Fees were not guaranteed—the retainer agreements Counsel have with Plaintiffs did not provide for fees apart from those earned on a contingent basis, and in the case of class settlement, approved by the court. *Id*. ¶ 27.

Class Counsel labored and advanced their own funds to prosecute the case all at the risk of never being paid for their work or reimbursed for their expenses. Class Counsel devoted substantial time and resources to this matter, instead of pursuing other paying work, all while facing the possibility of never being compensated and, at best, receiving payment only after years of litigation. *Id.* ¶ 21-23. Had Defendant prevailed on the merits, on class certification, or on appeal, Class Counsel might have recovered nothing for the time and expense they invested in representing the Class. *Id.* ¶¶ 24-27. "Unquestionably, with high-risk and high-cost cases such as this, contingency fee arrangements are the "key to the courthouse" for individuals taking on a large

corporation." *Tussey*, 2019 WL 3859763, at *4. This factor supports granting the requested fee. *Caligiuri*, 855 F.3d at 866; *see e.g. Huyer*, 849 F.3d at 399 (approving requested fees of 33% of the settlement fund where all attorneys worked on a contingent basis); *see also Gomez, et al., v. Centennial Bank*, Case No. 4:23-cv-00333BRW, ECF No. 57 (E.D. Ark.) (approving requested fees of 33% of the settlement fund where all attorneys worked on a contingent basis in a data breach matter).

Third, this case involved the complexities of data breach litigation, which are novel and evolving. *See* Joint Decl., ¶ 26. To even be able to identify the issues of Article III standing, appreciate the highly technical aspects of the data breach mechanism (i.e., the means by which Defendant's systems were breached), and to apply specialized knowledge of class action procedure required to achieve certification, let alone settlement, requires highly skilled counsel. While Plaintiffs were confident that their claims would prevail, they faced several strong legal defenses and difficulties in demonstrating causation and injury. Such defenses, if successful, could drastically decrease or eliminate any recovery for Plaintiffs and putative Class members. Further, given the complexity of the issues and the amount in controversy, the defeated party would likely appeal any decision on either certification or merits. The general risks of litigation are further heightened in the data breach arena. Due at least in part to the cutting-edge nature of data protection technology and rapidly evolving law, data breach cases like this one are particularly complex and face substantial hurdles—even just to make it past the pleading stage. As one federal district court observed in finally approving a data breach settlement with similar class relief and similar attorneys' fees:

> Data breach litigation is evolving; there is no guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex."). Plaintiffs also faced the risk that [defendant]

> would successfully oppose class certification, obtain summary judgment on one or more of their claims, or win at trial or on appeal. Also, the cost for [defendant] and Plaintiffs to maintain the lawsuit would be high, given the amount of documentary evidence as well as the expert costs both parties would incur in the context of class certification, summary judgment, and trial. As such, the current Settlement strikes an appropriate balance between Plaintiffs' "likelihood of success on the merits" and "the amount and form of the relief offered in the settlement." *See Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).

*Fox v. Iowa Health Sys.*, No. 3:18-CV-00327-JDP, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) (also approving attorneys' fees and costs in the amount of $1,575,000); *see also Hammond v. The Bank of N.Y. Mellon Corp.,* 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig*., 293 F.R.D. 21 (D. Me. 2013). This factor supports granting the requested fee. *Caligiuri*, 855 F.3d at 866.

Fourth, the complexity of the case is further shown by the skill of the lawyers involved on both sides of the case. Class Counsel have national class action practices involving many areas of complex litigation, but particularly data breach cases of this very type. Joint Decl. ¶¶ 28-30. Class Counsel have been recognized by courts across the country for their skill. *Id*. On the other side of the case, Defendant is represented by a large law firm with considerable resources and experience in defending data breach class actions and is a formidable opponent. This factor supports granting the requested fee. *Caligiuri*, 855 F.3d at 866.

Fifth, the reaction of the Class supports the requested fee. Notice of the Settlement, including the amounts of attorneys' fees, costs, and Service Awards Class Counsel would request, was sent to Settlement Class Members beginning October 9, 2026. The deadline to object is December 8, 2026. To date, no Settlement Class Member has objected to the Settlement or to the requested fees, costs, or Service Awards. Joint Decl. ¶ 16. Plaintiffs will update the Court on any

objections in their final approval papers. This factor supports granting the requested fee. *Caligiuri*, 855 F.3d at 866.

Sixth, the requested fee is commensurate with fee awards routinely approved in similar data breach litigation and in class action litigation in general in courts across the country. Joint Decl., ¶ 31. The fee requested here also falls well within the 25% to 36% of common fund fees regularly approved by Eighth Circuit Courts. *See, e.g.*, *Gomez*, Case No. 4:23-cv-00333BRW, ECF No. 57 (awarding one-third of common fund settlement); *Del Toro, v. Centene Mgmt. Co., LLC.*, No. 4:19-CV-02635-JAR, 2021 WL 1784368, at *3 (E.D. Mo. May 5, 2021) (35% fee sought by Plaintiffs' counsel approved as "in line with other awards in the Eighth Circuit"); *Tussey*, 2019 WL 3859763, at *4 (33% fee awarded where there was no objection to the fee request by the Class); *Caligiuri*, 855 F.3d at 865–66; *see also Xcel Energy*, 364 F. Supp. 2d at 998 (collecting cases); *In re U.S. Bancorp Litig.*, 291 F.3d at 1038 (affirming award 36% of a common fund of $3.5 million); *West v. PSS World Med., Inc.*, No. 4:13-cv-574, 2014 WL 1648741, at *1 (E.D. Mo. Apr. 24, 2014) (approving attorneys' fees of 33%).

Thus, all of these factors support the Court's discretion in approving the requested attorneys' fee amount of one-third of the value of the settlement, which is an amount routinely awarded in the Eighth Circuit. *See Barfield*, 2015 WL 3460346, at *4 (collecting cases awarding one-third fees).

**B. The Court should award Class Counsel reimbursement from the Settlement Fund of Costs incurred in litigating this case to settlement.**

The Court should likewise award Class Counsel reimbursement of the costs they advanced in litigating this case, which are reasonable. Despite four years of litigation, including two years on appeal, Class Counsel kept costs modest. Here, Class Counsel has advanced $27,659.84 for necessary litigation expenses such as filing fees and the costs of mediation. *See* Joint Decl., ¶ 34.

As repayment of these expenses was contingent on judgment or settlement, Class Counsel's incentive was to incur only those expenses necessary to resolve the case. The requested expenses are less than 1% of the value of the settlement and therefore are reasonable and should be approved. *See Tussey*, 2019 WL 3859763, at *5 (noting that expenses equal to or slightly greater than 4% of the relief obtained should be viewed as generally reasonable).

**C. The Court should award the Class Representatives payment from the Settlement Fund for a service award of $2,500.**

Finally, the Court should grant the Class Representatives a service award of $2,500 each in recognition of the time and effort they spent and the results they obtained on behalf of the absent Class members who will receive compensation without ever having to do anything. The Class Representatives have regularly consulted with Class Counsel, provided documents and information, reviewed pleadings, and participated in the settlement process. Joint Decl., ¶ 19. Without the Class Representatives' efforts, the benefits for the Class would never have been achieved. These factors support granting a service award. *In re U.S. Bancorp Litig*., 291 F.3d at 1038. Now that the case has achieved a significant recovery, the Class Representatives should be rewarded for having obtained this benefit for the Settlement Class. The Court is well within its discretion to award the requested $2,500 service awards, which is less than the amount "regularly" awarded in the Eighth Circuit. *Caligiuri*, 855 F.3d at 867 ("courts in this circuit regularly grant service awards of $10,000 or greater").

## VII. CONCLUSION

Upon granting final approval to the settlement, the Court should enter an order awarding from the Settlement Fund the payments of: (1) attorneys' fees to Class Counsel in the amount of $1,300,000.00; (2) litigation costs in the amount of $27,659.84; and (3) service awards to the Class Representatives in the amount of $2,500 each.

Date: November 24, 2026

Respectfully submitted,

*/s/ Bryan L. Bleichner*
Bryan L. Bleichner (admitted pro hac vice)
Philip J. Krzeski (admitted pro hac vice)
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Phone: (612) 339-7300
Fax: (612) 336-2940
bbleichner@chestnutcambronne.com
pkrzeski@chestnutcambronne.com

Jean Martin (admitted pro hac vice)
Francesca Kester Burne (admitted pro hac vice)
**AYLSTOCK, WITKIN, KREIS,**
**& OVERHOLTZ PLC**
17 E. Main Street Suite 200
Pensacola, FL 32502
(844) 794-7402
(850) 202-1010
jmartin@awkolaw.com
fburne@awkolaw.com

*Interim Co-Lead Class Counsel*